# Exhibit A

Case Summary:

| Case Id: | 30-2021-01230857-CU-BT-CXC |
|---|---|
| Case Title: | JENALE NIELSON VS. WALT DISNEY PARKS AND RESORTS U.S., INC., A FLORIDA CORPORATION |
| Case Type: | BUSINESS TORT |
| Filing Date: | 11/09/2021 |
| Category: | CIVIL - UNLIMITED |

Register Of Actions:

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 1 | E-FILING TRANSACTION 41262670 RECEIVED ON 11/09/2021 04:23:02 PM. | 11/12/2021 | | *NV* | |
| 2 | COMPLAINT FILED BY NIELSON, JENALE ON 11/09/2021 | 11/09/2021 | | 18 pages | ☐ |
| 3 | SUMMONS ISSUED AND FILED FILED BY NIELSON, JENALE ON 11/09/2021 | 11/09/2021 | | 1 pages | ☐ |
| 4 | CIVIL CASE COVER SHEET FILED BY NIELSON, JENALE ON 11/09/2021 | 11/09/2021 | | 2 pages | ☐ |
| 5 | PAYMENT RECEIVED BY LEGALCONNECT FOR 194 - COMPLAINT OR OTHER 1ST PAPER, 34 - COMPLEX CASE FEE - PLAINTIFF IN THE AMOUNT OF 1,435.00, TRANSACTION NUMBER 12969616 AND RECEIPT NUMBER 12797535. | 11/12/2021 | | 1 pages | ☐ |
| 6 | CASE ASSIGNED TO JUDICIAL OFFICER SHERMAN, RANDALL ON 11/09/2021. | 11/09/2021 | | *NV* | |
| 7 | E-FILING TRANSACTION 21089829 RECEIVED ON 11/16/2021 02:07:51 PM. | 11/16/2021 | | *NV* | |
| 8 | PROOF OF SERVICE OF SUMMONS FILED BY NIELSON, JENALE ON 11/16/2021 | 11/16/2021 | | 1 pages | ☐ |

Participants:

| Name | Type | Assoc | Start Date | End Date |
|---|---|---|---|---|
| VENTURA HERSEY & MULLER, LLP | ATTORNEY | | 11/12/2021 | |
| WALT DISNEY PARKS AND RESORTS U.S., IN | DEFENDANT | | 11/12/2021 | |
| JENALE NIELSON | PLAINTIFF | | 11/12/2021 | |

Hearings:

| Description | Date | Time | Department | Judge |
|---|---|---|---|---|

Print this page

Electronically Filed by Superior Court of California, County of Orange, 11/09/2021 04:23:02 PM.
30-2021-01230857-CU-BT-CXC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WALT DISNEY PARKS AND RESORTS U.S., INC., a Florida Corporation, and DOES 1 through 25, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JENALE NIELSEN, individually and on behalf of others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of California County of Orange<br>Civil Complex Center<br>751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512 | CASE NUMBER: *(Número del Caso):*<br>30-2021-01230857-CU-BT-CXC<br><br>Judge Randall J. Sherman |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Daniel J. Muller, Esq. (SBN 193396); 1506 Hamilton Avenue, San Jose, CA 95125; (408) 512-3025

| DATE:<br>*(Fecha)* 11/09/2021 | DAVID H. YAMASAKI, Clerk of the Court | Clerk, by<br>*(Secretario)* Georgina Ramirez | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

| [SEAL] | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* WALT DISNEY PARKS AND RESORTS U.S., INC., a Florida corporation

   under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Electronically Filed by Superior Court of California, County of Orange, 11/09/2021 04:23:02 PM.
30-2021-01230857-CU-BT-CXC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk.

1  DANIEL J. MULLER, SBN 193396
   *dmuller@venturahersey.com*
2  ANTHONY F. VENTURA, SBN 191107
   *aventura@venturahersey.com*
3  VENTURA HERSEY & MULLER, LLP
   1506 Hamilton Avenue
4  San Jose, California 95125
   Telephone:  (408) 512-3022
5  Facsimile:  (408) 512-3023

6  Attorneys for Plaintiff Jenale Nielsen &
7  the Proposed Class

Assigned for all Purposes

Judge Randall J. Sherman

CX-105

8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF ORANGE

10
11  JENALE NIELSEN, individually and on behalf      Case No.:  30-2021-01230857-CU-BT-CXC
    of others similarly situated,
12                                                  **CLASS ACTION**
                 Plaintiff,
13                                                  CLASS ACTION COMPLAINT
         vs.
                                                    DEMAND FOR JURY TRIAL
14  WALT DISNEY PARKS AND RESORTS
15  U.S., INC., a Florida Corporation, and DOES 1
    through 25, inclusive,
16
                 Defendants.
17

18       Plaintiff Jenale Nielsen ("Ms. Nielsen") hereby brings this Action against Defendant Walt

19  Disney Parks And Resorts U.S., Inc. ("Disney") and Does 1-25 (collectively referred to herein as

20  "Defendants") for misleading consumers about the nature, benefits, and restrictions of the Dream

21  Key Passes that Disney sold to Ms. Nielsen and others similarly situated.  Ms. Nielsen alleges as

22  follows:

23                      **PARTIES, JURISDICTION, AND VENUE**

24       1.      Ms. Nielsen is an individual who resides in Santa Clara County, California.

