DAVID C. MARCUS (CA Bar No. 158704)
(Email: david.marcus@wilmerhale.com)
WILMER CUTLER PICKERING
          HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Telephone: (213) 443-5312
Facsimile: (213) 443-5400

*Attorneys for Defendant*
*Walt Disney Parks and Resorts U.S., Inc.*

*(additional counsel listed below)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENALE NIELSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALT DISNEY PARKS AND RESORTS U.S., INC., a Florida Corporation, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 8:21-cv-02055-DOC-ADS<br><br>**MEMORANDUM OF LAW IN SUPPORT OF WALT DISNEY PARKS AND RESORTS U.S., INC.'S MOTION TO DISMISS**<br><br>Hearing Date: February 28, 2022<br>Time: 8:30 a.m.<br>Judge: Honorable David O. Carter<br>Courtroom: 9D |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

ALAN SCHOENFELD (*admitted pro hac vice*)
(Email: alan.schoenfeld@wilmerhale.com)
RYAN CHABOT (*admitted pro hac vice*)
(Email: ryan.chabot@wilmerhale.com)
WILMER CUTLER PICKERING
        HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7294
Facsimile: (212) 230-8888

MARGARITA BOTERO (*admitted pro hac vice*)
(Email: margarita.botero@wilmerhale.com)
WILMER CUTLER PICKERING
        HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Telephone: (720) 274-3130
Facsimile: (720) 274-3133

*Attorneys for Defendant*
*Walt Disney Parks and Resorts U.S., Inc.*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

# TABLE OF CONTENTS

BACKGROUND ......................................................................................................1

   A.   The Magic Key Program .........................................................................1

   B.   This Lawsuit ...........................................................................................3

LEGAL STANDARD............................................................................................4

ARGUMENT .........................................................................................................5

I.   Nielsen Fails To Allege Any Breached Promise, Misrepresentation, Concealed Material Fact, Or False Advertising ............................................5

   A.   Nielsen Fails To Allege A Breach Of Contract (Count IV)....................10

   B.   Nielsen Fails To Allege A Negligent Misrepresentation (Count V) .........11

   C.   Nielsen Fails To Allege Concealment (Count VI)....................................11

   D.   Nielsen Fails To Allege False Advertising (Counts I, II, and III) .............12

II.   Nielsen's Tort Claims Fail For Independent Reasons...................................15

   A.   The Economic Loss Rule Bars Nielsen's Tort Claims .............................15

   B.   Nielsen Fails To Plausibly Allege Intent To Defraud...............................17

   C.   Nielsen Fails To Plausibly Allege That WDPR Lacked Any Reasonable Ground To Believe Its Representation ......................................18

III.   Nielsen's Statutory Claims Fail For Independent Reasons ..........................20

   A.   The Court Cannot Grant Equitable Relief Under *Sonner* ..........................20

   B.   Nielsen Lacks Standing To Pursue Prospective Relief..............................22

   C.   Nielsen's Claims Are Outside The Scope Of The CLRA..........................22

CONCLUSION ...................................................................................................24

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajetunmobi v. Clarion Mortgage Capital, Inc.*,
  2012 WL 2945051 (C.D. Cal. July 17, 2012), *aff'd*, 595 F. App'x
  680 (9th Cir. 2014) .................................................................................12

*American Airlines, Inc. v. Wolens*,
  513 U.S. 219 (1995) ................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................4

*Avakian v. Wells Fargo Bank, N.A.*,
  827 F. App'x 765 (9th Cir. 2020) ...........................................................19

*Bakhtiar v. FCA US LLC*,
  2021 WL 3206045 (C.D. Cal. Apr. 12, 2021) .......................................17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................4

*Circle Click Media LLC v. Regus Management Group LLC*,
  2013 WL 57861 (N.D. Cal. Jan. 3, 2013) ..............................................18

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ..............................................................................22

*Clark v. American Honda Motor Co.*,
  528 F. Supp. 3d 1108 (C.D. Cal. 2021) .................................................21

*County of Maricopa v. Office Depot, Inc.*,
  759 F. App'x 597 (9th Cir. 2018) ...........................................................19

*Cutler v. Rancher Energy Corp.*,
  2014 WL 1153054 (C.D. Cal. Mar. 11, 2014) ..................................11, 19

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ............................................................12, 13

ii

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Elizabeth M. Byrnes, Inc. v. Fountainhead Commercial Capital, LLC*,
2021 WL 5507225 (C.D. Cal. Nov. 24, 2021) ............................................20, 21

*EVGA Corp. v. B & H Foto & Electroncis Corp.*,
2020 WL 5028321 (C.D. Cal. June 22, 2020)...................................................16

*Ex parte Quarg*,
149 Cal. 79 (1906) ............................................................................................23

*Fairbanks v. Superior Court*,
46 Cal. 4th 56 (2009) ........................................................................................23

*Federal Deposit Insurance Corp. v. Fidelity National Title Insurance Co.*,
2010 WL 11561173 (C.D. Cal. Oct. 19, 2010) ................................................16

*Ford v. Hotwire, Inc.*,
2008 WL 5874305 (S.D. Cal. Feb. 25, 2008)..............................................12, 19

*Foster-Gardner, Inc. v. National Union Fire Insurance Co.*,
18 Cal. 4th 857 (1998) ........................................................................................8

*Gibson v. Jaguar Land Rover North America, LLC*,
2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ...................................................21

*GIC Real Estate, Inc. v. ACE American Insurance Co.*,
2018 WL 5310832 (N.D. Cal. Aug. 20, 2018) ...................................................8

*Goldstein v. General Motors LLC*,
517 F. Supp. 3d 1076 (S.D. Cal. 2021)........................................................12, 18

*Graham v. VCA Animal Hospitals, Inc.*,
729 F. App'x 537 (9th Cir. 2018) .....................................................................11

*Great American E & S Insurance Co. v. Kouw Pinnq Enterprise Co.*,
2013 WL 5461911 (C.D. Cal. Sept. 20, 2013) ...................................................8

*Hall v. Sea World Entertainment, Inc.*,
2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ...................................................23

*Heredia v. Sunrise Senior Living LLC*,
2021 WL 819159 (C.D. Cal. Feb. 10, 2021) .....................................................21

iii

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) ........................................................................13

*Huynh v. Quora, Inc.*,
   508 F. Supp. 3d 633 (N.D. Cal. 2020)............................................................21

*In re Easysaver Rewards Litigation*,
   906 F.3d 747 (9th Cir. 2018) ............................................................................6

*IntegrityMessageBoards.com v. Facebook, Inc.*,
   2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ......................................................21

*JIPC Management, Inc. v. Incredible Pizza Co.*,
   2009 WL 10672777 (C.D. Cal. June 29, 2009)..................................................8

