1   DAVID C. MARCUS (CA Bar No. 158704)
2   (Email: david.marcus@wilmerhale.com)
    WILMER CUTLER PICKERING
3        HALE AND DORR LLP
    350 South Grand Avenue, Suite 2400
4   Los Angeles, CA 90071
5   Telephone: (213) 443-5312
    Facsimile: (213) 443-5400
6

7   *Attorneys for Defendant*
    *Walt Disney Parks and Resorts U.S., Inc.*
8

9   *(additional counsel listed below)*

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12  JENALE NIELSEN, individually and on behalf of all others similarly situated, | Case No. 8:21-cv-02055-DOC-ADS |
| 13 | |
| 14              Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF WALT DISNEY PARKS AND RESORTS U.S., INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** |
| 15         v. | |
| 16  WALT DISNEY PARKS AND RESORTS U.S., INC., a Florida Corporation, and DOES 1 through 25, inclusive, | |
| 17 | |
| 18 | Hearing Date: April 4, 2022 |
| 19              Defendants. | Time: 8:30 a.m. |
| 20 | Judge: Honorable David O. Carter |
| | Courtroom: 9D |

21

22

23

24

25

26

27

28  **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
    *Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

ALAN SCHOENFELD (*admitted pro hac vice*)
(Email: alan.schoenfeld@wilmerhale.com)
RYAN CHABOT (*admitted pro hac vice*)
(Email: ryan.chabot@wilmerhale.com)
WILMER CUTLER PICKERING
        HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7294
Facsimile: (212) 230-8888

MARGARITA BOTERO (*admitted pro hac vice*)
(Email: margarita.botero@wilmerhale.com)
WILMER CUTLER PICKERING
        HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Telephone: (720) 274-3130
Facsimile: (720) 274-3133

*Attorneys for Defendant*
*Walt Disney Parks and Resorts U.S., Inc.*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

# TABLE OF CONTENTS

BACKGROUND .................................................................................................1

   A.    The Magic Key Program ....................................................................1

   B.    This Lawsuit .......................................................................................3

LEGAL STANDARD ........................................................................................4

ARGUMENT ....................................................................................................4

I.     Nielsen's Breach Of Contract Claim (Count IV) Fails Because
      She Does Not Allege A Breached Promise ........................................5

II.   Nielsen's Tort Claims (Counts V And VI) Fail For Several Reasons ..........10

   A.    Nielsen Fails To Plausibly Allege Any Misrepresentation Or
       Concealment ......................................................................................11

   B.    Nielsen Fails To Plausibly Allege That WDPR Lacked Any
       Reasonable Ground To Believe Its Representation ...........................13

   C.    Nielsen Fails To Plausibly Allege Intent To Defraud ......................14

   D.    The Economic Loss Rule Bars Nielsen's Tort Claims .....................14

III.  Nielsen's Statutory Claims (Counts I, II, And III) Should Be Dismissed ....17

   A.    Nielsen Fails To Allege A Reasonable Consumer Would Be Deceived ...17

   B.    The Court Cannot Grant Equitable Relief .......................................19

   C.    Nielsen Lacks Standing To Pursue Prospective Relief .....................21

   D.    Nielsen's Claims Are Outside The Scope Of The CLRA .................22

CONCLUSION ................................................................................................25

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajetunmobi v. Clarion Mortgage Capital, Inc.*,
    2012 WL 2945051 (C.D. Cal. July 17, 2012),
    *aff'd*, 595 F. App'x 680 (9th Cir. 2014) ............................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................4

*Avakian v. Wells Fargo Bank, N.A.*,
    827 F. App'x 765 (9th Cir. 2020) ....................................................................13

*Bakhtiar v. FCA US LLC*,
    2021 WL 3206045 (C.D. Cal. Apr. 12, 2021) ....................................................16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................4

*Berry v. American Express Publishing, Inc.*,
    147 Cal. App. 4th 224 (2007) ........................................................................24

*Business Solutions, LLC v. Ganatra*,
    2019 WL 926351 (C.D. Cal. Jan. 7, 2019)........................................................10

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
    222 Cal. App. 3d 1371 (1990) ......................................................................10

*Circle Click Media LLC v. Regus Management Group*,
    2013 WL 57861 (N.D. Cal. Jan. 3, 2013)..........................................................14

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)......................................................................................22

*Clark v. American Honda Motor Co.*,
    528 F. Supp. 3d 1108 (C.D. Cal. 2021) ............................................................20

*County of Maricopa v. Office Depot, Inc.*,
    759 F. App'x 597 (9th Cir. 2018)....................................................................13

ii

*Cuadras v. MetroPCS Wireless, Inc.*,
    2011 WL 11077125 (C.D. Cal. Aug. 8, 2011) ...................................... 11-12, 19

*Cutler v. Rancher Energy Corp.*,
    2014 WL 1153054 (C.D. Cal. Mar. 11, 2014).............................................13, 14

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) .....................................................................11, 19

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) .......................................................................17, 18

*Elizabeth M. Byrnes, Inc. v. Fountainhead Commercial Capital, LLC*,
    2021 WL 5507225 (C.D. Cal. Nov. 24, 2021) .............................................20, 21

*EVGA Corp. v. B & H Foto & Electronics Corp.*,
    2020 WL 5028321 (C.D. Cal. June 22, 2020)....................................................16

*Ex parte Quarg*,
    149 Cal. 79 (1906) ...........................................................................................22

*Fairbanks v. Superior Court*,
    46 Cal. 4th 56 (2009) .......................................................................................22

*Federal Deposit Insurance Corp. v. Fidelity National Title Insurance Co.*,
    2010 WL 11561173 (C.D. Cal. Oct. 19, 2010) .................................................15

*Foley v. Euless*,
    214 Cal. 506 (1931) .........................................................................................10

*Ford v. Hotwire, Inc.*,
    2008 WL 5874305 (S.D. Cal. Feb. 25, 2008)....................................................12

*Foster-Gardner, Inc. v. National Union Fire Insurance Co.*,
    18 Cal. 4th 857 (1998) .......................................................................................7

*Gibson v. Jaguar Land Rover North America, LLC*,
    2020 WL 5492990 (C.D. Cal. Sept. 9, 2020)....................................................20

*GIC Real Estate, Inc. v. ACE American Insurance Co.*,
    2018 WL 5310832 (N.D. Cal. Aug. 20, 2018)....................................................7

iii

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Goldstein v. General Motors LLC,*
   517 F. Supp. 3d 1076 (S.D. Cal. 2021) ........................................................12, 14

*Graham v. VCA Animal Hospitals, Inc.,*
   729 F. App'x 537 (9th Cir. 2018) ........................................................12

*Gurwell v. Sea World Parks & Entertainment LLC,*
   2021 WL 4168503 (E.D. Va. Aug. 11, 2021) ........................................................24

*Guz v. Bechtel National Inc.,*
   24 Cal. 4th 317 (2000) ........................................................10

*Hall v. Sea World Entertainment, Inc.,*
   2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ........................................................23, 24

*Hill v. Roll Int'l Corp.,*
   195 Cal. App. 4th 1295 (2011) ........................................................18

*Huynh v. Quora, Inc.,*
   508 F. Supp. 3d 633 (N.D. Cal. 2020)........................................................20, 21

