DANIEL J. MULLER, SBN 193396
dmuller@venturahersey.com
ANTHONY F. VENTURA, SBN 191107
aventura@venturahersey.com
VENTURA HERSEY & MULLER, LLP
1506 Hamilton Avenue
San Jose, California 95125
Telephone:  (408) 512-3022
Facsimile:  (408) 512-3023

Attorneys for Plaintiff Jenale Nielsen &
the Proposed Class

DAVID C. MARCUS (CA Bar No. 158704)
david.marcus@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5312
Facsimile: (213) 443-5400

Attorneys for Defendant
Walt Disney Parks and Resorts U.S., Inc

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENALE NIELSEN, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WALT DISNEY PARKS AND RESORTS U.S., Inc., a Florida Corporation, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.:  8:21-cv-02055-DOC-ADS<br><br>RULE 26(f) REPORT<br><br>DATE:      March 28, 2022<br>TIME:      8:30 a.m.<br>COURT:<br><br>Hon. David O. Carter |

## INTRODUCTION

Pursuant to the Court's *Order Setting Scheduling Conference* dated January 19, 2022 and the Court's *Initial Standing Order and Scheduling Order & Order Re: Pretrial and Trial Procedures*, Plaintiff Jenale Nielsen and Defendant Walt Disney Parks And Resorts U.S., Inc. ("WDPR") conducted the required meeting of counsel and hereby submit the following Rule 26(f)

-1-

Joint Report:

## I. SUMMARY OF THE CASE:

<u>Plaintiff's Position</u>:

In or about August 2021, Disney introduced a sales program that it calls the Disneyland Resort Magic Key program. Pursuant to the program, Disney offers for sale a variety of Magic Key Passes. Consumers who purchase a Magic Key Pass from Disney are entitled to make reservations to enter the Disneyland and/or California Adventures theme parks without having to purchase a ticket for a period of one year from when their Magic Key pass is first used.

Ms. Nielsen decided to purchase a Dream Key Pass and paid $1,399.00 for her pass. When it advertised the Dream Key Pass, Disney promised that Dream Key Passes would not be subject to "blockout dates" and that passholders could enter Disney's Anaheim theme parks using their Dream Key Passes so long as park reservations were available and the park was not at capacity. After purchasing her Dream Key Pass, however, Ms. Nielsen learned that Disney would not allow her to use the Dream Key pass to make a reservation for the theme parks even though the parks were not at capacity and even though park reservations were available and advertised on Disney's website. Specifically, when Ms. Nielsen attempted to use her Magic Key to make park reservations to visit Disneyland, she was disappointed to learn that Disney had blocked out many days, including all weekend days in the month of November 2021 even though park reservations were available.

In her First Amended Class Action Complaint, Ms. Nielsen states claims for violations of California's Consumer Legal Remedies Act, violation of California's False Advertising Law, violations of California's Unfair Competition Law, breach of contract, negligent misrepresentations, and concealment. Ms. Nielsen seeks to represent a class of consumers who purchased Dream Key passes and who were blocked out from entering Disney's theme parks even though the parks were not at capacity and even though park reservations were available. Ms. Nielsen seeks damages and injunctive relief.

<u>Defendant's Position</u>:

Plaintiff purchased a Dream Key pass to Disneyland Resort theme parks through a new,

reservation-based annual passholder offering called the Magic Key program. The advertisement and terms and conditions for Dream Keys plainly state that Dream Key passholders become eligible to make park reservations with "no blockout dates"—that is, no dates are categorically inaccessible—subject to both reservation "availability" and park "capacity." To be clear, no dates are or were blocked out to Dream Key passholders. In other words, Dream Key passholders are eligible to access park reservations on any day of the year that the parks have both capacity and reservations available to Magic Key passholders.

Ms. Nielsen's First Amended Class Action Complaint (FAC) fails to state any claim because it is based on the fundamentally flawed premise that "no blockout dates" means that the only limit on her ability to make park reservations is park "capacity." FAC ¶¶ 10, 21-23. In other words, she claims that she is entitled to make a park reservation if any reservations are available to *anyone*, up to park capacity. But this interpretation is unreasonable on its face and incompatible with the express disclosure that Dream Key reservations, while not subject to blockout dates, are subject to availability *and* capacity. Because Ms. Nielsen does not allege that any date was categorically inaccessible to her, she fails to state a claim for breach of contract, misrepresentation, concealment, or false advertising pursuant to California consumer protection laws. WDPR therefore moved to dismiss the FAC in its entirety. The hearing on WDPR's motion to dismiss is scheduled for April 4, 2022.

