1  DAVID C. MARCUS (CA Bar No. 158704)
2  (Email: david.marcus@wilmerhale.com)
   WILMER CUTLER PICKERING
3      HALE AND DORR LLP
4  350 South Grand Avenue, Suite 2400
   Los Angeles, CA 90071
5  Telephone: (213) 443-5312
   Facsimile: (213) 443-5400
6

7  *Attorneys for Defendant*
   *Walt Disney Parks and Resorts U.S., Inc.*
8

9  *(additional counsel listed below)*

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12 | JENALE NIELSEN, individually and     Case No. 8:21-cv-02055-DOC-ADS
   | on behalf of all others similarly situated,
13 |                                      **REPLY MEMORANDUM OF**
14 |                Plaintiff,            **LAW IN SUPPORT OF WALT**
                                          **DISNEY PARKS AND RESORTS**
15 |           v.                         **U.S., INC.'S MOTION TO**
                                          **DISMISS PLAINTIFF'S FIRST**
16 | WALT DISNEY PARKS AND                **AMENDED CLASS ACTION**
   | RESORTS U.S., INC., a Florida        **COMPLAINT**
17 | Corporation, and DOES 1 through 25,
   | inclusive,
18 |
19 |                Defendants.           Hearing Date: April 4, 2022
20 |                                      Time: 8:30 a.m.
                                          Judge: Honorable David O. Carter
21 |                                      Courtroom: 10A

22

23

24

25

26

27         **REPLY MEMORANDUM OF LAW**
           **IN SUPPORT OF MOTION TO DISMISS**
28 *Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

ALAN SCHOENFELD (*admitted pro hac vice*)
(Email: alan.schoenfeld@wilmerhale.com)
RYAN CHABOT (*admitted pro hac vice*)
(Email: ryan.chabot@wilmerhale.com)
WILMER CUTLER PICKERING
        HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7294
Facsimile: (212) 230-8888

MARGARITA BOTERO (*admitted pro hac vice*)
(Email: margarita.botero@wilmerhale.com)
WILMER CUTLER PICKERING
        HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Telephone: (720) 274-3130
Facsimile: (720) 274-3133

*Attorneys for Defendant*
*Walt Disney Parks and Resorts U.S., Inc.*

**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

# **TABLE OF CONTENTS**

ARGUMENT ............................................................................................................2

I.   Nielsen Does Not Allege A Breached Promise (Count IV) ...........................2

II.  Nielsen's Statutory Claims (Counts I, II, And III) Should Be Dismissed ......6

    A.   Nielsen Fails To Allege A Reasonable Consumer Would Be
         Deceived ...............................................................................................6

    B.   The Court Cannot Grant Equitable Relief...........................................9

    C.   Nielsen's Claims Are Outside The Scope Of The CLRA...................13

CONCLUSION .....................................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. SeaWorld Parks and Entertainment, Inc.*,
2016 WL 8929295 (N.D. Cal. Nov. 7, 2016) ......................................................14

*Business Solutions, LLC v. Ganatra*,
2019 WL 926351 (C.D. Cal. Jan. 7, 2019) ............................................................5

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ..............................................................................7

*DCS Marketing v. Homer Laughlin China Co.*,
2009 WL 3806356 (C.D. Cal. Nov. 10, 2009) ....................................................16

*Diamond S.J. Enterprise, Inc. v. City of San Jose*,
395 F. Supp. 3d 1202 (N.D. Cal. 2019) ..............................................................11

*Eastman v. Allstate Insurance Co.*,
2014 WL 5355036 (S.D. Cal. Oct. 20, 2014) ......................................................11

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ................................................................................9

*Golden West Baseball Co. v. City of Anaheim*,
25 Cal. App. 4th 11 (1994) ..................................................................................11

*Great American E & S Insurance Co. v. Kouw Pinnq Enterprise Co.*,
2013 WL 5461911 (C.D. Cal. Sept. 20, 2013) ......................................................4

*Hall v. Marriott International, Inc.*,
2020 WL 4727069 (S.D. Cal. Aug. 14, 2020) ......................................................8

*Hall v. Sea World Entertainment, Inc.*,
2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) .............................................14, 15

*Hope Medical Enterprises Inc. v. Fagron Compounding Services, LLC*,
2021 WL 4963516 (C.D. Cal. Oct. 26, 2021) ....................................................10

ii

*Inland Concrete Enterprises, Inc. v. Kraft*,
  318 F.R.D. 383 (C.D. Cal. 2016)................................................................14