25       2.      Walt Disney Parks And Resorts U.S., Inc. is a Florida Corporation whose principal

26  place of business is in Lake Buena Vista, Florida.  Disney has, at all relevant times, engaged in

27  trade or commerce in California by advertising and offering theme park admission tickets to

28  California consumers.

-1-

CLASS ACTION COMPLAINT

3.      Ms. Nielsen is ignorant of the true names and capacities of the defendants sued herein as Does 1 through 25, inclusive, and therefore sues these defendants by such fictitious names.  Ms. Nielsen prays for leave to amend this complaint to allege the defendants' true names and capacities when the same have been ascertained.

4.      Ms. Nielsen is informed and believes, and on that basis alleges, that each of the Defendants, including Does 1 through 25, inclusive, is the principal, agent, servant, employee, or alter ego of each of the other Defendants, and in doing the things hereafter mentioned, each Defendant was acting in the scope of its, his, or her authority as such agent, servant, and employee with the permission and consent of each of the other Defendants.

## GENERAL ALLEGATIONS

5.      Disney operates theme parks, including the Disneyland Resort in Anaheim, California which includes the Disneyland theme park and the California Adventures theme park.

6.      Ms. Nielsen is a longtime Disney customer who enjoys visiting Disney's theme parks, including the parks located in Anaheim, California.

7.      In or about August 2021, Disney introduced a sales program that it calls the Disneyland Resort Magic Key program.  Pursuant to the program, Disney offers for sale a variety of Magic Key Passes.  Consumers who purchase a Magic Key pass from Disney are entitled to make reservations to enter the Disneyland and/or California Adventures theme parks without additional charge for a period of one year from the when their Magic Key pass is first used.  As a Disney enthusiast, Ms. Nielsen was interested in purchasing a Magic Key pass and, in September 2021, she began to research the various Dream Key options on the Disney website.

8.      Ms. Nielsen learned that Disney offered several different types of Magic Keys, including each of the following:  the Enchant Key pass, the Believe Key pass, and the Dream Key pass.  Ms. Nielsen was immediately interested in the top tier Dream Key pass because, according to Disney, it was not subject to "blockout dates" and would provide her with the most opportunities to visit the theme parks.

9.      Disney charges $1,399.00 for the Dream Key pass.  Disney advertises the Dream Key pass as follows:

-2-

## Dream Key Pass
## No Blockout dates

## Total
## $1,399.<sup>00</sup>

- Reservation-based admission to one or both theme parks every day of the year
- Theme park reservations can be made up to 90 days in advance.  This pass can hold up to 6 park reservations at a time on a rolling basis during any 90-day window, subject to restrictions.
- Park reservations are subject to availability and are not guaranteed for any specific dates or park
- Up to 15% off select dining
- Up to 20% off select merchandise in store
- Standard them park parking included*

    **No Blockout Dates**

    Admission is not guaranteed and is subject to capacity and other closures.

10.     The statements quoted in the above paragraph are taken from an advertisement that Ms. Nielsen reviewed on the Disney website and relied upon when she decided to purchase a Dream Key Pass.  A true and correct copy of a printout of the Advertisement is attached hereto as Exhibit A.  Collectively, the statements and Exhibit A are referred to herein as "the Advertisement."

11.     Disney also advertises the Enchant Pass and the Believe Pass.  In its advertisements for those passes, Disney tells consumers that "Blockout dates apply."

12.     After reading the Advertisement, Ms. Nielsen decided to purchase a Dream Key Pass.  She paid $1,399.00 for the Dream Key Pass and finalized her purchase on September 23, 2021.