*JMP Securities LLP v. Altair Nanotechnologies Inc.*,
   880 F. Supp. 2d 1029 (N.D. Cal. 2012)............................................................17

*Joslin v. Clif Bar & Co.*,
   2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ..................................................22

*Kissling v. Wyndham Vacation Resorts, Inc.*,
   2015 WL 7283038 (N.D. Cal. Nov. 18, 2015) ..................................................23

*Kobashi v. Sentry Insurance*,
   2021 WL 1231425 (C.D. Cal. Mar. 2, 2021)....................................................19

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ........................................................................13

*Lewis v. Google LLC*,
   851 F. App'x 723 (9th Cir.), *cert. denied*, 142 S. Ct. 434 (2021) ...............12, 18

*Lowry v. Southwest Airlines, Co.*,
   2015 WL 12656950 (C.D. Cal. Aug. 10, 2015) ................................................10

*Manzarek v. St. Paul Fire & Marine Insurance Co.*,
   519 F.3d 1025 (9th Cir. 2008) ..........................................................................4

*Mier v. CVS Pharmacy, Inc.*,
   2021 WL 1559367 (C.D. Cal. Mar. 22, 2021)............................................15, 16

iv

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Minkler v. Apple, Inc.*,
  65 F. Supp. 3d 810 (N.D. Cal. 2014)..........................................................17, 18

*Mirpad, LLC v. California Insurance Guarantee Ass'n*,
  132 Cal. App. 4th 1058 (2005) .........................................................................8

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) .............................................................................13

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992)...........................................................................................6

*National Tax Institute, Inc. v. Topnotch at Stowe Resort & Spa*,
  388 F.3d 15 (1st Cir. 2004)............................................................................8-9

*Nese v. Scenario Cokram USA, Inc.*,
  2021 WL 4497893 (C.D. Cal. July 20, 2021)...............................................21, 22

*Pridgen v. Church & Dwight Co.*,
  2020 WL 2510517 (C.D. Cal. Mar. 2, 2020)................................................ 13-14

*Quiroz v. Sabatino Truffles N.Y., LLC*,
  2017 WL 8223648 (C.D. Cal. Sept. 18, 2017) ............................................. 15-16

*Rattagan v. Uber Technologies, Inc.*,
  19 F.4th 1188 (9th Cir. 2021) ........................................................................16

*Robinson v. United States*,
  586 F.3d 683 (9th Cir. 2009) ............................................................................4

*Scales v. Six Flags, Inc.*,
  2004 WL 1870499 (Ohio Ct. App. Aug. 20, 2004)........................................7, 9

*Schertz v. Ford Motor Co.*,
  2020 WL 5919731 (C.D. Cal. July 27, 2020)..................................................21

*Shay v. Apple Inc.*,
  2021 WL 1733385 (S.D. Cal. May 3, 2021) ...................................................22

*Sholiay v. Federal National Mortgage Ass'n*,
  627 F. App'x 654 (9th Cir. 2015)..............................................................11, 19

v

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...................................................................5, 20, 21

*Stewart v. Electrolux Home Products*, *Inc.*,
   304 F. Supp. 3d 894 (E.D. Cal. 2018) ...................................................17

*Thrifty Payless, Inc. v. Americana at Brand, LLC*,
   218 Cal. App. 4th 1230 (2013) ...............................................................11

*TML Recovery, LLC v. Cigna Corp.*,
   2021 WL 3730168 (C.D. Cal. July 26, 2021)......................................22

*Tufano v. State Farm Mutual Automobile Insurance Co.*,
   854 F. App'x 134 (9th Cir. 2021) ...........................................................14

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................17, 18, 19

*Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers*
   *& Trainmen General Committee of Adjustment, Central Region*,
   558 U.S. 67 (2009)....................................................................................4

*United Guaranty Mortgage Indemnity Co. v. Countrywide Financial Corp.*,
   660 F. Supp. 2d 1163 (C.D. Cal. 2009) ................................................17

*United States v. Fisher*,
   137 F.3d 1158 (9th Cir. 1998) ..................................................................6

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .....................................................................2

*Valentine v. Cedar Fair, L.P.*,
   174 N.E.3d 900 (Ohio Ct. App.), *appeal allowed*, 175 N.E.3d 1286
   (Ohio 2021)...............................................................................................23

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) ...................................................................12

*Wixon v. Wyndham Resort Development Corp.*,
   2008 WL 1777590 (N.D. Cal. Apr. 18, 2008)....................................24

vi

*Zaback v. Kellogg Sales Co.*,
  2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) ........................................................20

**Statutes & Rules**

Cal. Civ. Code
  § 1761(a)-(b) ........................................................................................................22
  § 1770(a) ..............................................................................................................22

Fed. R. Civ. Proc.
  12(b)(1) ...................................................................................................................4
  12(b)(6) ...................................................................................................................4

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

1        Jenale Nielsen purchased a Dream Key pass to Disneyland Resort theme

2    parks through a new, reservation-based annual passholder offering called the

3    Magic Key program.  The program offers several tiers of annual passes.  Holders

4    of the highest tier of pass—the Dream Key pass—have access to park reservations

5    with "no blockout dates," among other benefits.  "No blockout dates" means what

6    it says—that no dates are categorically inaccessible.  The Dream Key

7    advertisement and terms and conditions plainly state that theme park reservations

8    are required and that park reservations are subject to both reservation "availability"

9    and park "capacity."  The terms of the Dream Key offer are clear: with a Dream

10   Key purchase, a passholder becomes eligible to access reservations to Disneyland

11   Resort theme parks on any day of the year that the parks have both capacity and

12   reservations available to Magic Key passholders.

13       Nielsen brings this lawsuit under an implausible theory that ignores those

14   express terms.  In essence, Nielsen claims that her Dream Key was subject *only* to

15   park capacity.  Specifically, she contends that a pass subject to reservation

16   "availability" and "capacity" but not "blockout dates" entitled her "to reserve a

17   ticket to a park so long as the park was not at capacity."  Compl. ¶ 16.  That theory,

18   however, requires unreasonably misinterpreting "no blockout dates" and ignoring

19   "subject to availability" altogether.  That is not what the applicable terms and

20   conditions and advertisement say; accordingly, her complaint fails at the threshold.

21       Simply put, Nielsen received what she was promised.  For this reason and

22   more, Nielsen's complaint should be dismissed with prejudice.

23                                          **BACKGROUND**

24   **A.    The Magic Key Program**

25       In August 2021, Walt Disney Parks and Resorts U.S., Inc. (WDPR)

26   introduced Magic Key passes to replace its former annual passholder program.