*In re Easysaver Rewards Litigation,*
   906 F.3d 747 (9th Cir. 2018) ........................................................6

*IntegrityMessageBoards.com v. Facebook, Inc.,*
   2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ........................................................20

*JIPC Management, Inc. v. Incredible Pizza Co.,*
   2009 WL 10672777 (C.D. Cal. June 29, 2009)........................................................7

*JMP Securities LLP v. Altair Nanotechnologies Inc.,*
   880 F. Supp. 2d 1029 (N.D. Cal. 2012)........................................................16

*Joslin v. Clif Bar & Co.,*
   2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ........................................................22

*Kazi v. State Farm Fire & Casualty Co.,*
   24 Cal.4th 871 (2001) ........................................................23

*Kissling v. Wyndham Vacation Resorts, Inc.,*
   2015 WL 7283038 (N.D. Cal. Nov. 18, 2015) ........................................................24

iv

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Kobashi v. Sentry Insurance*,
    2021 WL 1231425 (C.D. Cal. Mar. 2, 2021)......................................................13

*Kouball v. SeaWorld Parks & Entertainment, Inc.*,
    2020 WL 5408918 (S.D. Cal. Sept. 9, 2020),
    *aff'd*, 2021 WL 4947877 (9th Cir. Oct. 25, 2021).............................................23

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ...........................................................................18

*Lewis v. Google LLC*,
    851 F. App'x 723 (9th Cir.), *cert. denied*, 142 S. Ct. 434 (2021) ...............12, 14

*Lowry v. Southwest Airlines, Co.*,
    2015 WL 12656950 (C.D. Cal. Aug. 10, 2015) ............................................9, 10

*Manzarek v. St. Paul Fire & Marine Insurance Co.*,
    519 F.3d 1025 (9th Cir. 2008) .............................................................................4

*Mier v. CVS Pharmacy, Inc.*,
    2021 WL 1559367 (C.D. Cal. Mar. 22, 2021)............................................14, 16

*Minkler v. Apple, Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014)..................................................................16

*Mirpad, LLC v. California Insurance Guarantee Ass'n*,
    132 Cal. App. 4th 1058 (2005) ............................................................................7

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ..........................................................................17, 18

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)..............................................................................................5

*National Tax Institute, Inc. v. Topnotch at Stowe Resort & Spa*,
    388 F.3d 15 (1st Cir. 2004)...............................................................................8, 9

*Navistar International Transportation Corp. v. State Board of Equalization*,
    8 Cal. 4th 868 (1994) ...................................................................................23-24

*Nese v. Scenario Cokram USA, Inc.*,
    2021 WL 4497893 (C.D. Cal. July 20, 2021)........................................20, 21, 22

v

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Pridgen v. Church & Dwight Co.*,
  2020 WL 2510517 (C.D. Cal. Mar. 2, 2020)......................................................18

*Quiroz v. Sabatino Truffles N.Y., LLC*,
  2017 WL 8223648 (C.D. Cal. Sept. 18, 2017) ..................................................15

*Rattagan v. Uber Technologies, Inc.*,
  19 F.4th 1188 (9th Cir. 2021) ...........................................................................15

*Rattagan v. Uber Technologies, Inc.*,
  No. S272113 (Cal.) ............................................................................................15

*Robinson v. United States*,
  586 F.3d 683 (9th Cir. 2009) ...............................................................................4

*Ruszecki v. Nelson Bach USA Ltd.*,
  2015 WL 6750980 (S.D. Cal. June 25, 2015) ....................................................24

*Scales v. Six Flags, Inc.*,
  2004 WL 1870499 (Ohio Ct. App. Aug. 20, 2004)...........................................6, 9

*Schertz v. Ford Motor Co.*,
  2020 WL 5919731 (C.D. Cal. July 27, 2020)....................................................21

*Shay v. Apple Inc.*,
  2021 WL 1733385 (S.D. Cal. May 3, 2021) ......................................................21

*Sholiay v. Federal National Mortgage Ass'n*,
  627 F. App'x 654 (9th Cir. 2015) .......................................................................12

*Shupe v. Cricket Communications Inc.*,
  2013 WL 68876 (D. Ariz. Jan. 7, 2013),
  *order clarified*, 2013 WL 12123327 (D. Ariz. Oct. 11, 2013) ..........................11

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) .......................................................................20, 21

*Stewart v. Electrolux Home Products*, *Inc.*,
  304 F. Supp. 3d 894 (E.D. Cal. 2018) ...............................................................16

*TML Recovery, LLC v. Cigna Corp.*,
  2021 WL 3730168 (C.D. Cal. July 26, 2021)...............................................10, 21

vi

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Tufano v. State Farm Mutual Automobile Insurance Co.*,
  854 F. App'x 134 (9th Cir. 2021) ............................................................. 19

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) ...................................... 13, 14, 16

*United Guaranty Mortgage Indemnity Co. v. Countrywide Financial Corp.*,
  660 F. Supp. 2d 1163 (C.D. Cal. 2009) .................................................. 17

*United States v. Fisher*,
  137 F.3d 1158 (9th Cir. 1998) .................................................................. 5

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................... 2

*Valentine v. Cedar Fair, L.P.*,
  174 N.E.3d 900 (Ohio Ct. App.),
  *appeal allowed*, 175 N.E.3d 1286 (Ohio 2021) .................................... 23

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008) .................................................................. 17

*Wixon v. Wyndham Resort Development Corp.*,
  2008 WL 1777590 (N.D. Cal. Apr. 18, 2008) .................................. 23, 24

*Zaback v. Kellogg Sales Co.*,
  2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) .......................................... 20

**Statutes & Rules**

Cal. Civ. Code
  § 1761(a) ............................................................................................ 22, 23
  § 1761(b) .................................................................................................. 22
  § 1770(a) .................................................................................................. 22

Fed. R. Civ. Proc.
  12(b)(1) ...................................................................................................... 4
  12(b)(6) ...................................................................................................... 4

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

Jenale Nielsen purchased a Dream Key pass to Disneyland Resort theme parks through a new, reservation-based annual passholder offering called the Magic Key program.  The advertisement and terms and conditions for Dream Keys plainly state that Dream Key passholders become eligible to make park reservations with "no blockout dates"—that is, no dates are categorically inaccessible—subject to both reservation "availability" and park "capacity."  In other words, Dream Key passholders are eligible to access park reservations on any day of the year that the parks have both capacity and reservations available to Magic Key passholders.

Nielsen's First Amended Complaint (FAC) suffers from the same core defect as her original complaint:  it is based on the fundamentally flawed premise that "no blockout dates" means that the *only* limit on her ability to make park reservations is park "capacity."  FAC ¶¶ 10, 21-23.  In other words, she claims that she is entitled to make a park reservation if any reservations are available to *anyone*, up to park capacity.  But this interpretation is unreasonable on its face and incompatible with the express disclosure that Dream Key reservations, while not subject to blockout dates, are subject to availability *and* capacity.  Simply put, Nielsen received what she was promised.  Walt Disney Parks and Resorts U.S., Inc. (WDPR) moved to dismiss the original complaint for this same deficiency and, despite Nielsen's best shot at amending with full view of these arguments, the FAC does not cure the underlying flaw.  For this reason and more, the FAC should be dismissed with prejudice.