WDPR's motion to dismiss also includes independent reasons why all of Ms. Nielsen's claims should be dismissed with prejudice, including:

- Contrary to Ms. Nielsen's assertion, no dates were or are blocked out to Dream Key passholders.
- Ms. Nielsen fails to allege that WDPR lacked a reasonable ground to believe the truth of the statement that Dream Key passes had no blockout dates, as required for her negligent misrepresentation claim;
- Ms. Nielsen fails to allege WDPR's intent to defraud, as required for her concealment claim;
- The economic loss rule bars both of Ms. Nielsen's tort claims;

- Ms. Nielsen has an adequate remedy at law, and thus, this Court lacks authority to grant the equitable remedies Nielsen seeks pursuant to the Consumer Legal Remedies Act (CLRA), False Advertising Law (FAL), and Unfair Competition Law (UCL);
- Ms. Nielsen lacks standing to seek prospective injunctive relief; and
- Ms. Nielsen fails to allege a CLRA claim because a license to enter WDPR's parks is neither a "service" nor a "good."

## II.	PRINCIPAL ISSUES IN THE CASE:

Plaintiff expects that the principal legal issues will include:

1. Whether Defendant has a practice of "blocking out" certain dates for Dream Key Passholders;

2. Whether Defendant made false statements in its advertisements of Dream Key passes;

3. Whether Defendant has breached its agreements with Dream Key Passholders by blocking them from using their Dream Key Passes to make reservations to the Anaheim theme parks when the parks are not at capacity and when park reservations are available;

4. Whether Defendant concealed its intended practices regarding the Dream Key Pass when it sold Dream Key Passes to Ms. Nielsen and other putative class members;

5. Whether Ms. Nielsen and her fellow Dream Key Passholders were damaged as a result of Defendant's conduct;

6. Whether the Court should enjoin Defendant's unfair business practices and/or order equitable remedies in response to Defendant's alleged unlawful practices.

7. Whether Ms. Nielsen's claims are appropriate for class relief and, if so, whether Ms. Nielsen is an appropriate class representative and whether her counsel are appropriate class counsel.

WDPR expects that the principal legal issues will include:

1. Whether any dates were or are blocked out to Dream Key passholders;

2. Whether the term "blockout dates" in the Dream Key advertisement and terms and conditions means something other than its plain and unambiguous meaning—dates that are

-4-
RULE 26(f) REPORT

categorically inaccessible;

3. Whether the term "subject to availability" is indistinct from "subject to capacity" where a contract expressly references both concepts separately;

4. Whether Ms. Nielsen can avoid the terms and conditions governing her Dream Key Pass;

5. Whether Ms. Nielsen states a claim for negligent misrepresentation when she fails to allege facts showing that WDPR lacked reasonable grounds to believe its statements were true;

6. Whether Ms. Nielsen states a claim for concealment when she fails to allege facts showing that WDPR intended to defraud her;

7. Whether Ms. Nielsen can bring tort claims that are factually indistinct from her breach of contract claim;

8. Whether a reasonable consumer would have interpreted the phrase "no blockout dates" to mean something other than its plain and unambiguous meaning;

9. Whether a reasonable consumer would have understood that "subject to availability" and "subject to capacity" were distinct limitations on Dream Key passes;

10. Whether Ms. Nielsen has Article III standing to seek prospective injunctive relief;

11. Whether a license to enter WDPR parks is a "good" or a "service" within the plain meaning of the CLRA; and

12. Whether this action should be certified pursuant to Fed. R. Civ. P. 23.

### III. PLEADING AMENDMENT AND ADDITIONAL PARTIES:

Ms. Nielsen does not anticipate further amendments to her pleadings. She does, however, acknowledge Defendant's pending Motion To Dismiss her First Amended Class Action Complaint and, depending on the Court's ruling on Defendant's motion, Ms. Nielsen may request leave to amend her complaint further to address any pleading infirmities identified by the Court.

WDPR would oppose any further amendment to the complaint or any addition of parties. Ms. Nielsen has already once amended her complaint with full view of WDPR's arguments explaining its fundamental deficiencies. The FAC does not cure those shortcomings, because it cannot. Any further amendment would be lack good cause and be futile.

**IV.   MOTIONS:**

Defendant's Motion To Dismiss the First Amended Complaint is currently pending and set for hearing on April 4, 2022.  Plaintiff intends to oppose the motion.  Plaintiff intends to bring a motion for class certification.

WDPR believes that the principal issues identified above may all be determined on the pleadings based on its pending Motion to Dismiss.  WDPR anticipates that if the Motion to Dismiss is denied in whole or in part, any remaining issues may be determined by a motion for summary judgment.  WDPR does not believe this case is suitable for treatment as a class action and intends to oppose Ms. Nielsen's anticipated motion to certify a class.