*Keyhona Campbell v. Huffmaster Management Inc.*,
  2022 WL 705825 (E.D. Cal. Mar. 9, 2022).............................................13

*Kouball v. SeaWorld Parks & Entertainment, Inc.*,
  2020 WL 5408918 (S.D. Cal. Sept. 9, 2020).............................................14

*Lowry v. Southwest Airlines, Co.*,
  2015 WL 12656950 (C.D. Cal. Aug. 10, 2015) ........................................5, 6

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) ................................................................6, 7, 9

*Nacarino v. Chobani, LLC*,
  2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ............................................10

*National Tax Institute, Inc. v. Topnotch at Stowe Resort & Spa*,
  388 F.3d 15 (1st Cir. 2004)................................................................4, 5

*Nunez by Nunez v. City of San Diego*,
  114 F.3d 935 (9th Cir. 1997) ............................................................14

*Oddo v. Arcoaire Air Conditioning & Heating*,
  2017 WL 372975 (C.D. Cal. Jan. 24, 2017).............................................13

*Raz v. Wells Fargo Bank, N.A.*,
  2014 WL 12579573 (C.D. Cal. July 22, 2014),
  *aff'd* 675 F. App'x 655 (9th Cir. 2017) ............................................16

*Scales v. Six Flags, Inc.*,
  2004 WL 1870499 (Ohio Ct. App. Aug. 20, 2004).......................................5, 6

*Silva v. U.S. Bancorp*,
  2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) ...........................................9, 10, 13

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ............................................................10

iii

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*Sproul v. Oakland Raiders,*
  2005 WL 1941388 (Cal. Ct. App. Aug. 15, 2005) ................................14, 15, 16

*Tirakian v. New York Life Insurance Co.,*
  2011 WL 13214267 (C.D. Cal. May 13, 2011)....................................................11

*Tull v. United States,*
  481 U.S. 412 (1987)............................................................................................10

*Williams v. Gerber Products Co.,*
  552 F.3d 934 (9th Cir. 2008) ...............................................................................8

*Zeiger v. WellPet LLC,*
  526 F. Supp. 3d 652 (N.D. Cal. 2021)............................................................8, 12

iv

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

Nielsen's entire case rests on an unreasonable misreading of the contract terms and advertisement at issue.  The promise Nielsen claims WDPR made—that a Dream Key passholder may access any reservation available to anyone—has no basis in the text of the contract terms or in the advertisement.  Nielsen amended her complaint after WDPR filed its initial motion to dismiss.  After seeing the instant motion to dismiss, Nielsen abandoned her tort claims.  Opp. 24-25.  What remains are Nielsen's breach of contract and statutory claims, all of which suffer from fatal, fundamental deficiencies and warrant dismissal with prejudice.

Nielsen's contract claim asserts that WDPR promised Dream Key holders access to any reservation available to anyone else, including reservations available to regular daily ticket holders.  That, however, is not what WDPR promised.  WDPR promised a Dream Key with no dates blocked out, but with passholders' ability to make reservations subject to availability and capacity limitations.  That is what WDPR delivered.  Nielsen cannot plausibly allege that WDPR promised what she claims, or that WDPR breached any promise it actually made.

Nielsen's statutory claims under the UCL, CLRA, and FAL fail the "reasonable consumer" test.  No reasonable consumer would interpret the words "no blockout dates" to mean something other than what those words say:  no date is blocked out.  Nielsen does not allege that WDPR blocked out any date.  For this reason alone, her claims should be dismissed on the pleadings.  These claims also fail for other reasons:  Nielsen has adequate remedies at law; she lacks standing to pursue prospective injunctive relief and cannot seek specific performance, a contract remedy unavailable when damages are sufficient; and she cannot pursue a CLRA claim because a Dream Key pass is a license, not a good or a service.

For all the foregoing reasons, the FAC should be dismissed with prejudice.

1

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

**ARGUMENT**

**I.     Nielsen Does Not Allege A Breached Promise (Count IV)**

Nielsen's breach of contract claim fails because WDPR did not make the promise that she claims was breached—to her or anyone else.  Nielsen's opposition makes clear the supposed contractual promise that she asserts:  that as a Dream Key holder, she would have the right to any park reservation available to the general public.  This is what she alleges WDPR promised to Dream Key holders and then failed to deliver.  WDPR, however, never made that promise.  The Dream Key T&C do not promise Dream Key holders any and every reservation available to anyone else.  Nielsen thus fails to state a claim for breach of contract.