13.     Shortly thereafter, Ms. Nielsen attempted to use her Magic Key to make reservations to visit Disneyland.  She was, however, disappointed to learn that Disney had already

-3-

1    blocked out many days, including all weekend days in the month of November 2021.  Specifically,

2    on or about October 19, 2021, Ms. Nielsen attempted to use her Dream Key to obtain an

3    admission ticket to Disneyland in November 2021.  The Disney reservation website informed her

4    that a total of seventeen days in November, including all weekend days, were unavailable to

5    Dream Key pass holders.  Given that Disney had advertised and promised that there would be no

6    "blockouts" for Dream Key holders, Ms. Nielsen was surprised.  As a frequent Disneyland visitor,

7    Ms. Nielsen thought it unlikely that *all* tickets and/or reservations for both Disneyland and

8    California Adventures had already been sold for seventeen of the 30 calendar days in November

9    2021.  Ms. Nielsen explored further.  She navigated to the section of the Disney website where

10   consumers can purchase single day passes to Disneyland and California Adventures.  That portion

11   of the website revealed that, in fact, as of October 19, 2021, neither park had sold all of its tickets

12   and/or reservations for any single day in November 2021.  In other words, Disney was happy to

13   sell Ms. Nielsen and other consumers single day passes for either park (or for both parks) for any

14   day in November 2021.  The problem was not that Disney had reached its capacity and therefore

15   could not provide reservations to its Dream Key pass holders, the problem was that Disney had

16   decided to block out reservations so that they were only available to new purchases and were not

17   available to Dream Key pass holders.

18          14.    Ms. Nielsen's experience with attempting to make a Dream Key reservation in

19   October 2021 to visit the parks in November 2021 is completely at odds with the advertised

20   features of the Dream Key pass and with Disney's promises to Ms. Nielsen when she purchased

21   her Dream Key.  The Advertisement told Ms. Nielsen and her fellow consumers that a Dream Key

22   would not be subject to blockout dates.  Ms. Nielsen reasonably believed and relied upon Disney's

23   advertisement and promise to mean that, if Disney had capacity at its Anaheim parks, Ms. Nielsen

24   and her fellow Dream Key pass holders would be allowed to make reservations and visit the park.

25          15.    On information and belief, Disney appears to be limiting the number of

26   reservations available to Dream Key pass holders on any given day in order to maximize the

27   number of single day and other passes that Disney can sell.  This practice directly contradicts

28   Disney's advertised promise that the Dream Key would not be subject to blockout dates.

1    Ms. Nielsen and others reasonably understood that, by advertising "no blockout dates," Disney

2    understood and expected consumers to believe that Disney would not artificially limit the capacity

3    of its parks and/or limit the number of Dream Key pass holders that can visit the parks on any

4    given day.

5         16.    It is true that, at the time of purchase, Disney told Ms. Nielsen and others that

6    "reservations are subject to availability and are not guaranteed for any specific dates or park."

7    Disney did not, however, tell Ms. Nielsen or other consumers that Disney planned to artificially

8    limit the number of available reservations by only allowing a certain number of Dream Key passes

9    to be used on each particular day.  In fact, Disney told Ms. Nielsen and her fellow consumers the

10   opposite:  It told them there would be no blockout dates.  Ms. Nielsen reasonably understood the

11   Advertisement—and the terms and conditions accompanying it—to mean that she could use her

12   Dream Key to reserve a ticket to a park so long as the park was not at capacity.  Ms. Nielsen

13   understood that she might not get a reservation for her preferred day or days for any number of

14   reasons, including limited capacity as a result of all tickets to the park having already been

15   purchased or due to a public health order that closed the park or reduced the numbers of guests

16   that could visit the park.  Ms. Nielsen did not know—and had no way of knowing—that the

17   Dream Key was, essentially, a "second class" ticket with limited availability because Disney had

18   reserved an unknown majority of the available reservations for single day or other full price ticket

19   purchases.  Ms. Nielsen understood that, by purchasing a Dream Key, she was paying a premium

20   so that she would have the highest tier pass and no blockout dates.  It was reasonable for

21   Ms. Nielsen to believe that her Dream Key would entitle her to reserve a ticket to the theme parks

22   whenever the parks were not at capacity.

23        17.    Ms. Nielsen has commenced this lawsuit to stop Disney from engaging in the

24   unlawful trade practices set forth more fully below in connection with its offer and sale of the

25   Dream Key passes, including its practice of promising consumers that Dream Keys would have no

26   blockout dates even though Disney restricts the use of Dream Keys so that, in fact, they cannot be

27   used by Dream Key pass holders on multiple days each month.  Ms. Nielsen seeks injunctive relief

28   to prevent Disney from engaging in these and similar unlawful trade practices, civil penalties to

1   deter Disney and others similarly situated from engaging in these and similar unlawful trade

2   practices, disgorgement of Disney's unlawfully obtained revenue and profit, and the payment of

3   costs, attorney's fees, damages, and restitution based on the harm consumers have experienced due

4   to Disney's conduct.