27                                               1

28   **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
     *Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

Compl. ¶ 7. There are four tiers of Magic Key passes: Dream, Believe, Enchant, and Imagine. Dream Key passes are the highest tier. Dream Key passholders can hold up to six park reservations at a time with "no blockout dates" applied, among other benefits. *Id.* ¶ 9. Dream Key passes sold for $1,399. *Id.* In contrast, the Believe, Enchant, and Imagine Keys all are subject to blockout dates. *Id.* ¶ 11.

When a guest purchases any Magic Key pass, including the Dream Key pass, she receives in exchange eligibility to make reservations to the theme parks without an additional fee. That is, the pass grants "*reservation-based* admission" to the parks. Compl. ¶¶ 7, 9 (emphasis added). The advertisement for Dream Keys cited in the complaint states plainly that "Park reservations are subject to availability and are not guaranteed for any specific dates or park." *Id.* ¶ 9.

Magic Key passes are governed by terms and conditions. Compl. ¶ 16; *see* Schoenfeld Decl. Ex. A ("T&C").[1] Under "Theme Park Admission," the terms and conditions provide:

- "Park reservations are limited and subject to availability and applicable Pass blockout dates." *Id.*

- "It may be difficult for Passholders to get park reservations to visit on certain dates or a select park, and park reservations are not guaranteed for any specific dates or park, no matter the Pass type." *Id.*

---

[1] The Magic Key terms and conditions are attached as Exhibit A to the Declaration of Alan Schoenfeld in Support of Motion to Dismiss, filed with this motion. The terms and conditions are "incorporated by reference into [the] complaint" and "form[] the basis of the plaintiff's claim," and so can be considered on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see, e.g.*, Compl. ¶ 16.

2

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

- "Passholders are eligible to make a park reservation for any date on
  which their Pass is not blocked out, subject to availability and conditions
  set forth above." *Id.*

The "General" terms and conditions similarly provide that "Theme parks,
restaurants, attractions, entertainment, products, services and offerings may be
modified or limited in capacity or availability; … and are not guaranteed. " T&C.
They also state that "Restrictions apply including, but not limited to, capacity
constraints and other closures." *Id.*

## B.    This Lawsuit[2]

Nielsen is "a Disney enthusiast" who began researching Magic Key passes
in September 2021.  Compl. ¶ 7.  She bought a Dream Key pass on September 23,
2021, about a month after they first became available.  *Id.* ¶¶ 7, 12.  On October
19, 2021, Nielsen tried to make reservations to visit Disneyland in November
2021.  *Id.* ¶ 13.  Reservations were available to her for 13 days in November.  *Id.*
Nielsen nevertheless alleges that reservations were unavailable to her for 17 days
in November at the time she tried to make a reservation, while park reservations
for single-day ticket holders were available for all 30 days.  *Id.*

Nielsen claims that making reservations available for single-day tickets
when reservations are unavailable to her constitutes a "blockout date" contrary to
the terms of her Dream Key pass.  Compl. ¶¶ 13-14.  She alleges that she
understood the Dream Key "Advertisement—and the terms and conditions
accompanying it—to mean that she could use her Dream Key to reserve a ticket to
a park so long as the park was not at capacity." *Id.* ¶ 16.

---

[2]    WDPR does not admit or concede any of Nielsen's allegations, which are
taken as true for purposes of this motion to dismiss only.

3

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

Based on these allegations, Nielsen filed this putative class action against WDPR in California state court, bringing claims for breach of contract, negligent misrepresentation and concealment, and equitable relief under the Consumer Legal Remedies Act (CLRA), False Advertising Law (FAL), and Unfair Competition Law (UCL), under a false advertising theory.   WDPR removed to this Court under the Class Action Fairness Act and now moves to dismiss.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  On a motion to dismiss, the Court accepts as true the complaint's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The Court does not accept as true legal conclusions couched as factual allegations.  *See Iqbal*, 556 U.S. at 678.

Under Federal Rule of Civil Procedure 12(b)(1), claims must be dismissed if the Court lacks subject-matter jurisdiction to adjudicate them.  Subject-matter jurisdiction "refers to a tribunal's 'power to hear a case,' a matter that 'can never be forfeited or waived.'"  *Union Pac. R.R. Co. v. Brotherhood of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81 (2009).  The plaintiff bears the burden of establishing subject-matter jurisdiction.  *See, e.g.*, *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

"No blockout dates" means that no dates are blocked out to Dream Key passholders.  It does not mean that Dream Key passholders can make a reservation as long as the park is not at capacity.  On the contrary, Dream Key reservations are expressly subject to availability *and* capacity, as its terms and conditions and advertisements fully disclose.  Nielsen does not allege that any date was categorically inaccessible to her, and therefore she fails to state a claim for breach of contract, misrepresentation, concealment, or false advertising.

Nielsen's tort and statutory claims should be dismissed for independent reasons.  Her tort claims are duplicative of her contract claim, so are barred by the economic loss rule.  Nielsen's tort claims also fail because Nielsen does not allege WDPR's intent to defraud or its lack of a reasonable ground to believe its representation was true.  Her California statutory claims seek equitable remedies for which there are adequate remedies at law and therefore should be dismissed for lack of subject-matter jurisdiction under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).  They also seek prospective equitable relief for which Nielsen lacks standing.  And the CLRA claim fails because the Dream Key is neither a product nor a service within the scope of the CLRA.

For the foregoing reasons, the complaint should be dismissed with prejudice.

**I.    Nielsen Fails To Allege Any Breached Promise, Misrepresentation, Concealed Material Fact, Or False Advertising**

Nielsen's lawsuit is based on a fundamentally flawed premise—that WDPR imposed blockout dates when it represented that it would not.  This premise takes "no blockout dates" to mean that the *only* limit on her reservations was park "capacity," Compl. ¶¶ 9, 16, an interpretation that is unreasonable on its face and incompatible with the express disclosure that Dream Key reservations, while not

5

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

subject to blockout dates, are subject to availability *and* capacity.  This defect warrants dismissal of Nielsen's entire complaint.

The phrase "no blockout dates" has a plain meaning.  A date is, of course, a particular day.  To "block out" (or "black out") a date is to make it categorically inaccessible.  *See United States v. Fisher*, 137 F.3d 1158, 1163 (9th Cir. 1998) ("A busy district court can ill afford to block out time for a trial that very likely will not occur."); *cf. Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 225 (1995) (defining "blackout dates" to mean "restrictions on dates credits could be used"); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 393 (1992) ("Blackout date means any date on which travel or use of other program benefits is not permitted for program members seeking to redeem their award levels." (quoting guidelines from the National Association of Attorneys General)); *In re Easysaver Rewards Litig.*, 906 F.3d 747, 757 (9th Cir. 2018) (describing credits with "a series of blackout periods" during which "they cannot be used").