## BACKGROUND

### A.     The Magic Key Program

In August 2021, WDPR introduced Magic Key passes to replace its former annual passholder program.  FAC ¶ 8.  There are four tiers of Magic Key passes:

1

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

Dream, Believe, Enchant, and Imagine.  Dream Key passes are the highest tier. Dream Key passholders can hold up to six park reservations at a time with "no blockout dates" applied and receive discounts on merchandise, food, and parking. *Id.* ¶¶ 9-10.  Dream Key passes sold for $1,399.  *Id.* ¶ 10.  In contrast, the Believe, Enchant, and Imagine Keys are subject to blockout dates and receive lower discounts, and Enchant and Imagine Keys can hold fewer reservations.  *Id.* ¶ 14.

When a guest purchases any Magic Key pass, including the Dream Key pass, she obtains access to "reservation-based admission" to the parks—that is, eligibility to make reservations to the theme parks without an additional fee.  FAC ¶¶ 8, 10.  As the advertisement for Dream Keys cited in the FAC states, park reservations are "subject to restrictions;" "Park reservations are subject to availability and are not guaranteed for any specific dates or park;" and "Admission is not guaranteed and is subject to capacity and other closures."  *Id.* ¶ 10.

In addition to the disclosures in the advertisement, Magic Key passes are governed by terms and conditions ("T&C").[1]  Under "Theme Park Admission," the T&C provide:

- "Park reservations are limited and subject to availability and applicable Pass blockout dates."  T&C.

- "It may be difficult for Passholders to get park reservations to visit on certain dates or a select park, and park reservations are not guaranteed for any specific dates or park, no matter the Pass type."  *Id.*

---

[1] The Magic Key T&C are attached as Exhibit A to the Declaration of Alan Schoenfeld in Support of Motion to Dismiss ("Schoenfeld Decl.").  The T&C are "incorporated by reference into [the] complaint" and "form[] the basis of the plaintiff's claim," and so can be considered on a motion to dismiss.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see, e.g.*, FAC ¶ 21.

2

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

- "Passholders are eligible to make a park reservation for any date on which their Pass is not blocked out, subject to availability and conditions set forth above." *Id.*

Under "General," the T&C also provide that "Theme parks, … products, services and offerings may be modified or limited in capacity or availability; … and are not guaranteed," and that "Restrictions apply including, but not limited to, capacity constraints and other closures." *Id.*

### B. This Lawsuit[2]

Nielsen is "a Disney enthusiast" who began researching Magic Key passes in September 2021. FAC ¶ 7. She bought a Dream Key pass on September 23, 2021. *Id.* ¶¶ 8, 15. On October 19, 2021, Nielsen tried to make park reservations for November 2021. *Id.* ¶ 17. Reservations were available to her for 13 days in November. *Id.* Nielsen nevertheless alleges that reservations were unavailable to her for 17 days in November at the time she tried to make a reservation, while park reservations for single-day ticket holders were available for all 30 days. *Id.*

Nielsen claims that making reservations available for single-day tickets when reservations are unavailable to her constitutes a "blockout date" contrary to the terms and advertisement of her Dream Key pass. FAC ¶¶ 18-19, 21. She alleges that she understood the Dream Key "Advertisement—and the terms and conditions accompanying it—to mean that she could use her Dream Key to reserve a ticket to a park so long as the park was not at capacity and so long as park reservations were available." *Id.* ¶ 21.

Based on these allegations, Nielsen filed this putative class action against WDPR in California state court, bringing claims for breach of contract, negligent

---

[2] WDPR does not admit or concede any of Nielsen's allegations, which are taken as true for purposes of this motion to dismiss only.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

misrepresentation and concealment, and equitable relief under the Consumer Legal
Remedies Act (CLRA), False Advertising Law (FAL), and Unfair Competition
Law (UCL), under a false advertising theory.  WDPR removed to this Court under
the Class Action Fairness Act and moved to dismiss on January 21, 2022.  On
February 4, 2022, Nielsen filed the FAC, raising substantially identical allegations
as in the original complaint.  WDPR now moves to dismiss the FAC.

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed when a plaintiff's
allegations fail to set forth a set of facts that, if true, would entitle the plaintiff to
relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007).  The Court accepts the complaint's well-pleaded factual
allegations as true, but not legal conclusions couched as factual allegations, and
makes any factual inferences in favor of the plaintiff.  *See Manzarek v. St. Paul
Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Under Rule 12(b)(1), claims must be dismissed if the Court lacks subject-
matter jurisdiction to adjudicate them.  The plaintiff bears the burden of
establishing subject-matter jurisdiction.  *See, e.g.*, *Robinson v. United States*, 586
F.3d 683, 685 (9th Cir. 2009).

## ARGUMENT

"No blockout dates" means that no dates are blocked out to Dream Key
passholders.  It does not mean that Dream Key passholders can make a reservation
as long as the parks are not at capacity.  On the contrary, Dream Key reservations
are expressly subject to availability *and* capacity, as the program T&C and cited
advertisement fully disclose.  Nielsen does not allege that any date was
categorically inaccessible to her, and therefore she fails to state a claim for breach
of contract, misrepresentation, concealment, or false advertising.  Nielsen's

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

unreasonable misreading of the program T&C and advertisement gives rise to all of her claims, which are therefore implausibly alleged.

In addition, Nielsen's tort and statutory claims should be dismissed for independent reasons.  Nielsen's tort claims fail because she does not allege that WDPR intended to defraud her or lacked a reasonable ground to believe its representation was true.  Her tort claims also are duplicative of her contract claim and so are barred by the economic loss rule.  Her statutory claims seek equitable remedies for which there are adequate remedies at law, and prospective relief for which Nielsen lacks standing, and therefore they should be dismissed for lack of subject-matter jurisdiction.  And the CLRA claim fails because the Dream Key is neither a good nor a service within the scope of that statute.

As material deficiencies persist in Nielsen's FAC despite her attempt to replead her claims, dismissal should be with prejudice.

## I.   Nielsen's Breach Of Contract Claim (Count IV) Fails Because She Does Not Allege A Breached Promise

Nielsen alleges that WDPR breached its contract with her "by failing to provide Dream Key passes that are free from blockout dates" and "by refusing to allow Dream Key pass holders the ability to make park reservations even when park reservations are available" to others.  FAC ¶ 77.  On the facts alleged, however, reservations for Nielsen's Dream Key pass *are* free from blockout dates.

The phrase "no blockout dates" has a plain meaning.  A date is, of course, a particular day.  To "block out" (or "black out") a date is to make it categorically inaccessible.  *See United States v. Fisher*, 137 F.3d 1158, 1163 (9th Cir. 1998) ("A busy district court can ill afford to block out time for a trial that very likely will not occur."); *cf. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 393 (1992) ("Blackout date means any date on which travel or use of other program benefits is

5

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

1  not permitted for program members seeking to redeem their award levels."

2  (quoting guidelines from the National Association of Attorneys General)); *In re*

3  *Easysaver Rewards Litig.*, 906 F.3d 747, 757 (9th Cir. 2018) (describing credits

4  with "a series of blackout periods" during which "they cannot be used").  Nielsen

5  does not and could not allege that any date was categorically inaccessible to her.