**V.   SETTLEMENT DISCUSSIONS:**

The Parties have discussed the possibility of settlement.  At this time, Ms. Nielsen is not amenable to settlement on an individual basis, and WDPR is not amenable to settlement on a classwide basis.  The parties accordingly do not believe the case is likely to settle at this time.  At the appropriate juncture in the case, in accordance with Local Rules 26-1(c) and 16-15.4, the parties are amenable to "ADR Procedure No. 3," i.e., "a private dispute resolution proceeding."

**VI.   DISCOVERY PLAN:**

The parties propose that discovery be conducted in accordance with the limitations provided in the Federal Rules of Civil Procedure.

WDPR expects that if this case enters discovery, discovery will include production of data files and other ESI, all of which will be commercially sensitive and some of which will include personally identifiable information.  Before the production of documents begins, WDPR anticipates that the parties will negotiate both an ESI Protocol (which will address inadvertent disclosure of privileged or work-product materials under Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502) and a Protective Order to govern production and handling of discovery materials in this action.  WDPR anticipates that the parties will need to conduct no more than the 10 depositions per side provided by Federal Rule of Civil Procedure 30.

## VII. TRIAL:

Plaintiff's Statement:

Ms. Nielsen has demanded a jury trial. Ms. Nielsen estimates that trial will take four days.

Defendant's Statement:

As WDPR's pending motion to dismiss explains, this Court lacks jurisdiction over Ms. Nielsen's claims that sound in equity (under the CLRA, UCL, and FAL), and thus, such claims should be dismissed in their entirety. To the extent this Court finds jurisdiction over any portion of Ms. Nielsen's equitable claims, such claims will be tried to the Court in accordance with those consumer protection statutes. Further, to the extent Ms. Nielsen's claims that sound in law (breach of contract, negligent misrepresentation, and concealment) were adequately plead—and they were not—those claims will be tried to a jury. At this stage, WDPR estimates that trial will take less than two days. WDPR cannot more accurately estimate a trial length prior to a decision on its motion to dismiss (and a motion for summary judgment, if necessary), which will likely substantially narrow the claims at issue in this case.

## VIII. OTHER ISSUES AND PROPOSED DATES:

Plaintiff's Statement:

Ms. Nielsen believes that the parties should make initial disclosures as required by the Federal Rules of Civil Procedure and that they should be free to commence discovery per Rule 26.

Defendant's Statement:

WDPR moved to dismiss the FAC in its entirety with prejudice pursuant to several independent legal arguments. Accordingly, WDPR believes all discovery should be stayed pending this Court's resolution of the pending motion to dismiss—scheduled for hearing on April 4, 2022—because, should this Court dispose of the FAC in its entirety, any discovery the parties may have conducted would have been a waste of resources. WDPR is prepared to file a motion to stay discovery if the Court directs.

Subject to their disagreement over when discovery should begin, the parties jointly propose the schedule below.

| Event | Deadline |
|---|---|
| Class certification motion with supporting expert reports (if any) | October 4, 2022, or 180 days from the motion to dismiss decision if discovery is stayed |
| Opposition to class certification motion with supporting expert reports (if any), and motion to exclude evidence in support of class certification motion | Per Local Rule 7-9 |
| Reply brief in support of class certification motion, opposition to motion to exclude evidence in support of class certification, and motion to exclude evidence in support of opposition to class certification motion | Per Local Rule 7-10 |
| Opposition to motion to exclude evidence in support of opposition to class certification motion | Per Local Rule 7-9 |
| Class certification hearing | February 13, 2023, or 275 days from the motion to dismiss decision if discovery is stayed |
| Merits expert reports | March 13, 2023, or 305 days from the motion to dismiss decision if discovery is stayed |
| Rebuttal expert reports | April 10, 2023, or 335 days from the motion to dismiss decision if discovery is stayed |
| Discovery Cut-Off Date | May 8, 2023, or 360 days from the motion to dismiss decision if discovery is stayed |
| Final Motion Cut-Off Date | July 10, 2023, or 8 weeks after the discovery cut-off date if discovery is stayed |
| Final Pretrial Conference Date | August 21, 2023, or 6 weeks after the final motion cut-off if discovery is stayed |
| Start of Trial | September 5, 2023, or 2 weeks after the final pretrial conference date if discovery is stayed |

| | | |
|---|---|---|
| Date: March 14, 2022 | | VENTURA HERSEY & MULLER LLP |
| | By: | /s/_____<br>DANIEL J. MULLER<br>Attorneys for Plaintiff and the Proposed Class |
| Date: March 14, 2022 | | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | By: | /s/_____<br>DAVID C. MARCUS<br>Attorneys for Defendant |