What the Dream Key T&C promised, WDPR delivered:  a pass with no blockout dates, subject to reservation availability and capacity restrictions.  The plain meaning of that promise is a pass for which no date was blocked out—not weekends, for example, or holidays or school breaks—in contrast to the Enchant Key and Imagine Key passes that do have certain dates blocked out.  If Nielsen had alleged that WDPR blocked out Saturdays, or the Fourth of July, or Christmas Day to Dream Key holders, this case would look much different.  But Nielsen has not and cannot make that claim.  Instead, she alleges that when she tried to book reservations in October 2021 for November 2021, the weekend days she wanted were no longer available, although 13 other days still were.  These facts do not amount to a breach of WDPR's promise.  WDPR blocked out no date and broke no promise made to Nielsen.

Nielsen's response (Opp. 15-19) is off point.  Nielsen purports to dispute whether "no categorically inaccessible dates" is the right interpretation of "no blockout dates," for example by citing case law about admitting extrinsic evidence

**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

and dictionary synonyms for "categorically."  But the question to the Court is much simpler than Nielsen's argument suggests.  The question is whether "no blockout dates" means "no dates blocked out" or something else.  If the text means what it says, then Nielsen fails to state a contract claim.  What date does Nielsen allege that WDPR blocked out to Dream Key holders contrary to its promise?  No date at all.  She alleges only that, when she tried to book reservations in late October 2021 for November 2021, some reservations that were available to the general public were not available to her.  Again, that is not a blockout date.  That is reservation availability, a limitation WDPR repeatedly told Nielsen applied to Dream Keys.

Nielsen's reading of "no blockout dates" requires that phrase to mean something disconnected from the actual words:  that any reservation available to anyone must also be made available to her.  In other words, only capacity can limit her access to the parks.  Nielsen purports to dispute this characterization of her claim (*see* Opp. 2-4, 20-21), but she identifies no reservation under her theory that could be unavailable to her when the parks still had capacity.  Instead, the examples she offers all go to capacity:  when "the parks are closed, they are sold out, or normal capacity is reduced for a special event or health concerns." Opp. 22; *see* Opp. 4, FAC ¶ 12.  The consequence of her theory is, unavoidably, that "availability" does not independently constrain her pass at all because she should have access to any reservations the parks have capacity to offer.

That reading fails to observe any difference between the terms "availability" and "capacity," despite Nielsen's assertion to the contrary.  Case law that WDPR cited (*see* Mem. 7), but Nielsen fails to distinguish or even acknowledge, demonstrates that any plausible and reasonable interpretation of the T&C must

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

assign different meanings to those separate and distinct terms.  Nielsen's interpretation does not and cannot.  Her interpretation is, therefore, unreasonable and wrong.  A contract claim that turns on reading two distinct terms to have indistinct meanings—effectively reading one of them out of the contract altogether—should be dismissed on the pleadings.  *See, e.g.*, *Great Am. E & S Ins. Co. v. Kouw Pinnq Enter. Co.*, 2013 WL 5461911, at *4 (C.D. Cal. Sept. 20, 2013).

Nielsen's attempts to distinguish the cases she does address are unsuccessful.  Every reason she gives for the Court to find unpersuasive *National Tax Institute, Inc. v. Topnotch at Stowe Resort & Spa*, 388 F.3d 15 (1st Cir. 2004), ignores that both the First Circuit and the district court held that "subject to availability" *unambiguously* did not mean subject only to capacity.  That the *Topnotch* agreement was between commercial parties, that the plaintiff drafted it, that its key language appeared in an amendment, and that the case was decided on summary judgment do not matter because the court held that the contractual provision was unambiguous.  Nielsen's reading of "subject to availability" parallels the *Topnotch* plaintiff's interpretation, and so too fails.

Nielsen's characterization of *Topnotch* also finds no support in the decision.  She claims that "[t]he 'subject to availability' language amounted to little more than a stray sentence, devoid of meaning."  Opp. 21.  But "subject to availability" was the key limitation that the *Topnotch* plaintiff—like Nielsen—tried but failed to read away, dooming its contract claim.  She also claims that "the *Topnotch* court's discussion of blackout dates is revealing," Opp. 22, but *Topnotch* references blackout dates only once, in a footnote.  There, the court makes the point that although "qualifications" such as "black-out dates" "do not appear in the present

4

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

contract," "the disputed contract language in this case *is* qualified"—by the phrase subject to availability—and "the question is what the qualification means." 388 F.3d at 20 n.3 (emphasis original).  The court held that the *Topnotch* plaintiff's right to reservations subject to availability but not to blockout dates unambiguously did *not* give it the right to any reservation available to anyone else.  Just so here.