5         18.    Ms. Nielsen was deceived by and relied upon the Advertisement.  Ms. Nielsen

6   purchased her Dream Key pass in reliance on the false and deceptive advertising and without

7   knowledge of Disney's true practices regarding the reservation of park tickets with Dream Key

8   passes.  Ms. Nielsen, as a reasonable consumer, is not required to scrutinize advertisements to

9   ferret out misleading facts and omissions.  She is entitled to take a statement like "no blockout

10   dates" at face value and conclude that Disney would not artificially reduce the number of ticket

11   reservations available to Dream Key pass holders.  Ms. Nielsen is lawfully entitled to rely on

12   statements that Disney deliberately places on its websites.

13         19.    Ms. Nielsen, and others similarly situated, have not received the benefits of the

14   Dream Key passes that were promised to them.  Instead of receiving a "no blockout date" pass that

15   would allow them to reserve admission to the parks whenever the parks had capacity, Ms. Nielsen

16   and her fellow Dream Key pass holders received a much more limited right to make reservations

17   for a limited class of Dream Key tickets.  This is a far cry from what Disney advertised to

18   consumers and from what Disney sold to its customers.

19         20.    Ms. Nielsen would not have purchased a Dream Key pass if she had known, or if

20   Disney had told her, that the Dream Key pass would be limited such that many days in any given

21   month (and all weekends) would be, essentially, unavailable to Dream Key pass holders.  Had

22   Disney not violated California law, Ms. Nielsen and her fellow Dream Key pass holders would not

23   have been injured as they were.

24         21.    Ms. Nielsen and the proposed class have lost money as a result of Disney's

25   unlawful behavior.  Ms. Nielsen and the proposed class altered their position to their detriment and

26   suffered loss in an amount equal to, at least, the fee for the Dream Key pass.  In fact, Ms. Nielsen

27   decided to visit the parks in November 2021 and had to purchase a ticket even though she holds a

28   Dream Key pass because Disney blocked out so many of the days in November for Dream Key

**CLASS ACTION COMPLAINT**

1 | pass holders.

2 | **CLASS ALLEGATIONS**

3 |     22.    Ms. Nielsen brings this action individually and as a class action on behalf of all of

4 | other consumers who purchased Dream Key passes from Disney during the four years prior to the

5 | filling of this lawsuit up to the time class certification is granted.

6 |     23.    Ms. Nielsen's claims are typical of the claims of the class because she purchased

7 | her Dream Key passes after having read and reviewed the Advertisement that was made available

8 | to all consumers who purchase Dream Key passes.

9 |     24.    Ms. Nielsen is a representative party who will fully and adequately protect the

10 | interests of the class members because it is in her best interest to effectively prosecute the claims

11 | alleged herein to obtain the injunctive relief, restitution, damages, and/or penalties provided to her

12 | and her fellow consumers under California law.  Ms. Nielsen has retained counsel who is

13 | competent in both class action and consumer protection litigation.  Ms. Nielsen does not have an

14 | interest which is contrary to, or in conflict with, those of the class members which she seeks to

15 | represent.

16 |     25.    The number of class members is believed to include thousands of people which

17 | makes it impracticable to bring all members of the class individually before the court, or to join

18 | hundreds of individual class members as parties.  Furthermore, the identity of the members of the

19 | classes are determinable from the Defendants' records.  In addition, the records pertaining to the

20 | Dream Key passes purchased by consumers, the reservations made available to Dream Key pass

21 | holders, and the reservations that Dream Key pass holders were blocked from making are

22 | maintained by the Defendants.  A class action is, therefore, a reasonable and practical means of

23 | resolving the claims raised in this action.

24 |     26.    A class action is superior to other available means for the fair and efficient

25 | adjudication of this lawsuit.  Even if any class member could afford individual litigation against a

26 | large company like Disney, it would be unduly burdensome to the court system.  Individual

27 | litigation would magnify the delay and expense to all parties.  By contrast, a class action presents

28 | far fewer management difficulties and affords the benefits of uniform adjudication of the claims,

1  financial economy for the parties, and comprehensive supervision by a single court.

2  Concentrating this litigation in one forum will promote judicial economy and parity among the

3  claims of individual class members and judicial consistency.  Notice of the pendency and any

4  resolution of this action can be provided to class members by mail, print, broadcast, internet,

5  and/or multimedia publication.

6       27.     This type of case is well-suited for class action treatment because Disney's

7  advertising and practices with regard to Dream Key passes are uniform and were available and

8  applicable to all proposed class members in the same way.

9       28.     Many issues of law and/or fact are common to Ms. Nielsen and the class members.

10  These issues predominate over any individual questions.  These common issues and/or facts

11  include:

12       a.   Whether Disney falsely advertised its Dream Key passes when it told Ms. Nielsen

13            and her fellow consumers that the Dream Key passes did not have blockout dates;

14       b.   Whether Disney falsely advertised its Dream Key passes when it failed to tell

15            Ms. Nielsen and her fellow consumers that reservation availability for Dream Key

16            passes would be limited not by the capacity of the theme parks but by Disney's

17            policy and practice of allocating only a certain amount of reservations on each day

18            to Dream Key pass holders.