Nielsen does not plausibly allege that WDPR imposed "blockout dates." The complaint does not allege that any dates were categorically inaccessible to Dream Key holders, including Nielsen.  Instead, the complaint alleges that Nielsen interpreted "blockout dates" to mean that she would have access to the parks every day of the year so long as the parks were not at capacity.  *See* Compl. ¶ 16.  That is an unreasonable interpretation of an unambiguous term with a commonsense meaning.

In addition to being unreasonable on its face, Nielsen's alleged interpretation cannot be squared with the disclosure that Dream Key reservations are subject to availability *and* capacity.  Both the advertisement and the terms and conditions that

6

Nielsen read and agreed to by purchasing her Dream Key[3] make clear that "blockout dates," reservation "availability," and park "capacity" are distinct and independent limitations on Magic Key passholders' ability to make reservations to the parks.  The advertisement and terms and conditions repeatedly emphasize that reservations are limited by availability.  The advertisement states: "Park reservations are subject to availability and are not guaranteed for any specific dates or park."  Compl. ¶ 9.  Similarly, the terms and conditions state: "Park reservations are limited and subject to availability and applicable Pass blockout dates" and "Passholders are eligible to make a park reservation for any date on which their Pass is not blocked out, subject to availability and conditions set forth above."  T&C.  The terms and conditions also warn that "[i]t may be difficult for Passholders to get park reservations to visit on certain dates or a select park, and park reservations are not guaranteed for any specific dates or park, no matter the Pass type."  *Id.*  These provisions make clear that a pass with "no blockout dates" makes passholders "eligible to make a park reservation for any date," with full disclosure that "reservations are limited and subject to availability" and "are not guaranteed for any specific dates or park, no matter the Pass type."  *Id.*

The terms and conditions also demonstrate that "capacity" and reservation "availability" are distinct limitations on the use of a pass.  In fact, they repeatedly separately reference "availability" and "capacity" as limits on reservations.  For example, the terms and conditions provide that "Theme parks, … services and offerings may be modified or limited in capacity *or* availability; … and are not

---

[3]      Nielsen admits that she read the terms and conditions.  *See* Compl. ¶ 16. She "was obligated to read these 'terms and conditions' as they represented [her] rights and the limitations of those rights as a season pass holder."  *Scales v. Six Flags, Inc.*, 2004 WL 1870499, at *4 (Ohio Ct. App. Aug. 20, 2004).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

guaranteed." T&C (emphasis added).  The separate use of "availability" and "capacity" "implies that the parties intended these terms to have different meanings." *GIC Real Est., Inc. v. ACE Am. Ins. Co.*, 2018 WL 5310832, at *7 (N.D. Cal. Aug. 20, 2018) (citing *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 870 (1998)); *Great Am. E & S Ins. Co. v. Kouw Pinnq Enter. Co.*, 2013 WL 5461911, at *4 (C.D. Cal. Sept. 20, 2013) (granting motion to dismiss where agreement "clearly distinguishes" between two terms); *JIPC Mgmt., Inc. v. Incredible Pizza Co.*, 2009 WL 10672777, at *6 (C.D. Cal. June 29, 2009) ("[T]he agreement refers both to [one term and another term] in a single clause, suggesting that the two terms have a different meaning."); *Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*, 132 Cal. App. 4th 1058, 1070 (2005) ("As the policy repeatedly uses [two] words … separately and distinctly, these two words must be accorded their separate and distinct meanings.").  So while Nielsen's Dream Key pass had "no blockout dates," the pass was clearly subject to *both* reservation "availability" *and* "capacity" limitations.  *Id.*

Offering reservations subject to "availability" and not just "capacity" makes sense.  The First Circuit's decision in *National Tax Institute, Inc. v. Topnotch at Stowe Resort & Spa*, 388 F.3d 15 (1st Cir. 2004), is instructive.  National Tax Institute sued Topnotch, a resort hotel in Vermont with a capacity of 90 rooms. The Institute and Topnotch had negotiated a contract entitling the Institute to a block of 50 rooms at a discounted group rate every October for 10 years.  The contract provided:  "Additional rooms may be blocked at the group rate subject to availability." *Id.* at 17.  After five years, the Institute requested 70 rooms for future conferences, relying on this provision.  Topnotch said no, and the Institute sued.  In the litigation, "[t]he Institute [argued] that a room is 'available' if not already reserved by another customer; Topnotch [argued] that it is up to the management to

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

decide whether to make the group rate 'available' for more than 50 rooms." *Id.* at 18. Under the Institute's "proffered reading of the contract … it was entitled to the entire resort, during the option dates at peak season each year, as long as no rooms had already been reserved by others." *Id.* at 19 n.1.

Holding that the contract was "unambiguous," the First Circuit affirmed the district court's conclusion that the Institute's interpretation of the contract was unreasonable; Topnotch's interpretation, however, "make[s] sense." 388 F.3d at 19.[4] "In practical terms," the court wrote, "charging everyone a high price may leave many unfilled seats or rooms, and charging everyone a discounted price may attract too little revenue to cover total costs." *Id.* "Often the key in such situations … is for the seller to reserve enough uncommitted capacity for at least some high-paying customers while a possibly lesser but still vital contribution to revenues is obtained from the discount clients." *Id.* "From this perspective, it made perfect sense for Topnotch to reserve some but not all rooms for the Institute at low prices … ." *Id.* "By contrast, the idea that Topnotch would have agreed to rent all its rooms at [a discount] for high foliage season dates for the following ten years makes no sense." *Id.* "In the normal course of business, no rational hotelier would likely make such a contract," but the "Institute's reading of the contract assumes just such an improbable bargain." *Id.* Topnotch "easily prevail[ed]" based on these "clues as to the parties' intent." *Id.*; *see also Scales v. Six Flags, Inc.*, 2004 WL 1870499, at *4 (Ohio Ct. App. Aug. 20, 2004) (holding that "the term 'availability' is not ambiguous on its face" in a provision of season passholder terms and conditions that "Rides are subject to availability," and rejecting the

---

[4] Given the conclusion by the First Circuit and district court that "subject to availability" was unambiguous, it does not matter that *Topnotch* was decided on summary judgment, not a motion to dismiss.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

1  argument that this provision meant that a season passholder "was entitled to

2  'reasonable access' to rides").

3     In short, WDPR did what it represented and promised: it provided Nielsen a

4  pass with "no blockout dates" subject to reservation "availability" and "capacity"

5  constraints.  Nielsen's complaint accordingly fails to state a claim under any of her

6  causes of action: breach of contract (Count IV); negligent misrepresentation

7  (Count V); concealment (Count VI); or false advertising under California statutes

8  (Counts I, II, and III).