6       Instead, notwithstanding this plain meaning, Nielsen alleges that she

7  interpreted "blockout dates" to mean that she would have access to the parks every

8  day of the year so long as the parks were not at capacity.  *See* FAC ¶¶ 18-22.  That

9  is an unreasonable interpretation of an unambiguous term.  And it cannot be

10  squared with the disclosure that Dream Key reservations are subject to availability

11  *and* capacity.  Both the advertisement and the T&C that Nielsen read and agreed to

12  by purchasing her Dream Key[3] make clear that "blockout dates," reservation

13  "availability," and park "capacity" are distinct and independent limitations on

14  Magic Key passholders' ability to make reservations to the parks.

15       The advertisement and T&C repeatedly emphasize that reservations are

16  limited by availability.  The advertisement states:  "Park reservations are subject to

17  availability and are not guaranteed for any specific dates or park."  FAC ¶ 10.

18  Similarly, the T&C state:  "Park reservations are limited and subject to availability

19  and applicable Pass blockout dates" and "Passholders are eligible to make a park

20  reservation for any date on which their Pass is not blocked out, subject to

21  availability and conditions set forth above."  T&C.  The T&C also warn that "[i]t

22  may be difficult for Passholders to get park reservations to visit on certain dates or

23

24  _____

25       [3] Nielsen admits that she read the T&C.  *See* FAC ¶ 21.  Further, she "was
   obligated to read these 'terms and conditions' as they represented [her] rights and

26  the limitations of those rights as a season pass holder."  *Scales v. Six Flags, Inc.*,
   2004 WL 1870499, at *4 (Ohio Ct. App. Aug. 20, 2004).

27                                          6

28  **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
   *Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

a select park, and park reservations are not guaranteed for any specific dates or park, no matter the Pass type." *Id.*  These provisions make clear that a pass with "no blockout dates" makes passholders "eligible to make a park reservation for any date," with the full disclosure that "reservations are limited and subject to availability" and "are not guaranteed for any specific dates or park, no matter the Pass type." *Id.*

The T&C also demonstrate that "capacity" and reservation "availability" are distinct limitations on the use of a pass.  They repeatedly separately reference "availability" and "capacity" as limits on reservations—for example, that "Theme parks, … services and offerings may be modified or limited in capacity *or* availability; … and are not guaranteed." T&C (emphasis added).  The separate use of *availability* and *capacity* demonstrates that these terms "have different meanings."  *GIC Real Est., Inc. v. ACE Am. Ins. Co.*, 2018 WL 5310832, at *7 (N.D. Cal. Aug. 20, 2018) (citing *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 870-71 (1998)); *Great Am. E & S Ins. Co. v. Kouw Pinnq Enter. Co.*, 2013 WL 5461911, at *4 (C.D. Cal. Sept. 20, 2013) (granting motion to dismiss where agreement "clearly distinguishes" between two terms); *JIPC Mgmt., Inc. v. Incredible Pizza Co.*, 2009 WL 10672777, at *6 (C.D. Cal. June 29, 2009) ("[T]he agreement refers both to [two terms] in a single clause, suggesting that the two terms have a different meaning."); *Mirpad, LLC v. Cal. Ins. Guar. Ass'n*, 132 Cal. App. 4th 1058, 1070 (2005) ("As the policy repeatedly uses the words "person" and "organization" separately and distinctly, these two words must be accorded their separate and distinct meanings.").  In short, while Nielsen's Dream Key pass had "no blockout dates," the pass was clearly subject to *both* reservation "availability" *and* "capacity" limitations.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

Offering reservations subject to "availability" and not just "capacity" makes sense.  The First Circuit's decision in *National Tax Institute, Inc. v. Topnotch at Stowe Resort & Spa*, 388 F.3d 15 (1st Cir. 2004), is instructive.  In that case, National Tax Institute and Topnotch, a resort hotel, entered into a contract that entitled the Institute to block 50 rooms at a discounted group rate.  Relying on a provision that "[a]dditional rooms may be blocked at the group rate subject to availability," the Institute requested 70 rooms at the discounted rate.  *Id.* at 17.  After Topnotch said no, the Institute sued.  The Institute argued that "a room is 'available' if not already reserved by another customer," whereas "Topnotch [argued] that it is up to the management to decide whether to make the group rate 'available' for more than 50 rooms."  *Id.* at 18.  Under the Institute's "reading of the contract … it was entitled to the entire resort … as long as no rooms had already been reserved by others."  *Id.* at 19 n.1.

Holding that the contract was "unambiguous," the First Circuit affirmed the district court's conclusion that the Institute's interpretation of the contract was unreasonable; Topnotch's interpretation, however, "make[s] sense."  388 F.3d at 19.[4]  "In practical terms," the court wrote, "charging everyone a high price may leave many unfilled seats or rooms, and charging everyone a discounted price may attract too little revenue to cover total costs."  *Id.*  "Often the key in such situations … is for the seller to reserve enough uncommitted capacity for at least some high-paying customers while a possibly lesser but still vital contribution to revenues is obtained from the discount clients."  *Id.*  "From this perspective, it made perfect sense for Topnotch to reserve some but not all rooms for the Institute at low

---

[4] Given the conclusion by the First Circuit and district court that "subject to availability" was unambiguous, it does not matter that *Topnotch* was decided on summary judgment, not a motion to dismiss.

8

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

prices … ." *Id.* "By contrast, the idea that Topnotch would have agreed to rent all its rooms at [a discount] for high foliage season dates … makes no sense." *Id.* "In the normal course of business, no rational hotelier would likely make such a contract," but the Institute's "reading of the contract assumes just such an improbable bargain." *Id.* Topnotch "easily prevail[ed]" based on these "clues as to the parties' intent." *Id.*; *see also Scales v. Six Flags, Inc.*, 2004 WL 1870499, at *4 (Ohio Ct. App. Aug. 20, 2004) (holding that "the term 'availability' is not ambiguous on its face" in a provision of season passholder T&C that "Rides are subject to availability," and rejecting the argument that this provision meant that a season passholder "was entitled to 'reasonable access' to rides").

Here, WDPR did what it represented and promised:  it provided Nielsen a pass with "no blockout dates" subject to reservation "availability" and "capacity" constraints.  Nielsen does not and cannot allege that there are or were any dates categorically blocked out to her.  Under the plain meaning of these terms, WDPR fulfilled its contractual promises, and therefore Nielsen fails to state a claim for breach of contract.  *See, e.g.*, *Lowry v. Sw. Airlines, Co.*, 2015 WL 12656950, at *5 (C.D. Cal. Aug. 10, 2015) (rejecting breach of contract claim by plaintiff who purchased early check-in option to obtain a better flight boarding position because the contract "language does not amount to a promise or guarantee that [plaintiff] would receive a better boarding position than any other passenger").