Similarly, Nielsen cannot avoid the parallels between her contract claim and the ones rejected in *Lowry* and *Scales*.  Both Nielsen and the *Lowry* and *Scales* plaintiffs interpret a specific contractual right to mean something far broader than the contract terms support.  The *Lowry* plaintiff interpreted access to early flight check in to give her the right to board the plane before anyone else; the *Scales* plaintiff interpreted access to rides subject to availability to give her the right to reasonable access to rides; Nielsen interprets access to reservations without blockout dates to give her the right to any reservation made available to anyone else.  *Lowry* and *Scales* declined to interpret the applicable contract in a manner that its language did not promise, and so rejected the contract claim.  *See Scales v. Six Flags, Inc.*, 2004 WL 1870499, at *4 (Ohio Ct. App. Aug. 20, 2004); *Lowry v. Sw. Airlines, Co.*, 2015 WL 12656950, at *5 (C.D. Cal. Aug. 10, 2015).  The Court should likewise reject Nielsen's claim.

Finally, Nielsen's opposition provides no convincing reason why her passing references to the implied covenant of good faith and fair dealing can save her contract claim.  She does not and cannot distinguish the case law holding that implied covenant allegations that "rely[] on the same alleged acts" and "seek the same damages" should be "disregarded as superfluous."  *Bus. Sols., LLC v. Ganatra*, 2019 WL 926351, at *10 (C.D. Cal. Jan. 7, 2019) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)).  That case law

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

squarely applies here, where Nielsen's express contract allegations and her implied covenant allegations both turn entirely on the alleged entitlement to any reservation available to anyone else.  That benefit "appear[s] nowhere on the face of the contract," so it can support no contract claim at all, including under the implied covenant.  *Lowry*, 2015 WL 12656950, at *6 (rejecting implied covenant claim premised on benefit not promised); *see also Scales*, 2004 WL 1870499, at *5 ("A duty of good faith does not attach to a non-existent contract[ual promise]. … Six Flags can neither logically nor legally breach a promise it never made.").

## II.   Nielsen's Statutory Claims (Counts I, II, And III) Should Be Dismissed

Nielsen's opposition confirms that her statutory claims should be dismissed.  *First*, no reasonable consumer would interpret the words "no blockout dates" to mean something other than what those words say:  that no date is blocked out.  *Second*, this Court lacks jurisdiction to grant equitable remedies under the UCL, FAL, or CLRA because Nielsen has adequate remedies at law and lacks standing to seek the only prospective injunctive relief arguably available to her (which specific performance is not).  *Third*, Nielsen fails to allege a CLRA claim because a license to enter WDPR's parks is not a "service," as defined by the statute.

### A.   Nielsen Fails To Allege A Reasonable Consumer Would Be Deceived

The phrase "blockout dates" has a common sense, widely used, and literal meaning.  Reasonable consumers know what "blockout dates" are.  "A reasonable consumer in the market for" theme-park passes—such as "a Disney enthusiast," FAC ¶ 8—would understand an advertisement for a pass with "no blockout dates" to mean that reservations would be accessible to her even on the most popular dates, like weekends, school breaks, or holidays.  *Moore v. Trader Joe's Co.*,

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

4 F.4th 874, 884-85 (9th Cir. 2021) (stating that "an average consumer of Manuka honey"—"a niche, specialty product"—"would likely know more than most about the production of the product" when affirming dismissal of UCL, CLRA, and FAL claims).  No reasonable consumer would think that "no blockout dates" also means entitlement to any reservation available to anyone else up to park capacity, regardless of the ticket type—since that is not what "no blockout dates" says.

Reasonable consumers viewing the Dream Key advertisement at issue were well informed that "no blockout dates" does not have the implausible meaning Nielsen posits.  The advertisement warns that "Park reservations are subject to availability," that admission "is subject to capacity," and that neither reservations nor admission are "guaranteed."  FAC ¶ 10.  It tells viewers that the pass is "subject to restrictions," *id.*, "which would have motivated a reasonable consumer to consult the terms and conditions" reinforcing these limitations, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  Those terms make plain that "availability" and "capacity" are distinct limitations.  No reasonable consumer would read "no blockout dates" to mean something that it does not say and that the rest of the advertisement contradicts.