19       c.   Whether reasonable consumers like Ms. Nielsen and the proposed class were

20            mislead by the statements contained in the Advertisement;

21       d.   Whether Disney's practices constitute unfair business practices within the meaning

22            of California Business & Professions Code §§ 17200 and 17203;

23       e.   Whether Disney's practices constitute false or misleading advertising with the

24            meaning of California Business & Professions Code § 17500.

25       f.   Whether Disney's conduct violates California's Consumer Legal Remedies Act;

26       g.   Whether Ms. Nielsen and the class members are entitled to compensatory damages

27            and, if so, the means of measuring such damages;

28       h.   Whether Ms. Nielsen and the class members are entitled to restitution;

1        i.   Whether Disney's conduct, as alleged, should be enjoined;

2        j.   Whether Disney is liable for attorneys' fees and costs.

3    **FIRST CAUSE OF ACTION**

4    **VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT**

5    **CAL. CIV. CODE §§ 1750 ET SEQ.**

6        29.    Ms. Nielsen realleges and incorporates the allegations elsewhere in the Complaint

7    as if set forth in full herein.

8        30.    The Consumer Legal Remedies Act prohibits unfair or deceptive practices in

9    connection the sale of goods or services to a consumer. The CLRA is meant to be "[c]onstrued

10   liberally and applied to promote its underlying purposes, which are to protect consumers against

11   unfair and deceptive business practices and to provide efficient and economical procedures to

12   secure such protection." *See* Civil Code Section 1760.

13       31.    The Dream Key passes that Disney sells to consumers are "Services" as defined by

14   the CLRA.

15       32.    Ms. Nielsen and the proposed class members are "Consumers" as defined by the

16   CLRA.

17       33.    Ms. Nielsen's purchase of a Dream Key pass from Disney, and the proposed class

18   members' purchases of Dream Keys from Disney, were "Transactions" as defined by the CLRA.

19       34.    Disney's false and misleading practices as alleged herein and other policies, acts,

20   and practices described herein were designed to, and did, induce Ms. Nielsen and the proposed

21   class members to purchase Dream Keys for personal, family, or household purposes, and violated,

22   and continue to violate, at least the following sections of the CLRA:

23       a.   § 1770(a)(5): Representing that goods or services have sponsorship, approval,

24           characteristics, ingredients, uses, benefits, or quantities that they do not have or that

25           a person has a sponsorship, approval, status, affiliation, or connection that the

26           person does not have; and

27       b.   § 1770(a)(9): Advertising goods with intent not to sell them as advertised;

28       35.    Disney violated Sections 1770(a)(5) and (9) by marketing and falsely representing

-9-

1   Dream Keys as having "no blockout dates" even though Disney has a practice of blocking Dream

2   Key pass holders from making reservations even when Disney's theme parks are not at capacity.

3        36.     Disney never intended to sell Ms. Nielsen or the other proposed class members

4   Dream Key passes that were not subject to blockout dates.

5        37.     On information and belief, Disney's violations of the CLRA discussed above were

6   done with the actual knowledge, intent, and awareness that the conduct alleged was wrongful.

7        38.     On information and belief, Disney committed these acts knowing it would harm

8   Ms. Nielsen and the proposed class members.

9        39.     Ms. Nielsen and the proposed class members were injured by Disney because they

10   purchased Dream Key passes believing that the passes would not be subject to blockout dates only

11   to learn, once they owned the passes, that, in fact, they were subject to extensive block outs as

12   alleged herein.

13        40.     Ms. Nielsen and the proposed class members were harmed as a direct and

14   proximate result of Disney's violations of the CLRA and are thus entitled to a declaration that

15   Disney violated the CLRA.

16        41.     Ms. Nielsen, on behalf of herself and the proposed class members, seeks injunctive

17   relief under Civil Code § 1782(d).

18                        **SECOND CAUSE OF ACTION**

19           **VIOLATIONS OF THE FALSE ADVERTISING LAW**

20            **CAL. BUS. & PROF. CODE §§ 17500 ET SEQ.**

21        42.     Ms. Nielsen realleges and incorporates the allegations elsewhere in the Complaint

22   as if set forth in full herein.

23        43.     California's False Advertising Law ("FAL") provides that "[i]t is unlawful for any

24   person, firm, corporation or association, or any employee thereof with intent directly or indirectly

25   to dispose of real or personal property or to perform services" to disseminate any statement

26   "which is untrue or misleading, and which is known, or which by the exercise of reasonable care

27   should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

28        44.     As alleged herein, the Advertisement, policies, acts, and practices of Disney

1  relating to the sale of Dream Key passes mislead Ms. Nielsen and other consumers acting

2  reasonably to purchase tickets and attempt to make reservations to visit Disney's theme parks in

3  California.

4     45.    Ms. Nielsen and the proposed class members suffered injury in fact as a result of

5  Disney's actions as set forth herein because they purchased Dream Key passes based on Disney's

6  false and misleading marketing claims that the Dream Key pass would not be subject to blockout

7  dates.