9     **A.    Nielsen Fails To Allege A Breach Of Contract (Count IV)**

10    Nielsen alleges that WDPR "has breached its contracts with Ms. Nielsen and

11 the proposed class members by failing to provide Dream Key passes that are free

12 from blockout dates."  Compl. ¶ 65.  But on the facts alleged, Nielsen's Dream

13 Key pass *is* free from blockout dates.  While park reservations on any date of the

14 year are subject to "availability" and "capacity," as WDPR promised and

15 disclosed, Nielsen does not and could not allege that there are any dates

16 categorically blocked out to her.

17    Courts reject contract claims where, as here, the defendant honored the terms

18 and conditions set forth in the contract.  *See, e.g.*, *Lowry v. Sw. Airlines, Co.*, 2015

19 WL 12656950, at *5 (C.D. Cal. Aug. 10, 2015) (entering judgment for defendant

20 on contract claim by plaintiff who purchased early check-in from Southwest to

21 obtain a better boarding position because the contract "language does not amount

22 to a promise or guarantee that [plaintiff] would receive a better boarding position

23 than any other passenger").  On the facts alleged, WDPR fulfilled its contractual

24 promises, and therefore Nielsen fails to state a claim for breach of contract.

25

26

27                              10

28

### B.   Nielsen Fails To Allege A Negligent Misrepresentation (Count V)

"A plaintiff cannot succeed on [a negligent misrepresentation claim] unless he or she shows that the defendant has made a misrepresentation." *Graham v. VCA Animal Hosps., Inc.*, 729 F. App'x 537, 541 (9th Cir. 2018) (citing *Thrifty Payless, Inc. v. Americana at Brand, LLC*, 218 Cal. App. 4th 1230 (2013)).[5]  The complaint alleges that WDPR "represented to Ms. Nielsen and other consumers that the Dream Key passes would not be subject to blockout dates."  Compl. ¶ 68. She has not, however, alleged facts plausibly showing that this representation was false or misleading.  No calendar dates were or are categorically unavailable or "blocked out" to Dream Key holders.  Nielsen received everything she purchased. She therefore fails to state a negligent misrepresentation claim.  *See, e.g.*, *Sholiay v. Fed. Nat'l Mortg. Ass'n*, 627 F. App'x 654, 655 (9th Cir. 2015) (dismissing negligent misrepresentation claim because the bank "did not represent to [plaintiff] that it would provide him with a loan modification, but instead only that it would consider his application," which it did); *Ford v. Hotwire, Inc.*, 2008 WL 5874305, at *7 (S.D. Cal. Feb. 25, 2008) (dismissing negligent misrepresentation claim because the "statements were not false" and the terms "disclose the fact that resort fees may be charged and that the prices stated may not include resort fees").

### C.   Nielsen Fails To Allege Concealment (Count VI)

Nielsen next alleges that WDPR concealed "that Dream Key passes would actually be subject to blockout dates."  Compl. ¶ 73.  To state a concealment claim, Nielsen must, among other things, allege that WDPR "concealed or suppressed a

---

[5]   "The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Cutler v. Rancher Energy Corp.*, 2014 WL 1153054, at *7 (C.D. Cal. Mar. 11, 2014).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

material fact." *Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1092 (S.D. Cal. 2021).[6] As discussed, Nielsen purchased a pass granting her eligibility to make reservations any day of the year without "blockout dates," which was subject to reservation "availability"—which was not guaranteed—and "capacity." WDPR disclosed just that—that Nielsen was "eligible to make a park reservation" subject to availability *and* capacity. And Nielsen's allegations do not show that WDPR actually imposed any blockout date. Thus, she states no claim for concealment. *See, e.g.*, *Lewis v. Google LLC*, 851 F. App'x 723, 725 (9th Cir.) ("[Plaintiff's] allegations did not show any alleged concealment of a material fact" because "under California law, a plaintiff cannot demonstrate … an alleged omission of information when the purportedly omitted information is disclosed in a contract."), *cert. denied*, 142 S. Ct. 434 (2021); *Ajetunmobi v. Clarion Mortg. Cap., Inc.*, 2012 WL 2945051, at *7 (C.D. Cal. July 17, 2012) (dismissing concealment claim because "Plaintiff cannot succeed on a concealment claim if there was no fact to conceal"), *aff'd*, 595 F. App'x 680 (9th Cir. 2014).

### D.     Nielsen Fails To Allege False Advertising (Counts I, II, and III)

Finally, Nielsen's FAL, CLRA, and UCL claims all fail. These "statutes are governed by the 'reasonable consumer' test," which requires a showing "that 'members of the public are likely to be deceived.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934,

---

[6]     "The elements of a claim for fraudulent concealment are: (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would have acted otherwise if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage." *Id.*

12

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

938 (9th Cir. 2008)).  "This is not a negligible burden."  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 880, 882 (9th Cir. 2021) (affirming dismissal of false advertising claims where the "representations are not misleading to a reasonable consumer as a matter of law").  The "reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled'"—not merely that the advertising "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Ebner*, 838 F.3d at 965 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)) (affirming dismissal of FAL, CLRA, and UCL claims); *see also Moore*, 4 F.4th at 882 ("Indeed, a plaintiff's unreasonable assumptions about a product's label will not suffice.").

The facts alleged by Nielsen "fail as a matter of law to show" that a "reasonable consumer would be misled."  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011).  Nielsen alleges that WDPR violated these statutes by "marketing and falsely representing Dream Keys as having 'no blockout dates' even though Disney has a practice of blocking Dream Key pass holders from making reservations even when Disney's theme parks are not at capacity."  Compl. ¶ 35 (CLRA); *see also id.* ¶¶ 45-46 (FAL), ¶¶ 51-61 (UCL).  As discussed above, no fact alleged in the complaint shows that WDPR imposed blockout dates on Nielsen's—or anyone's—Dream Key pass.  Nielsen's California statutory claims therefore are not plausibly alleged because WDPR did what it represented and promised it would do— it sold passes with "no blockout dates" (i.e., passes that made passholders "eligible to make a park reservation" for any date of the year) subject to reservation "availability" and "capacity" constraints.