Nor does Nielsen state any plausible breach of the implied covenant of good faith and fair dealing.  She does not bring a separate claim on that ground, and only references the implied covenant passingly among her breach of contract allegations.  *See* FAC ¶¶ 75, 78.  When implied covenant "allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.'" *Bus. Sols., LLC v. Ganatra*, 2019 WL 926351, at *10 (C.D. Cal. Jan. 7, 2019) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)); *TML Recovery, LLC v. Cigna Corp.*, 2021 WL 3730168, at *6 (C.D. Cal. July 26, 2021) ("[A] claim for breach of the implied covenant is superfluous and subject to dismissal if it merely restates the claim for breach of contract.").  In any event, the implied covenant applies to a "party's right to receive the *benefits of the agreement actually made*." *Lowry*, 2015 WL 12656950, at *6 (rejecting implied covenant claim) (quoting *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000)) (emphasis in original).  Nielsen "received the benefit of her bargain:" the opportunity to make park reservations with no blockout dates but subject to availability and capacity, which "is all the contract guaranteed." *Id.*  Through her contention that she was entitled to any reservation up to park capacity, Nielsen "seeks to gain additional benefits that appear nowhere on the face of the contract." *Id.*  Courts, however, do not "rewrite contracts" through the implied covenant.  *Id.* (quoting *Foley v. Euless*, 214 Cal. 506, 511 (1931)).  Nielsen's invocation of the implied covenant accordingly also fails to state any breach of contract.

## II.      Nielsen's Tort Claims (Counts V And VI) Fail For Several Reasons

Although acknowledging that Nielsen's Dream Key is governed by the T&C, whose plain provisions do not give her the right that she now asserts, the FAC also brings tort claims for negligent misrepresentation and concealment. Despite amendment, those claims suffer from the same defects WDPR identified in its first motion to dismiss. *First*, those claims fail because Nielsen alleges nothing misrepresented or concealed. *Second*, Nielsen fails to allege that WDPR lacked a reasonable ground to believe the truth of the statement that Dream Key passes had

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

no blockout dates, as required for her negligent misrepresentation claim.  *Third*,
Nielsen fails to allege WDPR's intent to defraud, as required for her concealment
claim.  *Fourth*, even setting aside Nielsen's failure to plead their requisite
elements, the economic loss rule bars both of these tort claims.

### A.   Nielsen Fails To Plausibly Allege Any Misrepresentation Or Concealment

Given that the T&C do not promise Nielsen reservations as long as the parks
are not at capacity, Nielsen focuses her tort allegations on the advertisement that
she allegedly viewed before buying her Dream Key.  She claims that
notwithstanding the clear disclosures in the T&C, the advertisement "did not
define" the phrases "blockout date" and "subject to availability," and she
supposedly understood "no blockout dates" to mean that she would have access to
the parks every day of the year so long as the parks were not at capacity.  *See* FAC
¶¶ 12-13.

To begin, Nielsen cannot circumvent the T&C governing her Dream Key
Pass by pointing to a pre-contractual advertisement.  *See Shupe v. Cricket
Commc'ns Inc.*, 2013 WL 68876, at *6 (D. Ariz. Jan. 7, 2013) ("[Plaintiff] makes
no statement as to why any reliance on any such advertisements should carry more
weight than [plaintiff]'s receipt of the Terms and Conditions that stated they
constituted an agreement … [and] advised [plaintiff] that when she started the
service … she was accepting the Terms and Conditions.").  Indeed, the
advertisement warned that park reservations were "subject to restrictions," thereby
prompting Nielsen to review the T&C, as she admits she did, *see* FAC ¶ 21.  *See,
e.g.*, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) ("The
advertisement contained the disclaimer, 'other restrictions may apply,' which
would have motivated a reasonable consumer to consult the terms and

11

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

conditions."); *Cuadras v. MetroPCS Wireless, Inc.*, 2011 WL 11077125, at *6 (C.D. Cal. Aug. 8, 2011) ("[E]ven if plaintiff somehow thought, based on MetroPCS's advertising, that it offered wireless service without any terms whatsoever, she was disabused of that notion when she received the T&Cs."). Nielsen cannot use tort claims to try to avoid the terms of the contract.

Nor does the advertisement itself support Nielsen's tort claims. Like the T&C, the advertisement warned that even though the Dream Key passes had "no blockout dates," reservations were "subject to availability" and "subject to capacity." FAC ¶ 10. Nielsen's allegations do not show that WDPR contravened the plain meaning of those terms by actually imposing any blockout dates. *See* Section I, *supra*. Accordingly, Nielsen fails to state a claim for negligent misrepresentation.[5] *See, e.g.*, *Sholiay v. Fed. Nat'l Mortg. Ass'n*, 627 F. App'x 654, 655 (9th Cir. 2015) (affirming dismissal of negligent misrepresentation claim based on statements that "were not false representations"); *Ford v. Hotwire, Inc.*, 2008 WL 5874305, at *7 (S.D. Cal. Feb. 25, 2008) (dismissing negligent misrepresentation claim because the "statements were not false" and the terms "disclose the fact that resort fees may be charged and that the prices stated may not include resort fees").

For the same reason, Nielsen's concealment claim also fails.[6] *See, e.g.*, *Lewis v. Google LLC*, 851 F. App'x 723, 725 (9th Cir.) ("[U]nder California law, a plaintiff cannot demonstrate reasonable reliance on an alleged omission of

---

[5] *Graham v. VCA Animal Hosps., Inc.*, 729 F. App'x 537, 541 (9th Cir. 2018) ("A plaintiff cannot succeed on [a negligent misrepresentation claim] unless he or she shows that the defendant has made a misrepresentation.").

[6] *Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1092 (S.D. Cal. 2021) (to bring a concealment claim, plaintiffs must, among others, allege that the defendant "concealed or suppressed a material fact").

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

information when the purportedly omitted information is disclosed in a contract."), *cert. denied*, 142 S. Ct. 434 (2021); *Ajetunmobi v. Clarion Mortg. Cap., Inc.*, 2012 WL 2945051, at *6 (C.D. Cal. July 17, 2012) (dismissing concealment claim because "Plaintiff cannot succeed on a concealment claim if there was no fact to conceal"), *aff'd*, 595 F. App'x 680 (9th Cir. 2014).

### B. Nielsen Fails To Plausibly Allege That WDPR Lacked Any Reasonable Ground To Believe Its Representation

Nielsen's negligent misrepresentation claim requires her to allege facts satisfying Rule 9(b) showing that WDPR represented that Dream Key passes had no blockout dates "without reasonable ground for believing it to be true." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015).[7]  "There must be some showing that the speaker's belief was unreasonable." *Cutler v. Rancher Energy Corp.*, 2014 WL 1153054, at *9 (C.D. Cal. Mar. 11, 2014).  Although Nielsen amended her original allegations, the FAC still fails to allege any such facts.  In *Cutler*, this Court dismissed a negligent misrepresentation claim because "the complaint contain[ed] insufficient factual detail to support an inference that [the defendant] had no reasonable grounds for his statements," as it did "not set forth any facts showing *why it was unreasonable* for [him] to believe the substance of his statements." *Id*. (emphasis in original).  This Court said that "[t]he only language in the complaint concerning this element reads in conclusory, formulaic fashion." *Id.*  Here, despite amending the complaint, the FAC continues

---

[7] "The Ninth Circuit has not yet decided in a published decision whether Rule 9(b)'s heightened pleading standard applies to a negligent misrepresentation claim, but recent unpublished decisions from this Circuit indicate it does." *Kobashi v. Sentry Ins.*, 2021 WL 1231425, at *6 (C.D. Cal. Mar. 2, 2021) (citing *Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020); *Cnty. of Maricopa v. Office Depot, Inc.*, 759 F. App'x 597, 600 (9th Cir. 2018)).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

to be devoid of allegations showing why it was unreasonable for WDPR to believe its statements.  *See* FAC ¶ 83 (reciting this element without supporting factual allegations).  Nielsen's negligent misrepresentation claim therefore should be dismissed.  *See Cutler*, 2014 WL 1153054, at *9; *UMG Recordings*, 117 F. Supp. 3d at 1112 (dismissing negligent misrepresentation claim with "no facts supporting [the] bare allegation that plaintiffs 'had no reasonable grounds for believing that [their] representations [concerning intent to perform] were true when made," which "is a legal conclusion").