It is Nielsen's "burden" to show that her claims are based on something more than her "unreasonable assumptions."  *Moore*, 4 F.4th at 880.  Her opposition fails to do that.  Nielsen alleges that she read "no blockout dates" to give her Dream Key pass not just access to reservations every day of the year, including dates blocked out to holders of Enchant Key or Imagine Key passes, but also the right to any reservation available to anyone else on those dates.  That interpretation is not reasonable.  That additional benefit is not advertised by the phrase "no blockout dates" or by any other part of the advertisement.  Indeed, the

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

advertisement disclaims it.  Missing from Nielsen's lengthy recitation of her misinterpretation (Opp. 5-10) is any persuasive explanation why members of the public are likely to think "no blockout dates" means something more than what the words themselves say—that no dates are blocked out.

When plaintiffs allege that they interpreted the words of an advertisement (or label) to mean something other than what those words say, courts dismiss claims based on that unreasonable misinterpretation.  That is the dividing line between the cases that WDPR cited dismissing or affirming dismissal of UCL, FAL, and CLRA claims, and the cases that Nielsen cites declining to dismiss them. *See* Mem. 17-19; Opp. 8-9.  Advertising or labeling that means something other than what it says is plausibly deceptive—"krab mix" with no crab, "prescription" pet food with no prescription medication, "free-run chickens" that never run free, low advertised prices with hidden fees.  *See* Opp. 8-9 (citing *Kang v. P.F. Chang's China Bistro, Inc.*, 844 F. App'x 969 (9th Cir. 2021); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020); *Sultanis v. Champion Petfoods USA Inc.*, 2021 WL 3373934 (N.D. Cal. Aug. 3, 2021); *Hall v. Marriott Int'l, Inc.*, 2020 WL 4727069 (S.D. Cal. Aug. 14, 2020)).[1]

Advertising or labeling that says what it means and means what it says, however, is not plausibly deceptive—such as "regular loads" of laundry meaning regular loads of laundry and nothing else.  *See* Mem. 17-19 (citing, *inter alia*, *Pridgen v. Church & Dwight Co.*, 2020 WL 2510517, at *3-4 (C.D. Cal. Mar. 2,

---

[1] *See also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("Fruit Juice Snacks" from "fruit juice and other all natural ingredients" made mostly with sugar and corn syrup); *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 683 (N.D. Cal. 2021) ("uncompromising nutrition" of pet food containing lead and arsenic).

8

**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

2020)).  That is the case here:  "No blockout dates" means no dates blocked out and nothing else.  Claims premised on advertisements that mean what they say, like Nielsen's, should be dismissed.  *See Moore*, 4 F.4th at 885 (affirming dismissal because "a reasonable consumer would be left only with the conclusion that '100% New Zealand Manuka Honey' means that it is 100% honey whose chief floral source is the Manuka plant, which is an accurate statement …."); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (affirming dismissal because "Plaintiff's claim that the reasonable consumer would be deceived as to the amount of lip product in a tube of Sugar is not plausible" because "the Sugar label discloses the correct weight of included lip product").

### B.   The Court Cannot Grant Equitable Relief

WDPR separately moved to dismiss Nielsen's UCL, FAL, and CLRA claims to the extent they seek retrospective or prospective equitable relief, under *Sonner* and for lack of standing—in other words, to dismiss her UCL and FAL claims entirely and all but her damages claim under the CLRA.  Nielsen's responses in opposition are unpersuasive.

First, as to retrospective equitable relief, Nielsen does not dispute that *Sonner* forecloses the equitable restitution her FAC repeatedly requests.  *See* FAC ¶¶ 24, 32, 36(h), 60, 72; *see also* Prayer for Relief ¶ 7.  Nielsen therefore concedes her claims for equitable restitution should be dismissed.  *See, e.g.*, *Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("Plaintiff concedes his … claim should be dismissed by failing to address Defendants' arguments in his Opposition.").  Instead, she recasts her request for retrospective equitable relief as seeking only "the disgorgement of ill-gotten funds."  Opp. 14.