8     46.    Ms. Nielsen and the proposed class members suffered injury in fact as a result of

9  Disney's actions as set forth herein because they purchased Dream Keys in reliance on Disney's

10  false and misleading Advertising. Specifically, Ms. Nielsen and the proposed class members were

11  injured by Disney because they purchased Dream Key passes believing that the passes would not

12  be subject to blockout dates only to learn, once they owned the passes, that, in fact, they were

13  subject to extensive block outs as alleged herein.

14     47.    Disney's business practices as alleged herein constitute unfair, deceptive, untrue,

15  and misleading advertising pursuant to the FAL because Disney advertised Dream Key passes in a

16  manner that is untrue and misleading, which Disney knew or reasonably should have known.

17     48.    Disney profited from its sales to unwary consumers of the falsely and deceptively

18  advertised Dream Key passes.

19     49.    As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Ms. Nielsen and the

20  proposed class members are entitled to injunctive and equitable relief and restitution.

21               **THIRD CAUSE OF ACTION**

22        **VIOLATIONS OF THE UNFAIR COMPETITION LAW**

23          **CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.**

24     50.    Ms. Nielsen realleges and incorporates the allegations elsewhere in the Complaint

25  as if set forth in full herein.

26     51.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

27  Cal. Bus. & Prof. Code § 17200.  The acts, omissions, misrepresentations, practices, and non-

28  disclosures of Disney as alleged herein constitute business acts and practices.

-11-

52.     A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.  As set forth herein, Disney's statements relating to the sale of its Dream Key passes are likely to deceive reasonable consumers and the public.

53.     The acts alleged herein are also "unlawful" under the UCL in that they violate at least the following laws: The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*. and The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*.

54.     Disney's conduct with respect to the advertising and sale of its Dream Key passes was unfair because Disney's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

55.     Disney's conduct with respect to the advertising and sale of its Dream Key passes was also unfair because it violated public policy as declared by specific statutory or regulatory provisions, including but not limited to the False Advertising Law.

56.     Disney's conduct with respect to the advertising and sale of its Dream Key passes was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

57.     Disney profited from the sale to unwary consumers of its falsely, deceptively, and unlawfully advertised Dream Key passes.

58.     Ms. Nielsen and the proposed class members are likely to be damaged by Disney's deceptive trade practices, as Disney continues to disseminate, and is otherwise free to continue to disseminate misleading information.  Thus, injunctive relief enjoining this deceptive practice is proper.

59.     Disney's conduct caused and continues to cause substantial injury to Ms. Nielsen and the proposed class members, who have suffered injury in fact as a result of Disney's fraudulent, unlawful, and unfair conduct because Disney has, in fact, blocked out dates for Dream Key pass holders.

60.     In accordance with Bus. & Prof. Code § 17203, Ms. Nielsen, on behalf of herself, the proposed class members, and the general public, seeks an order enjoining Disney from

1   continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and

2   to commence a corrective advertising campaign.

3       61.     Ms. Nielsen, on behalf of herself and the proposed class members, also seeks an

4   order for the restitution of all monies from the sale of the Dream Key passes that Disney unjustly

5   acquired through acts of unlawful competition.

6                           **FOURTH CAUSE OF ACTION**

7                           **BREACH OF CONTRACT**

8       62.     Ms. Nielsen realleges and incorporates the allegations elsewhere in the Complaint

9   as if set forth in full herein.

10      63.     As alleged herein, Ms. Nielsen and the proposed class members entered into

11  contracts with Disney whereby Disney agreed to sell Dream Key passes to Ms. Nielsen and the

12  proposed class members in exchange for $1,399.00 each.  Ms. Nielsen and the class members

13  specifically agreed with Disney that the Dream Key passes purchased by Ms. Nielsen and the class

14  members would not be subject to blockout dates.

15      64.     Ms. Nielsen and the proposed class members have performed their obligations

16  pursuant to their contracts with Disney but paying Disney the agreed price for the Dream Key

17  passes.

18      65.     Disney has breached its contracts with Ms. Nielsen and the proposed class

19  members by failing to provide Dream Key passes that are free from blockout dates.

20      66.     As a result of Disney's breaches of the Agreements, Ms. Nielsen seeks monetary

21  damages, on behalf of herself and others similarly situated, in excess of the jurisdictional limit in

22  an amount to be proven at trial.  Ms. Nielsen also seeks all appropriate equitable relief.