This Court's decision in *Pridgen v. Church & Dwight Co.*, 2020 WL 2510517 (C.D. Cal. Mar. 2, 2020), is instructive.  There, the plaintiff sued the

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

maker of OxiClean for representing that its product could treat "65 loads," but could not hit that number when used as directed to treat "stains" (since even "typical stains" required double the product).  *Id.* at *1.  The plaintiff alleged that "the ambiguity of the term 'load(s)' is deceptive and misleading."  *Id.*  The Court explained that the plaintiff's argument was "unsupported by the actual packaging and without merit."  *Id.* at *3.  Rather, reasonable consumers would understand "65 loads" to mean that the product "contains enough to run 65 'regular loads' of laundry"—but "they would not think that, no matter how much OxiClean they used for a given task, the contents of the container would nevertheless stretch to accommodate 65 uses."  *Id.*  The Court found that the plaintiff's claims "depend[ed] on an unreasonable reading of the product labeling and are inadequately pleaded."  *Id.* at *4.  The Court dismissed the complaint, holding "that a significant portion of reasonable consumers are not likely to be misled by Defendant's labeling."  *Id.* at *3; *see also, e.g.*, *Tufano v. State Farm Mut. Auto. Ins. Co.*, 854 F. App'x 134, 136 (9th Cir. 2021) (affirming dismissal of UCL and FAL claims as "implausible under the 'reasonable consumer' standard" because a "reasonable consumer would not think the term 'insurance' means" what the plaintiff allegedly understood it to mean).

In the same way "loads" means loads, "no blockout dates" means no blockout dates and "subject to availability" means subject to availability, not subject only to capacity.  As in *Pridgen*, the claims here are viable only if a consumer reads the phrase at issue to mean something other than what it says.  Nielsen, like Pridgen, contends that she misread the product offering in that way.  But as there, Nielsen fails to allege facts showing that a significant portion of reasonable consumers also would do so.  Nielsen's subjective but "unreasonable reading" does not suffice.  Her FAL, CLRA, and UCL claims should be dismissed.

14

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

## II.     Nielsen's Tort Claims Fail For Independent Reasons

Nielsen's negligent misrepresentation and concealment claims should be dismissed for other, independent reasons.  *First*, the economic loss rule bars both of these tort claims.  *Second*, Nielsen fails to plausibly allege WDPR's intent to defraud, as required for her concealment claim.  *Third*, she fails to allege that WDPR had no reasonable ground to believe it was true that Dream Key passes had no blockout dates, as required for her negligent misrepresentation claim.

### A.     The Economic Loss Rule Bars Nielsen's Tort Claims

Nielsen's tort claims should be dismissed under the economic loss rule because they are conceptually indistinct from her breach of contract claim.  "The 'economic loss rule' prohibits plaintiffs from suing in tort for damages that lie only in contract."  *Mier v. CVS Pharmacy, Inc.*, 2021 WL 1559367, at *8 (C.D. Cal. Mar. 22, 2021).  Nielsen's tort claims allege the same wrongdoing as her contract claim—that her Dream Key pass has blockout dates despite advertisements to the contrary[7]—and they seek the same recovery as her contract claim, lost money.[8]  As this Court has observed, "in the context of class action lawsuits involving fraudulent or misleading representations on products, district courts regularly invoke the economic loss doctrine to bar negligent misrepresentation claims where

---

[7]     *Compare* Compl. ¶ 63 (breach of contract claim that Nielsen "specifically agreed with [WDPR]" that her pass "would not be subject to blockout dates."), *with id.* ¶ 68 (negligent misrepresentation claim that WDPR "represented" that the "Dream Key passes would not be subject to blockout dates.") and *id.* ¶ 73 (concealment claim that WDPR "knew at the time of sale that it had falsely represented the fact that Dream Key passes would actually be subject to blockout dates.").

[8]     *Compare* Compl. ¶ 66 (seeking "monetary damages" in breach of contract claim), *with id.* ¶ 71 (seeking "lost money" in negligent misrepresentation claim) and *id.* ¶ 81 (seeking "loss of money" in concealment claim).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

some form of physical harm is not alleged." *Quiroz v. Sabatino Truffles N.Y., LLC*, 2017 WL 8223648, at *6 (C.D. Cal. Sept. 18, 2017) (collecting cases).  So too with concealment claims.  *See, e.g.*, *Fed. Deposit Ins. Corp. v. Fid. Nat'l Title Ins. Co.*, 2010 WL 11561173, at *3 (C.D. Cal. Oct. 19, 2010) (economic loss rule bars concealment claims that "share an identity with the alleged breach of contract").[9]

Applying the economic loss rule makes particular sense in cases such as this, where the plaintiff brings *both* breach of contract and tort claims under identical allegations.  "[W]hile there may be circumstances in which a party to a contract could recover extra-contractually for negligent misrepresentation, this is not such a case" because the "most measured approach[] to the question considers the degree to which a misrepresentation and breach of contract claim 'parallel' each other, allowing for the elimination of negligent misrepresentation claims which in actuality are 'breach of contract claim[s] in disguise.'"  *EVGA Corp. v. B & H Foto & Elecs. Corp.*, 2020 WL 5028321, at *5-6 (C.D. Cal. June 22, 2020).[10]  Just so here, where Nielsen brings tort and contract claims alleging the very same wrongdoing, and seeking the same recovery.

---

[9]     Note, however, that the Ninth Circuit recently certified the following question to the California Supreme Court:  "Under California law, are claims for fraudulent concealment exempted from the economic loss rule?"  *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1193 (9th Cir. 2021).

[10]     In a case *without* a contract claim, this Court has observed that "[t]he issue of whether the economic loss rule bars claims for negligent misrepresentation under California law is unsettled" and followed decisions that "held that the economic loss rule does not apply to negligent misrepresentation claims."  *Mier*, 2021 WL 1559367, at *9.  Neither this Court nor others in the Central District have held that the economic loss rule does not apply where, as here, the alleged negligent misrepresentation is indistinct from the claimed breach of contract.

16

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

Numerous decisions from courts in this Circuit have applied the economic loss rule to dismiss tort claims under these circumstances. *See, e.g.*, *Bakhtiar v. FCA US LLC*, 2021 WL 3206045, at \*4 (C.D. Cal. Apr. 12, 2021) (holding that claims for negligent misrepresentation and concealment were barred by the economic loss rule "because each claim seeks relief for the same economic harm resulting from the alleged breach" of contract); *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 904 (E.D. Cal. 2018) (dismissing negligent misrepresentation and concealment claims because plaintiff did not allege any sort of "damages independent of the economic loss"); *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.,* 117 F. Supp. 3d 1092, 1105 (C.D. Cal. 2015) (dismissing negligent misrepresentation and fraudulent concealment claims that were "conceptually indistinct from a contract breach"); *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014) (dismissing negligent misrepresentation claim because plaintiff did not allege "personal injury or property damage"); *JMP Sec. LLP v. Altair Nanotechs. Inc.*, 880 F. Supp. 2d 1029, 1042-43 (N.D. Cal. 2012) (dismissing fraud and negligent misrepresentation claims that "consist of nothing more than [the defendant's] alleged failure to make good on its contractual promises" because plaintiff took the "allegations underpinning a straightforward claim for breach of a commercial contract and recast them as torts"); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1184-85 (C.D. Cal. 2009) (dismissing negligent misrepresentation claim where "the alleged misrepresentations are not conceptually distinct from the contract"). This Court should similarly apply the economic loss rule to dismiss Nielsen's tort claims.