### C.   Nielsen Fails To Plausibly Allege Intent To Defraud

Nielsen's concealment claim similarly requires allegations satisfying Rule 9(b) that WDPR "intentionally concealed or suppressed [a material] fact *with intent to defraud*" her.  *Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1092 (S.D. Cal. 2021) (emphasis added).  Yet, despite amending her allegations, the FAC alleges no such facts.  On the contrary, WDPR repeatedly disclosed the applicable availability and capacity constraints—including that reservations were not guaranteed and subject to restrictions—not just in the T&C but also in the cited advertisement.  Those extensive disclosures confirm that there was no intent to defraud.  *Cf. Lewis*, 851 F. App'x at 725 (affirming dismissal of concealment claim where "the purportedly omitted information is disclosed in a contract"); *Circle Click Media LLC v. Regus Mgmt. Grp.*, 2013 WL 57861, at *11 (N.D. Cal. Jan. 3, 2013) (dismissing concealment claim where T&C disclosed information).

### D.   The Economic Loss Rule Bars Nielsen's Tort Claims

Even if they were adequately pled—and they are not—Nielsen's tort claims should be dismissed under the economic loss rule because they are indistinct from her breach of contract claim.  "The 'economic loss rule' prohibits plaintiffs from suing in tort for damages that lie only in contract."  *Mier v. CVS Pharmacy, Inc.*,

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

2021 WL 1559367, at *8 (C.D. Cal. Mar. 22, 2021).  Despite amending her complaint, Nielsen's tort claims continue to allege the same wrongdoing as her contract claim—that her Dream Key has blockout dates despite representations to the contrary[8]—and they continue to seek the same recovery as her contract claim, lost money.[9]  As this Court has observed, "in the context of class action lawsuits involving fraudulent or misleading representations on products, district courts regularly invoke the economic loss doctrine to bar negligent misrepresentation claims where some form of physical harm is not alleged."  *Quiroz v. Sabatino Truffles N.Y., LLC*, 2017 WL 8223648, at *6 (C.D. Cal. Sept. 18, 2017) (collecting cases).  Courts have done the same with concealment claims.  *See, e.g.*, *Fed. Deposit Ins. Corp. v. Fid. Nat'l Title Ins. Co.*, 2010 WL 11561173, at *3 (C.D. Cal. Oct. 19, 2010) (economic loss rule bars fraudulent concealment claims that "shared an identity with the alleged breach of contract").[10]

Applying the economic loss rule makes particular sense in cases such as this, where the plaintiff brings *both* breach of contract and tort claims under identical

---

[8] *Compare* FAC ¶ 74 (breach of contract claim alleging that her pass "would not be subject to blockout dates"), *with id.* ¶ 81 (negligent misrepresentation claim alleging that WDPR "represented" that the "Dream Key passes would not be subject to blockout dates") and *id.* ¶ 86 (concealment claim alleging that WDPR "knew at the time of sale that it had falsely represented the fact that Dream Key passes would actually be subject to blockout dates").

[9] *Compare* FAC ¶ 79 (seeking "monetary damages" in breach of contract claim), *with id.* ¶ 84 (seeking "lost money" in negligent misrepresentation claim) and *id.* ¶ 94 (seeking "loss of money" in concealment claim).

[10] Note that the Ninth Circuit has certified the question "[u]nder California law, are claims for fraudulent concealment exempted from the economic loss rule" to the California Supreme Court, *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1193 (9th Cir. 2021), which recently granted the request for certification, *see Rattagan v. Uber Techs., Inc.*, No. S272113 (Cal.), Dkt. entry dated Feb. 9, 2022.

15

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

allegations.  "[W]hile there may be circumstances in which a party to a contract could recover extra-contractually for negligent misrepresentation, this is not such a case" because the "most measured approach[] to the question considers the degree to which a misrepresentation and breach of contract claim 'parallel' each other, allowing for the elimination of negligent misrepresentation claims which in actuality are 'breach of contract claim[s] in disguise.'"  *EVGA Corp. v. B & H Foto & Elecs. Corp.*, 2020 WL 5028321, at *5-6 (C.D. Cal. June 22, 2020).[11]

Numerous decisions from courts in this Circuit have applied the economic loss rule to dismiss tort claims under similar circumstances.  *See, e.g.*, *Bakhtiar v. FCA US LLC*, 2021 WL 3206045, at *4 (C.D. Cal. Apr. 12, 2021) (holding that claims for negligent misrepresentation and concealment were barred by the economic loss rule "because each claim seeks relief for the same economic harm resulting from the alleged breach" of contract); *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 904 (E.D. Cal. 2018) (dismissing fraudulent concealment claims because plaintiff did not allege any sort of "damages independent of the economic loss"); *UMG Recordings*, 117 F. Supp. 3d at 1105 (dismissing negligent misrepresentation and fraudulent concealment claims that were "conceptually indistinct from a contract breach"); *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014) (dismissing negligent misrepresentation claim because plaintiff did not allege "personal injury or property damage"); *JMP*

---

[11] In a case *without* a contract claim, this Court has observed that "[t]he issue of whether the economic loss rule bars claims for negligent misrepresentation under California law is unsettled" and followed decisions that "held that the economic loss rule does not apply to negligent misrepresentation claims."  *Mier*, 2021 WL 1559367, at *9.  Neither this Court nor others in the Central District have held that the economic loss rule does not apply where, as here, the alleged negligent misrepresentation is indistinct from the claimed breach of contract.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Sec. LLP v. Altair Nanotechs. Inc*., 880 F. Supp. 2d 1029, 1042-43 (N.D. Cal. 2012) (dismissing fraud and negligent misrepresentation claims that "consist of nothing more than [the defendant's] alleged failure to make good on its contractual promises" because plaintiff took the "allegations underpinning a straightforward claim for breach of a commercial contract and recast them as torts"); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1184-85 (C.D. Cal. 2009) (dismissing negligent misrepresentation claim where "the alleged misrepresentations are not conceptually distinct from the contract").  This Court should similarly apply the economic loss rule to dismiss Nielsen's tort claims.

## III.   Nielsen's Statutory Claims (Counts I, II, And III) Should Be Dismissed

The FAC's statutory claims should also be dismissed.  *First*, Nielsen's statutory claims fail because a reasonable consumer would not be deceived when WDPR did what it advertised it would do—sold passes with "no blockout dates" subject to reservation "availability" and "capacity."  *Second*, to the extent she could ever prove a claim, which she cannot, Nielsen has an adequate remedy at law; accordingly, this Court lacks authority to grant the equitable remedies each statute permits.  *Third*, Nielsen lacks standing to seek prospective relief.  *Fourth*, she fails to allege a CLRA claim because a license to enter WDPR's parks is not a "service" or, as Nielsen now claims after amending, a "good."