**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

That, however, does not move the needle.  "Restitutionary disgorgement of a defendant's improper profits is an equitable remedy." *Hope Med. Enters. Inc. v. Fagron Compounding Servs., LLC*, 2021 WL 4963516, at \*23 (C.D. Cal. Oct. 26, 2021); *see also Tull v. United States*, 481 U.S. 412, 424 (1987) ("[D]isgorgement of improper profits is … a remedy only for restitution.").  Legal remedies are adequate, and equitable remedies are unavailable, where as here the plaintiff seeks "the same sum" through equitable remedies "as she requested in damages." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Following *Sonner*, courts have dismissed disgorgement claims where, as here, plaintiffs seek damages or bring legal claims based on the same conduct as their equitable claims. *See, e.g.*, *Nacarino v. Chobani, LLC*, 2021 WL 3487117, at \*12 (N.D. Cal. Aug. 9, 2021) (dismissing disgorgement claim under the UCL because damages were available); *cf. Hope Med. Enters. Inc.*, 2021 WL 4963516, at \*22 (finding disgorgement unavailable when damages were available).  The Court should do the same thing here.

Second, as to prospective equitable relief, Nielsen does not dispute that she cannot pursue the prospective relief the FAC actually seeks—to enjoin WDPR from engaging in the alleged false and deceptive advertising of Dream Key passes. *See, e.g.*, FAC ¶¶ 20, 24, 51, 60, 69, 71.  She therefore concedes that her claims for this prospective injunctive relief should be dismissed.  *Silva*, 2011 WL 7096576, at \*3.  Instead, Nielsen's opposition pivots, arguing that she may seek different prospective relief both as a matter of standing and under *Sonner* in the form of an injunction ordering WDPR to grant Dream Key passholders access to the parks whenever they are not at full capacity—that is, for specific performance of the contractual promise she alleges.  *See* Opp. 12 ("The Court can, and should, order

**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

Disney to allow Dream Key passholders to use their passes in a manner that is consistent with how they were advertised."); *id*. at 14 ("Nielsen seeks prospective relief … for ongoing harm ….  Specifically, the Court can and should enjoin Disney from continuing to refuse to allow Dream Key passholders to make reservations with their Dream Keys when park reservations are available."); *see also id*. at 13 (arguing that prospective injunctive relief is proper because "the harm … is ongoing because Dream Key passholders are still being blocked from making available park reservations.").  Nielsen's demand fails for several reasons.

To start, the FAC does not seek specific performance; it seeks to enjoin WDPR from engaging in the alleged false and deceptive advertising of Dream Key passes.  *See, e.g.*, FAC ¶¶ 20, 24, 51, 60, 69, 71.  Nielsen cannot seek new relief in her briefing just because she cannot pursue the injunctive relief the FAC seeks.  *See, e.g.*, *Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1231 (N.D. Cal. 2019) ("[T]he complaint may not be amended by briefs in opposition to a motion to dismiss.").

Further, Nielsen's request for specific performance under these equitable statutes is misplaced.  "[S]pecific performance is a remedy for breach of contract," *Golden West Baseball Co. v. City of Anaheim*, 25 Cal. App. 4th 11, 49 (1994), not for these statutory violations.  *See, e.g.*, *Eastman v. Allstate Ins. Co.*, 2014 WL 5355036, at *4 (S.D. Cal. Oct. 20, 2014) (explaining "[t]he UCL does not provide for a specific performance remedy" and dismissing a UCL claim seeking "an injunction prohibiting Defendant from continuing to deny Plaintiffs" rights allegedly due under a contract); *Tirakian v. N.Y. Life Ins. Co.*, 2011 WL 13214267, at *7 (C.D. Cal. May 13, 2011) ("The Court concludes that an injunction requiring

**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

specific performance of the contract is the equivalent of actual contract damages and therefore is not available pursuant to the UCL.").

Indeed, the cases Nielsen relies on (Opp. 13) to argue that *Sonner* does not preclude the prospective relief she now seeks defeat her argument.  In particular, in finding that *Sonner* did not bar the plaintiff's prospective injunctive relief, the court in *Zeiger* expressly distinguished the requested injunction *against false advertising* from injunctions seeking specific performance.  *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687-88 (N.D. Cal. 2021) (distinguishing "specific performance," which is the "classic example" of injunctive relief that "will not be ordered unless damages are insufficient," from an injunction against future false advertising).  Similarly, in *Souter v. Edgewell Personal Care Co.*, the plaintiff sought prospective injunctive relief that was fundamentally distinct from specific performance—an injunction "against false advertising or labeling."[2]

Here, Nielsen alleges that, contrary to its advertisement, her Dream Key has blockout dates.  If she proves that claim, monetary damages are sufficient to redress it.  Indeed, in conceding dismissal of her tort claims, Nielsen acknowledges that "she cannot allege injury distinct from [] economic harm."  Opp. 24.  Moreover, the FAC is full of allegations that monetary damages would make Nielsen whole.  *See, e.g.*, FAC ¶ 28 ("Nielsen … lost money as a result of Disney's unlawful behavior."), *id*. ("Nielsen … suffered loss in an amount equal to, at least, the fee for the Dream Key pass."), ¶ 50 ("Nielsen … seeks her actual damages"),