23                          **FIFTH CAUSE OF ACTION**

24                          **NEGLIGENT MISREPRESENTATION**

25      67.     Ms. Nielsen realleges and incorporates the allegations elsewhere in the Complaint

26  as if set forth in full herein.

27      68.     Disney represented to Ms. Nielsen and other consumers that the Dream Key passes

28  would not be subject to blockout dates.  To communicate this representation and to convince

-13-

1  Ms. Nielsen and the proposed class members to purchase Dream Key passes, Disney supplied

2  them with information, namely the Advertising found on Disney's website.  Disney knew, or

3  should have known, that the information contained in the Advertising was false and/or misleading

4  to Ms. Nielsen and the proposed class members.

5        69.    The misrepresentations concerned material facts about the Dream Key passes that

6  influenced Ms. Nielsen and the proposed class members to purchase Dream Key passes.

7        70.    At the time Disney made the misrepresentations, Disney knew or should have

8  known that the misrepresentations were false or Disney made the misrepresentations without

9  knowledge of their truth or veracity.

10        71.    Ms. Nielsen and the proposed class members reasonably, justifiably, and

11  detrimentally relied on the misrepresentations and, as a proximate result thereof, have and will

12  continue to suffer damages in the form of lost money from the purchase price of the Dream Key

13  passes.

14  **SIXTH CAUSE OF ACTION**

15  **CONCEALMENT/ NON-DISCLOSURE**

16        72.    Ms. Nielsen realleges and incorporates the allegations elsewhere in the Complaint

17  as if set forth in full herein.

18        73.    Disney knew at the time of sale that it had falsely represented the fact that Dream

19  Key passes would actually be subject to blockout dates.  In addition, Disney knew that it was, in

20  fact, concealing from Ms. Nielsen and the proposed class members that the Dream Key passes

21  would be subject to arbitrary and artificial capacity limitations set by Disney that had nothing to

22  do with the actual capacity of its theme parks but, instead, were designed to allow Disney to sell

23  more single day passes rather than allow reservations for Dream Key pass holders.

24        74.    Disney had exclusive knowledge of the Advertisement's falsity at the time of sale.

25  The defect (the actual practice regarding blockout dates and capacity limitations) is latent and not

26  something that Ms. Nielsen and the proposed class members, in the exercise of reasonable

27  diligence, could have discovered independently prior to purchase.  The defect would not be

28  disclosed by careful, reasonable inspection by the purchaser.

75.     Disney had the capacity to, and did, deceive Ms. Nielsen and the proposed class members into believing that they would receive Dream Key passes that were not subject to blockout dates or artificially created limitations, when in reality, Ms. Nielsen and the proposed class members did not receive the Dream Key passes as advertised and promised.

76.     Disney undertook active and ongoing steps to conceal its actual practices with regarding to Dream Key passes and the use of them to reserve admission to Disney's theme parks. Ms. Nielsen is aware of nothing in Disney's advertising, publicity, or marketing materials that discloses the truth about the actual blockout dates and capacity limitations associated with the Dream Key passes despite the fact the Disney has known all along about such practices.

77.     The facts concealed and/or not disclosed by Disney to Ms. Nielsen and the proposed Class Members are material facts in that a reasonable person would have considered them important in deciding whether to purchase a Dream Key pass.

78.     Disney had a duty to disclose accurate information regarding the actual benefits associated with a Dream Key pass.

79.     Disney intentionally concealed and/or failed to disclose its actual practices with regard to Dream Key passes for the purpose of inducing Ms. Nielsen and the proposed class members to act thereon.

80.     Ms. Nielsen and the proposed class members justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the Dream Key passes.

81.     Ms. Nielsen and the proposed class members suffered a loss of money as a result of Disney's false information because they would not have purchased the Dream Key passes if the truth concerning Disney's Advertisement and the Dream Key passes had been known.

82.     WHEREFORE, Ms. Nielsen prays for judgment against Defendants, and each of them, as set forth below.

///

///

///

1                                       **PRAYER**

2       1.        An Order declaring this action to be a proper class action, appointing Ms. Nielsen

3 as class representative, and appointing her undersigned counsel as class counsel;

4       2.        An Order requiring Disney to bear the cost of class notice;

5       3.        An Order enjoining Disney from engaging in the unfair, unlawful, and deceptive

6 business practices and false advertising complained of herein;

7       4.        An Order compelling Disney to conduct a corrective advertising campaign;

8       5.        An Order compelling Disney to recall and destroy all misleading and deceptive

9 advertising materials;

10      6.        An Order requiring Disney to disgorge all monies, revenues, and profits obtained

11 by means of any wrongful act or practice;

12      7.        An Order requiring Disney to pay restitution to restore all funds acquired by means

13 of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or

14 practice, untrue or misleading advertising, plus pre-and postjudgment interest thereon;

15      8.        An Order requiring Disney to pay all actual and statutory damages permitted under

16 the causes of action alleged herein;

17      9.        An award of attorneys' fees and costs; and

18      10.      Any other and further relief that Court deems necessary, just, or proper.