### B.     Nielsen Fails To Plausibly Allege Intent To Defraud

Nielsen's concealment claim requires allegations satisfying Federal Rule of Civil Procedure 9(b) that WDPR "intentionally concealed or suppressed [a

17

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

material] fact with intent to defraud" her.  *Goldstein*, 517 F. Supp. 3d at 1092; *Minkler*, 65 F. Supp. 3d at 820.  She alleges no such facts.

At the outset, WDPR promised Nielsen and other Dream Key holders a pass with "no blockout dates" (i.e., a pass that made passholders "eligible to make a park reservation" any date of the year) subject to reservation "availability" and "capacity."  As discussed, *see supra* Part I, Nielsen has not identified an "actual defect" in the Dream Key she purchased.  *Minkler*, 65 F. Supp. 3d at 821.  She therefore "fail[s] to meet the 9(b) pleading standards for her claims sounding in fraud," *id.*, and the concealment claim should be dismissed for that reason alone.

Moreover, WDPR's extensive disclosures about the Dream Key confirm that there was no intent to defraud.  WDPR made repeated disclosures about the applicable availability and capacity constraints—including that reservations were not guaranteed—not just in the terms and conditions but in the cited advertisement. Even if it were debatable what those disclosures mean (and it is not), they negate any intent to conceal.  *See, e.g.*, *Lewis*, 851 F. App'x at 725 (affirming dismissal of concealment claim where "the purportedly omitted information is disclosed in the contract"); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2013 WL 57861, at *11 (N.D. Cal. Jan. 3, 2013) (dismissing concealment claim where defendant disclosed that additional fees would be charged in its terms and conditions).

### C.  Nielsen Fails To Plausibly Allege That WDPR Lacked Any Reasonable Ground To Believe Its Representation

The negligent misrepresentation claim requires Nielsen to allege facts satisfying Rule 9(b) showing that WDPR represented that Dream Key passes had no blockout dates "without reasonable ground for believing it to be true."  *UMG*

18

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

1   *Recording*, 117 F. Supp. 3d at 1111.[11]  That representation was and is true on the

2   facts Nielsen alleges, and thus, there is no actionable misrepresentation.  *See supra*

3   Part I.B (citing *Sholiay*, 627 F. App'x at 655; *Ford*, 2008 WL 5874305, at *7).

4   Even if WDPR's statement were false, and it was not, Nielsen alleges no

5   facts plausibly demonstrating that WDPR lacked a "reasonable ground" to believe

6   the statement was true.  As this Court explained in *Cutler v. Rancher Energy

7   Corp.*, "A reasonable belief, even if erroneous, will not suffice for a claim of

8   negligent misrepresentation.  There must be some showing that the speaker's belief

9   was unreasonable."  2014 WL 1153054, at *9 (C.D. Cal. Mar. 11, 2014).  In

10  *Cutler*, this Court dismissed a negligent misrepresentation claim because "the

11  complaint contain[ed] insufficient factual detail to support an inference that [the

12  defendant] had no reasonable grounds for his statements," as it did "not set forth

13  any facts showing *why it was unreasonable* for [him] to believe the substance of

14  his statements."  *Id.* (emphasis in original).  There, as here, "[t]he only language in

15  the complaint concerning this element reads in conclusory, formulaic fashion."

16  *Id.*; *see* Compl. ¶¶ 68, 70 (reciting this element without factual allegations

17  supporting it).  Therefore, as in *Cutler*, the negligent misrepresentation claim

18  should be dismissed.  *See, e.g.*, *Cutler*, 2014 WL 1153054, at *9; *UMG

19  Recordings*, 117 F. Supp. 3d at 1112 (dismissing negligent misrepresentation

20  counterclaim with "no facts supporting [the] bare allegation that plaintiffs 'had no

21

22

23  _____

    [11]      "The Ninth Circuit has not yet decided in a published decision whether Rule
24  9(b)'s heightened pleading standard applies to a negligent misrepresentation claim,
    but recent unpublished decisions from this Circuit indicate it does."  *Kobashi v.
25  Sentry Ins.*, 2021 WL 1231425, at *6 (C.D. Cal. Mar. 2, 2021) (citing *Avakian v.
    Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020); *Cnty. of Maricopa
26  v. Office Depot, Inc.*, 759 F. App'x 597, 600 (9th Cir. 2018)).

27                                            19

28  **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
    *Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

reasonable grounds for believing that [their] representations [concerning intent to perform] were true when made," which "is a legal conclusion").

### III.   Nielsen's Statutory Claims Fail For Independent Reasons

Nielsen's statutory claims should be dismissed for additional independent reasons. *First*, to the extent she could ever prove a claim, which she cannot, Nielsen has an adequate remedy at law. This Court accordingly lacks authority to grant equitable remedies. *Second*, Nielsen lacks standing to seek prospective relief. *Third*, she fails to allege a CLRA claim because a license to enter WDPR's parks is not a "good" or "service" subject to the CLRA.

#### A.   The Court Cannot Grant Equitable Relief Under *Sonner*

Nielsen's California statutory claims should be dismissed because she has not established that she lacks adequate remedies at law. In *Sonner v. Premier Nutrition Corp.*, the Ninth Circuit explained that plaintiffs "must establish that [they] lack[] an adequate remedy at law before securing equitable restitution." 971 F.3d 834, 844 (9th Cir. 2020). The Court then found that the plaintiff there failed to make such a showing because "the operative complaint does not allege that [the plaintiff] lacks an adequate remedy at law" and the plaintiff sought the "same sum in equitable restitution … as she requested in damages." *Id*.

Applying *Sonner*, courts have held that plaintiffs must establish that they lack an adequate remedy at law where they bring any claim that "sound[s] in equity." *Zaback v. Kellogg Sales Co.*, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (dismissing UCL, CLRA, FAL, and unjust enrichment claims under *Sonner*); *see also Elizabeth M. Byrnes, Inc. v. Fountainhead Com. Cap., LLC*, 2021 WL 5507225, at *5 (C.D. Cal. Nov. 24, 2021) (UCL and FAL claims). Courts have routinely held that they lack jurisdiction over equitable claims where an adequate remedy at law exists, regardless of the form of relief sought. *See, e.g.*,

20

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Nese v. Scenario Cokram USA, Inc.*, 2021 WL 4497893, at *3 (C.D. Cal. July 20, 2021) (injunctive relief); *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021) (prospective injunctive relief); *Heredia v. Sunrise Senior Living LLC*, 2021 WL 819159, at *4 (C.D. Cal. Feb. 10, 2021) (all equitable relief); *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) (injunctive relief); *IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 WL 6544411, at *8 (N.D. Cal. Nov. 6, 2020) (declaratory relief); *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3-4 (C.D. Cal. Sept. 9, 2020); *Schertz v. Ford Motor Co.*, 2020 WL 5919731, at *2 (C.D. Cal. July 27, 2020).