### A.   Nielsen Fails To Allege A Reasonable Consumer Would Be Deceived

Nielsen's FAL, CLRA, and UCL claims all fail.  These "statutes are governed by the 'reasonable consumer' test," which requires a showing "that 'members of the public are likely to be deceived.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).  "This is not a negligible burden."  *Moore v. Trader Joe's*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Co.*, 4 F.4th 874, 880, 882 (9th Cir. 2021) (affirming dismissal of FAL, UCL, and CLRA claims where the "representations are not misleading to a reasonable consumer as a matter of law").  The "reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled'"— not merely that the advertising "'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Ebner*, 838 F.3d at 965 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)) (affirming dismissal of FAL, CLRA, and UCL claims); *see also Moore*, 4 F.4th at 882 ("Indeed, a plaintiff's unreasonable assumptions about a product's label will not suffice.").

Despite amending her allegations, the FAC still "fail[s] as a matter of law to show" that a "reasonable consumer would be misled."  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1301 (2011).  Nielsen alleges that WDPR violated these statutes by "marketing and falsely representing Dream Keys as having 'no blockout dates' even though Disney has a practice of blocking Dream Key pass holders from making reservations even when Disney's theme parks are not at capacity."  FAC ¶ 43 (CLRA); *see also id.* ¶¶ 56-57 (FAL), ¶¶ 62-72 (UCL).  As discussed above, the only way Nielsen reaches this conclusion is by unreasonably misinterpreting the term "blockout."  *See* Section I, *supra*.  Under the plain meaning of that term, no fact alleged in the FAC shows that WDPR imposed blockout dates on Nielsen's—or anyone's—Dream Key pass.  Nielsen's "unreasonable reading" does not state a claim since "a significant portion of reasonable consumers are not likely to be misled" in the way she claims she was. *Pridgen v. Church & Dwight Co.*, 2020 WL 2510517, at *3-4 (C.D. Cal. Mar. 2, 2020) (dismissing "inadequately pleaded" UCL, CLRA, and FAL claims based on

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

supposedly ambiguous term on packaging that a reasonable consumer "would not think" had the meaning plaintiff ascribed to it); *see also Tufano v. State Farm Mut. Auto. Ins. Co.*, 854 F. App'x 134, 136 (9th Cir. 2021) (affirming dismissal of UCL and FAL claims as "implausible under the 'reasonable consumer' standard" because a "reasonable consumer would not think the term 'insurance' means" what plaintiff allegedly understood it to mean).

Nielsen also cannot bring claims premised on an advertisement without reconciling those claims with the T&C to which she agreed when she became a Dream Key pass holder.  Again, the Dream Key advertisement warned that park reservations were subject to restrictions, "which would have motivated a reasonable consumer to consult the terms and conditions."  *Davis*, 691 F.3d at 1169.  As discussed, the T&C make clear that "capacity" and reservation "availability" are distinct limitations on the use of Dream Key passes.  *See* Section I, *supra*.  In fact, the T&C repeatedly separately reference "availability" and "capacity" as limits on reservations.  *See id*.  This "disclaimer and the terms and conditions were enough to give a reasonable consumer 'reason to anticipate' the possibility" that park capacity and reservation availability were distinct limitations on Dream Key passes.  *Davis*, 691 F.3d at 1169; *see also Cuadras*, 2011 WL 11077125, at *6.  Accordingly, Nielsen's statutory claims should be dismissed. *See Davis*, 691 F.3d at 1169 (affirming dismissal of UCL and FAL claims because a reasonable consumer would have "avoid[ed] the alleged harm" that resulted from an "advertisement [that] contained the disclaimer 'other restrictions may apply'" by "read[ing] the terms and conditions").

## B.   The Court Cannot Grant Equitable Relief

Despite notice of the defects in her original pleading, Nielsen's statutory claims should be dismissed because the FAC still does not establish that Nielsen

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

lacks adequate remedies at law.  In *Sonner v. Premier Nutrition Corp.*, the Ninth Circuit explained that plaintiffs "must establish that [they] lack[] an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."  971 F.3d 834, 844 (9th Cir. 2020).  The Court then found that the plaintiff there failed to make such a showing because "the operative complaint does not allege that [the plaintiff] lacks an adequate legal remedy" and the plaintiff sought the "same sum in equitable restitution … as she requested in damages."  *Id*.

Applying *Sonner*, courts have held that plaintiffs must establish that they lack an adequate remedy at law where they bring any claim that "sound[s] in equity."  *Zaback v. Kellogg Sales Co.*, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (dismissing UCL, CLRA, FAL, and unjust enrichment claims under *Sonner*); *see also Elizabeth M. Byrnes, Inc. v. Fountainhead Com. Cap., LLC*, 2021 WL 5507225, at *5 (C.D. Cal. Nov. 24, 2021) (UCL and FAL claims).  Courts have routinely held that they lack jurisdiction over equitable claims where an adequate remedy at law exists, regardless of the form of relief sought.  *See, e.g.*, *Nese v. Scenario Cokram USA, Inc.*, 2021 WL 4497893, at *3 (C.D. Cal. July 20, 2021) (restitution and injunctive relief); *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121-22 (C.D. Cal. 2021) (all equitable relief, including prospective injunctive relief); *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) (injunctive relief); *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3-4 (C.D. Cal. Sept. 9, 2020) (all equitable relief); *cf. IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 WL 6544411, at *8 (N.D. Cal. Nov. 6, 2020) (rejecting "any distinction among the various forms of equitable relief when requiring the absence of a 'plain, adequate, and complete remedy at law' to obtain it" and applying *Sonner* to declaratory relief).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

Here, Nielsen brings claims under the UCL, CLRA, and FAL, seeking equitable restitution and declaratory and injunctive relief.  These claims must be dismissed in their entirety because—despite amending—Nielsen still "failed to satisfy th[e] minimal burden" of pleading that no adequate remedy at law exists. *Schertz v. Ford Motor Co.*, 2020 WL 5919731, at *2 (C.D. Cal. July 27, 2020) (dismissing UCL claim for injunction and restitution); *Elizabeth M. Byrnes, Inc.*, 2021 WL 5507225, at *5 (dismissing UCL and FAL claims for restitution and injunctive relief because "Plaintiff makes no effort to allege, or explain … why her legal remedies are or may be inadequate"); *see Sonner*, 971 F.3d at 844 ("[T]he operative complaint does not allege that Sonner lacks an adequate legal remedy.").

Indeed, Nielsen does not merely fail to allege a lack of remedy at law—she actually brings legal claims, including breach of contract, concealment, and negligent misrepresentation.  *See Huynh*, 508 F. Supp. 3d at 662 (granting defendant summary judgment on UCL claim for injunctive relief because plaintiff "fails to allege or demonstrate that any remedy at law is inadequate, and in fact she even seeks a remedy at law through her negligence claim, which is based on the same alleged conduct as her equitable claim").  The FAC makes no effort to allege or explain why these legal remedies—all based on the same conduct as her equitable claims—are or may be inadequate.  *Sonner* thus compels their dismissal. *See, e.g.*, *Nese*, 2021 WL 4497893, at *3 (dismissing UCL claim); *TML Recovery, LLC*, 2021 WL 3730168, at *7 (dismissing UCL claim); *Shay v. Apple Inc.*, 2021 WL 1733385, at *5 (S.D. Cal. May 3, 2021) (dismissing UCL claim and equitable relief sought in CLRA claim).