---

[2] No. 20-cv-1486 (S.D. Cal.), Dkt. 59 (Pl.'s Br. in Opp. to Mot. to Dismiss dated Nov. 20, 2021) at 22; *see also id.*, Dkt. 55 (First Am. Compl. dated July 7, 2021) at 38 (seeking an order "enjoining Defendants from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner"); *id.*, Dkt. No. 63 (Second Am. Compl. dated March 18, 2022) at 34 (same).

12

¶ 57 ("Nielsen … suffered injury in fact as a result of Disney's actions as set forth herein because [she] purchased Dream Keys"), ¶ 72 ("Nielsen … seeks an order for the restitution of all monies from the sale of the Dream Key passes"), ¶ 79 ("Nielsen seeks monetary damages"), ¶ 84 ("Nielsen … ha[s] and will continue to suffer damages in the form of lost money from the purchase price of the Dream Key passes."), ¶ 94 ("Nielsen … suffered a loss of money").  Accordingly, *Sonner* compels dismissal of Nielsen's FAL and UCL claims in their entirety, as well as her request for injunctive and declaratory relief pursuant to the CLRA.

This Court should reject Nielsen's request for an opportunity to further amend her complaint.  Opp. 13.  Nielsen already failed to cure her pleading deficiencies after having the benefit of reviewing WDPR's original motion to dismiss making this argument.  *See* Dkt. 20 at 20-22.  Further amendment would also be futile:  Nielsen *has* an adequate remedy at law for her pass, and she cannot credibly allege facts giving her standing to seek prospective injunctive relief against alleged false advertising of an annual pass she already bought.  *See* Mem. 19-22; *see also Keyhona Campbell v. Huffmaster Mgmt. Inc.*, 2022 WL 705825, at *4 (E.D. Cal. Mar. 9, 2022) (dismissing UCL claim with prejudice because amendment to allege an inadequate remedy at law would be futile).[3]

## C.   Nielsen's Claims Are Outside The Scope Of The CLRA

Nielsen's CLRA claim separately fails in its entirety because the CLRA does not apply here.  Despite amending her complaint to allege that Dream Keys are "goods," FAC ¶ 39, Nielsen now does not dispute that Dream Keys are *not* "goods" within the meaning of the statute.  She also does not dispute that Dream

---

[3] Nielsen's tort claims too should be dismissed with prejudice because she concedes (Opp. 24-25) that they fail as a matter of law.  *See, e.g.*, *Oddo v. Arcoaire Air Conditioning & Heating*, 2017 WL 372975, at *20 (C.D. Cal. Jan. 24, 2017).

13

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

Key passes are licenses to enter theme parks.  Accordingly, she concedes those points.  *See, e.g.*, *Silva*, 2011 WL 7096576, at *3.  The only remaining dispute, then, is whether Dream Key passes that are concededly licenses to enter private property constitute "services" under the CLRA.  They do not.

Nielsen asks this Court to reject the reasoning in *Hall v. Sea World Entertainment, Inc.*, 2015 WL 9659911 (S.D. Cal. Dec. 23, 2015), and *Kouball v. SeaWorld Parks & Entertainment, Inc.*, 2020 WL 5408918 (S.D. Cal. Sept. 9, 2020), and instead follow *Anderson v. SeaWorld Parks and Entertainment, Inc.*, 2016 WL 8929295 (N.D. Cal. Nov. 7, 2016), and cases relying on *Anderson* in unrelated contexts.  *See* Opp. 11-12.  But, contrary to Nielsen's suggestion, *Hall* and *Kouball* properly analyzed whether *licenses* are "services" within the meaning of the CLRA, and properly concluded they are not.  *See* Mem. 22-24.