19

20 Dated: November 9, 2021                 VENTURA HERSEY & MULLER LLP

21

22                          By:

23                             DANIEL J. MULLER
                               Attorneys for Plaintiff and the Proposed Class

24

25

26

27

28

# EXHIBIT A

# Dream Key Pass
## No Blockout dates

Total
**$1,399⁰⁰**

- Reservation-based admission to one or both theme parks every day of the year
- Theme park reservations can be made up to 90 days in advance. This pass can hold up to 6 park reservations at a time on a rolling basis during any 90-day window, subject to restrictions.
- Park reservations are subject to availability and are not guaranteed for any specific dates or park.
- Up to 15% off select dining
- Up to 20% off select merchandise in store
- Standard theme park parking included*

📅 No Blockout Dates
Admission is not guaranteed and is subject to capacity and other closures.

Electronically Filed by Superior Court of California, County of Orange, 11/09/2021 04:23:02 PM.
30-2021-01230857-CU-BT-CXC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Daniel J. Muller, Esq. (SBN 193396); Anthony F. Ventura, Esq. (SBN 191107)<br>VENTURA HERSEY & MULLER, LLP<br>1506 HAMILTON AVENUE, SAN JOSE, CA 95125 | FOR COURT USE ONLY |
| TELEPHONE NO.: (408) 512-3022    FAX NO. *(Optional):* (408) 512-3023 | |
| ATTORNEY FOR *(Name):* PLAINTIFFS | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 751 W. SANTA ANA BLVD.,
MAILING ADDRESS: 751 W. SANTA ANA BLVD.,
CITY AND ZIP CODE: SANTA ANA 92701-2028
BRANCH NAME: CIVIL COMPLEX CENTER

CASE NAME:
JENALE NIELSEN, ET AL VS. WALT DISNEY PARKS AND RESORTS U.S., Inc., ET AL.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 30-2021-01230857-CU-BT-CXC |
| | | | JUDGE: Judge Randall J. Sherman |
| | | | DEPT.: CX-105 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse<br>condemnation (14) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | [ ] Enforcement of judgment (20) |
| [x] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Miscellaneous Civil Complaint** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Fraud (16) | [ ] Residential (32) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Other petition *(not specified above)* (43) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [x] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more
          issues that will be time-consuming to resolve              courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence              court
                                                            f. [x] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 6
5. This case [x] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 9, 2021

DANIEL J. MULLER, ESQ.
_____                    ▶ _____
(TYPE OR PRINT NAME)                                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
                                                                                                                    Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET** CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007] **CIVIL CASE COVER SHEET** Page 2 of 2

Case 8:21-cv-02055-DOC-ADS Document 1-1 Filed 12/15/21 Page 24 of 24 Page ID #:32

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Daniel Muller, 193396<br>Ventura Hersey & Muller, LLP<br>1506 Hamilton Avenue<br>San Jose, CA 95125<br>TELEPHONE NO.: (408)512-3022<br>ATTORNEY FOR *(Name):* Plaintiff | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

Superior Court of California, Orange County

751 W. Santa Ana Blvd.

Santa Ana, CA 92701

| PLAINTIFF/PETITIONER: Jenale Nielsen, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Walt Disney Parks and Resorts U.S., Inc., et al. | 30-2021-01230857-CU-BT-CXC |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.
2. I served copies of:

Complaint, Summons, Civil Case Cover Sheet

3. a. Party served: WALT DISNEY PARKS AND RESORTS U.S., INC., a Florida corporation

   b. Person Served: CSC - Lai Saevang - Person Authorized to Accept Service of Process

4. Address where the party was served: 2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833
5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 11/15/2021    (2) at (time): 1:45PM
6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

WALT DISNEY PARKS AND RESORTS U.S., INC., a Florida corporation
under: CCP 416.10 (corporation)

7. **Person who served papers**
   a. Name:      Tyler Anthony DiMaria
   b. Address:   One Legal - P-000618-Sonoma
              1400 North McDowell Blvd, Ste 300
              Petaluma, CA 94954

   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 40.00
   e I am:
      (3) registered California process server.
         (i) Employee or independent contractor.
         (ii) Registration No.: 2006-06
         (iii) County: Sacramento

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: 11/15/2021

Tyler Anthony DiMaria

(NAME OF PERSON WHO SERVED PAPERS)                          (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

OL# 17225034