Here, Nielsen brings equitable claims under the UCL, CLRA, and FAL, seeking equitable restitution and declaratory and injunctive relief.  These equitable claims must be dismissed in their entirety because Nielsen "fail[s] to satisfy th[e] minimal burden" of pleading that no adequate remedy at law exists.  *Schertz*, 2020 WL 5919731, at *2 (dismissing UCL claims for injunction and restitution); *Elizabeth M. Byrnes, Inc.*, 2021 WL 5507225, at *5 (dismissing UCL and FAL claims for restitution and injunctive relief because "Plaintiff makes no effort to allege, or explain … why her legal remedies are or may be inadequate"); *see Sonner*, 971 F.3d at 844 ("[Plaintiff] fails to make such a showing [because] the operative complaint does not allege that Sonner lacks an adequate legal remedy.").

Indeed, Nielsen does not merely fail to allege a lack of remedy at law—she actually brings legal claims, including breach of contract and negligent misrepresentation.  *See Huynh*, 508 F. Supp. 3d at 662 (dismissing UCL claim for injunctive relief because plaintiff "fails to allege or demonstrate that any remedy at law is inadequate, and in fact she even seeks a remedy at law through her negligence claim, which is based on the same alleged conduct as her equitable claim").  The complaint makes no effort to allege or explain why these legal

21

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

remedies—all based on the same conduct as her equitable claims—are or may be inadequate.  The law is clear:  *Sonner* bars Nielsen's equitable claims under each California statute because she has an adequate remedy through her legal causes of action.  *See, e.g.*, *Nese*, 2021 WL 4497893, at \*3 (dismissing equitable claims); *TML Recovery, LLC v. Cigna Corp.*, 2021 WL 3730168, at \*7 (C.D. Cal. July 26, 2021) (dismissing UCL claim); *Shay v. Apple Inc.*, 2021 WL 1733385, at \*5 (S.D. Cal. May 3, 2021) (dismissing UCL and CLRA claims).

### B.    Nielsen Lacks Standing To Pursue Prospective Relief

In addition, Nielsen lacks standing to seek any prospective relief.  The complaint is devoid of allegations that Nielsen would purchase a Dream Key in the future if WDPR offered them, and thus, she alleges no facts showing an actual and imminent—that is, a "certainly impending"—threat of future harm.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see, e.g.*, *Joslin v. Clif Bar & Co.*, 2019 WL 5690632, at \*3 (N.D. Cal. Aug. 26, 2019) (plaintiffs lack standing to pursue prospective equitable relief when they "do not allege they want to or intend to purchase the Products in the future").  Indeed, Nielsen cannot credibly allege a threat of future harm: the Dream Key is an annual pass, which Nielsen could only purchase once, and she has already done so.  Nielsen could not allege, consistent with Rule 11, that the Dream Key pass that might be available next year or thereafter, if any, will have the same terms and conditions or advertisements.

### C.    Nielsen's Claims Are Outside The Scope Of The CLRA

The CLRA applies to transactions that "result[] in the sale or lease of goods or services."  Cal. Civ. Code § 1770(a).  The term "goods" is defined as "tangible chattels," and the term "services" means "work, labor, and services for other than a commercial or business use."  *Id*. § 1761(a)-(b).  The California Supreme Court has made clear that if the case does not involve a "good" or "service" within the

22

plain language of the statute, the CLRA claim must be dismissed. *Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 61 (2009) (affirming dismissal of CLRA claim because life insurance is not a "good" or a "service").

A Dream Key pass is neither a "good" nor a "service" within the meaning of the CLRA. The passes are temporary licenses to enter WDPR's parks. *See Ex parte Quarg*, 149 Cal. 79, 81 (1906) (a "ticket of admission to a public place of amusement" is a "license to the purchaser of the ticket" that "represents a right, positive, or conditional, as the case may be, according to the terms of the original contract of sale"); *see also Valentine v. Cedar Fair, L.P.*, 174 N.E.3d 900, 908 (Ohio Ct. App.) (a "season pass constituted a revocable license … form[ing] a contractual relationship when [the buyer] purchased that pass, the terms of which were set forth in the [pass] Terms and Conditions"), *appeal allowed*, 175 N.E.3d 1286 (Ohio 2021). Nielsen's allegation that Dream Keys are "services" within the meaning of the CLRA, *see* Compl. ¶ 31, is a legal conclusion the Court does not accept as true. And it is wrong. "[T]o hold that the tickets, or more specifically the admission to the parks that the tickets provide, constitute a service requires a strained and unnatural construction of the term." *Hall v. Sea World Entm't, Inc.*, 2015 WL 9659911, at *15 (S.D. Cal. Dec. 23, 2015).

Therefore, Nielsen's CLRA claim must be dismissed with prejudice because Dream Key passes are outside the scope of the CLRA. *See, e.g.*, *Hall*, 2015 WL 9659911, at *15 (dismissing a CLRA claim with prejudice because SeaWorld entrance tickets were neither "goods" nor "services" within the meaning of the statute); *Kissling v. Wyndham Vacation Resorts, Inc.*, 2015 WL 7283038, at *3-4 (N.D. Cal. Nov. 18, 2015) (dismissing CLRA claim with prejudice because "membership interests" entitling the "members to the use of condominium units for one or two weeks each year" are not "goods" or "services" as defined in the

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

statute); *Wixon v. Wyndham Resort Dev. Corp.*, 2008 WL 1777590, at \*3-4 (N.D. Cal. Apr. 18, 2008) (a "nonexclusive license" to use property and vacation credit is not "goods" or "services" within the meaning of the CLRA).

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the complaint with prejudice.

Respectfully submitted,

Dated: January 21, 2022

*/s/ David C. Marcus*
DAVID C. MARCUS (CA Bar No. 158704)
(Email: david.marcus@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5312
Facsimile: (213) 443-5400

ALAN SCHOENFELD (*admitted pro hac vice*)
(Email: alan.schoenfeld@wilmerhale.com)
RYAN CHABOT (*admitted pro hac vice*)
(Email: ryan.chabot@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7294
Facsimile: (212) 230-8888

MARGARITA BOTERO (*admitted pro hac vice*)
(Email: margarita.botero@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202

24

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

Telephone: (720) 274-3130
Facsimile: (720) 274-3133

*Attorneys for Defendant*
*Walt Disney Parks and Resorts U.S., Inc.*

25

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055