## C.   Nielsen Lacks Standing To Pursue Prospective Relief

Nielsen also lacks standing to seek any prospective relief.  The FAC continues to be devoid of allegations that Nielsen would purchase a Dream Key in

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

the future if WDPR offered them, and thus, she alleges no facts showing an actual and imminent—that is, a "certainly impending"—threat of future harm.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see, e.g.*, *Joslin v. Clif Bar & Co.*, 2019 WL 5690632, at *3 (N.D. Cal. Aug. 26, 2019) (plaintiffs lack standing to pursue prospective relief when they "do not allege they want to or intend to purchase the Products in the future").  Even with an amendment, Nielsen could not credibly allege a threat of future harm because the Dream Key is an annual pass, which Nielsen could only purchase once, and she has already done so.  Nielsen could not allege, consistent with Rule 11, that the Dream Key pass that might be available in the future, if any, will have the same advertisement she cites or same T&C.  Therefore, Nielsen lacks standing to seek prospective injunctive relief.  *See Nese*, 2021 WL 4497893, at *3.

### D.   Nielsen's Claims Are Outside The Scope Of The CLRA

The CLRA applies to transactions that "result[] in the sale or lease of goods or services."  Cal. Civ. Code § 1770(a).  The term "goods" is defined as "tangible chattels," and the term "services" means "work, labor, and services for other than a commercial or business use."  *Id*. § 1761(a)-(b).  The California Supreme Court has made clear that if the case does not involve a "good" or "service" within the plain language of the statute, the CLRA claim must be dismissed.  *Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 61 (2009) (affirming dismissal of CLRA claim because life insurance is not a "good" or a "service").

A Dream Key pass is neither a "good" nor a "service" within the meaning of the CLRA; it is a temporary license to enter WDPR's parks.  *See Ex parte Quarg*, 149 Cal. 79, 81 (1906) (a "ticket of admission to a public place of amusement" is a "license to the purchaser of the ticket" that "represents a right, positive, or conditional, as the case may be, according to the terms of the original contract of

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

sale"); *see also Valentine v. Cedar Fair, L.P.*, 174 N.E.3d 900, 908 (Ohio Ct. App.) (a "season pass constituted a revocable license … form[ing] a contractual relationship when [the buyer] purchased that pass, the terms of which were set forth in the [pass] Terms and Conditions"), *appeal allowed* 175 N.E.3d 1286 (Ohio 2021). Nielsen's allegation that Dream Keys are "services" within the meaning of the CLRA, *see* FAC ¶ 39, is a legal conclusion the Court does not accept as true. And it is wrong: "to hold that the tickets, or more specifically the admission to the parks that the tickets provide, constitute a service [within the meaning of the CLRA] requires a strained and unnatural construction of the term." *Hall v. Sea World Entm't, Inc.*, 2015 WL 9659911, at *15 (S.D. Cal. Dec. 23, 2015) (holding that SeaWorld admission tickets are not "services" within the meaning of the CLRA); *see also Kouball v. SeaWorld Parks & Entm't, Inc.*, 2020 WL 5408918, at *5 (S.D. Cal. Sept. 9, 2020) (holding that "annual passes [that] merely allow access to SeaWorld's parks … do not qualify as 'services' in the Court's view"), *aff'd*, 2021 WL 4947877 (9th Cir. Oct. 25, 2021).

Presumably aware of the fatal deficiency in her original pleading, Nielsen now also claims that Dream Key passes are CLRA "'[g]oods' because they entitle pass holders to discounts on purchases." FAC ¶ 39. This argument too fails as a matter of law. Under the CLRA, "'[g]oods' means tangible chattels." Cal. Civ. Code § 1761(a). As the California Supreme Court has explained, "'tangible property' refers to things that can be touched, seen, and smelled." *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 880 (2001); *see Wixon v. Wyndham Resort Dev. Corp.*, 2008 WL 1777590, at *3-4 (N.D. Cal. Apr. 18, 2008) (applying *Kazi* to CLRA). In other words, "[t]angible property is that which is visible and corporeal, having substance and body," whereas "intangible property … is generally defined as property that is a 'right' rather than a physical object."

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Navistar Int'l Trans. Corp. v. State Bd. of Equalization*, 8 Cal. 4th 868, 875 (1994). Dream Key holders did not purchase a physical object but an "intangible right" to discounts and to enter WDPR parks.  *See id*.; *cf. Gurwell v. Sea World Parks & Ent. LLC*, 2021 WL 4168503, at *8 (E.D. Va. Aug. 11, 2021) (holding that "a park ticket" to SeaWorld is not a "service" or "good" or "any tangible property right" because it "is a license, revocable at any time"); *Wixon*, 2008 WL 1777590, at *4 ("Based on this definition of the term 'tangible,' the Court concludes that as a matter of law, Plaintiffs cannot show that the Vacation Credits qualify as 'goods' under the CLRA."); *Berry v. Am. Exp. Publ'g, Inc.*, 147 Cal. App. 4th 224, 229 (2007) (holding that a credit card is not a good for purposes of the CLRA).[12]

Nielsen's CLRA claim therefore should be dismissed with prejudice because Dream Key passes are outside the scope of the CLRA.  *See, e.g.*, *Hall*, 2015 WL 9659911, at *15 (dismissing CLRA claim with prejudice because SeaWorld entrance tickets are neither "goods" nor "services" within the meaning of the statute); *Kissling v. Wyndham Vacation Resorts, Inc.*, 2015 WL 7283038, at *3-4 (N.D. Cal. Nov. 18, 2015) (dismissing CLRA claim with prejudice because "membership interests" entitling the "members to the use of condominium units for one or two weeks each year" are not "goods" or "services" within the meaning of the statute); *Wixon*, 2008 WL 1777590, at *3-4 (dismissing CLRA claim with prejudice because "nonexclusive license" to use property and vacation credit is not "goods" or "services" within the meaning of the statute).

---

[12] Nielsen also cannot seek damages under the CLRA based on her allegation that she was deprived of "discounts on purchases," FAC ¶ 39, because her CLRA letter failed to satisfy the CLRA's mandatory notice requirement for that claim.  *See, e.g.*, *Ruszecki v. Nelson Bach USA Ltd.*, 2015 WL 6750980, at *5-6 (S.D. Cal. June 25, 2015); *see also* Schoenfeld Decl. Ex. B (CLRA letter).

24

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the FAC with prejudice.

Respectfully submitted,

Dated: March 4, 2022        */s/ David C. Marcus*

DAVID C. MARCUS (CA Bar No. 158704)
(Email: david.marcus@wilmerhale.com)
WILMER CUTLER PICKERING
        HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5312
Facsimile: (213) 443-5400

ALAN SCHOENFELD (*admitted pro hac vice*)
(Email: alan.schoenfeld@wilmerhale.com)
RYAN CHABOT (*admitted pro hac vice*)
(Email: ryan.chabot@wilmerhale.com)
WILMER CUTLER PICKERING
        HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7294
Facsimile: (212) 230-8888

MARGARITA BOTERO (*admitted pro hac vice*)
(Email: margarita.botero@wilmerhale.com)
WILMER CUTLER PICKERING
        HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Telephone: (720) 274-3130
Facsimile: (720) 274-3133

*Attorneys for Defendant*
*Walt Disney Parks and Resorts U.S., Inc.*

25

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055