The California Court of Appeal analyzed this precise issue in *Sproul v. Oakland Raiders*, 2005 WL 1941388 (Cal. Ct. App. Aug. 15, 2005).[4]  The Oakland Raiders sold personal seat licenses ("PSL"), which "entitle[d] license holders to purchase season tickets," as well as other "'amenities and benefits,' such as 'preferred parking opportunities' and 'ticket availability for selected other events.'"  *Id*. at *1, *20.  The plaintiffs brought a putative class action for violations of the CLRA, alleging that defendants' "promotional materials" "falsely represented" that PSL holders would have "exclusive rights" to purchase season tickets.  *Id*. at *1-2.  The Court of Appeal affirmed dismissal, concluding "as a

---

[4] "Although California Rules of Court, Rule 8.1115 prohibits citations to unpublished decisions, a federal court exercising diversity jurisdiction is not bound by a state's procedural rules."  *Inland Concrete Enters., Inc. v. Kraft*, 318 F.R.D. 383, 405 (C.D. Cal. 2016) (citation omitted); *see also Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 943, n.4 (9th Cir. 1997) (noting the court was "not precluded from considering unpublished state court opinions").

14

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

matter of law" that plaintiffs' "allegations failed to state a cause of action for violation of the CLRA" because, among other reasons, PSLs were not a "service" under the statute:

> Nor is the PSL a "service[]" within the meaning of the CLRA.  The term "services" is defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  *A license to purchase tickets does not constitute work, labor, or a service.*

*Id*. at *19 (emphasis added) (internal citations omitted).

Just like the PSLs, Dream Key passes are temporary licenses to enter WDPR's parks.  *See* Mem. 22-23.  And in the same way that the PSL holders obtain access to season tickets, Dream Key passholders obtain access to "reservation-based admission" to the parks—that is, eligibility to make reservations to the theme parks.  *See* Mem. 2-3.  Finally, like the PSL holders, Dream Key passholders enjoy certain services at WDPR's theme parks when they choose to use their license.  *Sproul*, 2005 WL 1941388, at *19-20 (PSLs were not "services" within the meaning of the CLRA, and the services PSL holders enjoyed at the Raiders' stadium were "merely opportunities to engage in other transactions incidental to the PSL").  Thus, just like the PSLs, Dream Key passes are not "services" within the meaning of the CLRA.  *See id.*

In other words, *Hall* and *Kouball* are consistent with *Sproul* in that they all analyze the applicability of the CLRA in the context of a license to enter private property.  *Compare Hall*, 2015 WL 9659911, at *14 (noting that SeaWorld admission tickets are "'temporary licenses' that allowed Plaintiffs entry into the park" and then concluding that such tickets are not CLRA "services"), *with Sproul*, 2005 WL 1941388, at *1, *19 (explaining that plaintiffs bought personal seat

**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

*licenses*, and then holding that "[a] license to purchase tickets does not constitute work, labor, or a service" under the CLRA). By contrast, Nielsen's argument—and every case she cites in support, including *Anderson*—cannot be reconciled with *Sproul*, which is the best reflection of how California state courts interpret the term "services" in the CLRA. *See, e.g.*, *DCS Mktg. v. Homer Laughlin China Co.*, 2009 WL 3806356, at *6 (C.D. Cal. Nov. 10, 2009) (being "persuaded by the reasoning" in an "unpublished case from the California Court of Appeal which has addressed this issue").

In sum, licenses, including Dream Key passes, are not "services" within the meaning of the CLRA. And contrary to Nielsen's suggestion, Dream Key passes do not cease to be licenses—and thus are not converted into a "service" within the meaning of the CLRA—by virtue of the "rides, theater performances, interactions with characters, games, and food services" offered at WDPR's parks. Opp. 12. These services are "merely opportunities to engage in other transactions incidental to" the license Nielsen purchased. *Sproul*, 2005 WL 1941388, at *20.

Because Nielsen's CLRA "claim fails as a matter of law," it should be dismissed with prejudice. *Raz v. Wells Fargo Bank, N.A.*, 2014 WL 12579573, at *5 (C.D. Cal. July 22, 2014), *aff'd*, 675 F. App'x 655 (9th Cir. 2017).

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the FAC with prejudice.

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055

1

2    Dated: March 21, 2022

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

*/s/ David C. Marcus*
DAVID C. MARCUS (CA Bar No. 158704)
(Email: david.marcus@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5312
Facsimile: (213) 443-5400

ALAN SCHOENFELD (*admitted pro hac vice*)
(Email: alan.schoenfeld@wilmerhale.com)
RYAN CHABOT (*admitted pro hac vice*)
(Email: ryan.chabot@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7294
Facsimile: (212) 230-8888

MARGARITA BOTERO (*admitted pro hac vice*)
(Email: margarita.botero@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Telephone: (720) 274-3130
Facsimile: (720) 274-3133

*Attorneys for Defendant*
*Walt Disney Parks and Resorts U.S., Inc.*

17

**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
*Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055