DANIEL J. MULLER, SBN 193396
dmuller@venturahersey.com
ANTHONY F. VENTURA, SBN 191107
aventura@venturahersey.com
VENTURA HERSEY & MULLER, LLP
1506 Hamilton Avenue
San Jose, California 95125
Telephone:  (408) 512-3022
Facsimile:  (408) 512-3023

Nickolas J. Hagman (*admitted pro hac vice*)
nhagman@caffertyclobes.com
CAFFERTY CLOBES
MERIWETHER & SPRENGEL LLP
135 S. LaSalle St., Suite 3210
Chicago, Illinois 60603
Telephone:(312) 782-4880
Facsimile: (312) 782-4485

Attorneys for Plaintiff Jenale Nielsen &
the Proposed Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENALE NIELSEN, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WALT DISNEY PARKS AND RESORTS U.S., Inc., a Florida Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  8:21-cv-02055-DOC-ADS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:    July 28, 2023<br>Time:   8:30 a.m.<br>Judge:  Hon. David O. Carter<br>Court:  9D |

# Table of Contents

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................... 3

      A.    The Development Of Magic Keys .................................................. 3

      B.    Advertising And Sales Of Dream Key Passes ................................ 4

      C.    Disney's Terms and Conditions .................................................... 7

      D.    ███████████████████████████████████ ...................... 7

III.  ARGUMENT ............................................................................................ 11

      A.    Class Certification Should Be Granted ......................................... 11

      B.    Plaintiff Satisfies Rule 23(a) ....................................................... 12

            1.    The Class is Defined and Ascertainable ............................. 12

            2.    Numerosity is Clear ........................................................... 12

            3.    Common Questions Exist .................................................... 13

            4.    Typicality is Satisfied ......................................................... 14

            5.    Plaintiff and Counsel Will Adequately Protect the Class .... 15

      C.    The Requirements Of Rule 23(b)(3) Are Met ............................... 16

            1.    Common Questions of Fact or Law Predominate ............... 16

                  a.    Common Questions Predominate Regarding the Breach
                        of Contract Claim ..................................................... 16

                  b.    Common Questions Predominate Regarding the Breach
                        of the Implied Covenant Claim .................................. 18

                  c.    Common Questions Predominate Regarding the CLRA
                        Claim ........................................................................ 19

                  d.    Common Evidence Will Establish Classwide Damages ........ 20

            2.    A Class Action is Superior to Other Methods of Adjudication ....... 24

IV.   CONCLUSION ........................................................................................ 25

# Table of Authorities

## Cases

*Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*, No. 12-cv-05307, 2013 WL 11324312, *7-9 (C.D. Cal. Apr. 16, 2013) ................................................................................. 18

*Alcantar v. Hobart Serv.*, 11-cv-1600, 2012 WL 5946129, at *2 (C.D. Cal. Nov. 28, 2012) ......................................................................... 13

*Amchem Prods. v. Windsor,* 521 U.S. 591, 615 (1997) ...................................... 25

*Baghdasarian v. Amazon.com, Inc.*, 258 F.R.D. 383, 390 (C.D. Cal. 2009) ...................... 25

*Barrett v. Apple, Inc.*, 20-cv-4812 (N.D. Cal. Feb. 17, 2023) ............................... 16

*Bradach v. Pharmative, LLC*, 735 Fed. Appx. 251, 254-55 (9th Cir. 2018)........................ 20

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011)...................... 20

*Capaci v. Sports Research Corp.*, 19-cv-3440, 2022 WL 1133818, at *2 (C.D. Cal. Apr. 14, 2022) ......................................................................... 12

*Castillo v. Bank of America*, 980 F.3d 723, 730 (9th Cir. 2020)................................ 16

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010)............ 19

*Comcast v. Behrend*, 569 U.S. 27 (2013) ........................................... 20, 24

*Congdon v. Uber Technologies, Inc.*, 291 F. Supp. 3d 1012, 1020 (N.D Cal. 2018) ......... 17

*Feller v. Transamerica Life Ins. Co.*, 16-cv-01378, 2017 WL 6496803, at *7 (C.D. Cal. Dec. 11, 2017) ..................................................... 14, 17, 18, 19

*Fraser v. Wal-Mart Stores, Inc.*, 13-cv-00520, 2014 WL 7336673, at *8 (E.D. Cal. Dec. 24, 2014) ......................................................................... 25

*Guido v. L'Oreal, USA, Inc.*, 11-cv-01067, 2014 WL 6603730, at *14 (C.D. Cal. July 24, 2014).................................................................... 22, 24

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) .................. 13, 14 ,15

*In re Frontier Airlines Litig.*, 20-cv-1153, 2020 WL 9258441 (D. Colo. Dec. 16, 2020) .. 15

*In re Medical Capital Securities Litig.*, No. 10-cv-2145-DOC, 2011 WL 5067208, *3 (C.D. Cal. July 26, 2011)............................................................... 17

*In re: Lenovo Adware Litig.*, 15-cv-02624, 2016 WL 6277245, *21 (N.D. Cal. Oct. 27, 2016).................................................................... 22

*James v. Uber Tech. Inc.*, 338 F.R.D. 123, 135 (N.D. Cal. 2021) ..................................... 16

*MacRae v. HCR Manor Care Services, LLC*, 14-cv-00715, 2018 WL 8064088, at *4 (C.D. Cal. Dec. 10, 2018)............................................................. 12, 14, 15

*Maldonado v. Apple, Inc.*, 333 F.R.D. 175, 192 (N.D. Cal. 2019)................................ 21, 22

*Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937-38 (9th Cir. 1999) ............................ 19

*Menagerie Prods. v. Citysearch*, 08-cv-4263, 2009 WL 3770668, at *9
    (C.D. Cal. Nov. 9, 2009)........................................................................... 17, 19

*Mier v. CVS Pharm., Inc.*, 20-cv-1979-DOC, 2021 WL 3468951, at *2
    (C.D. Cal. Apr. 29, 2021) ....................................................................... 11, 14

*Moorer v. StemGene Medical Group, Inc.*, 830 Fed. Appx. 218, 219 (9th Cir. 2020) ....... 14

*Nguyen v. Nissan N.A., Inc.*, 932 F.3d 811, 818 (9th Cir. 2019) ...................... 20, 21, 22, 24

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651
    (9th Cir. 2022) ....................................................................................... 13

*Overgaard v. Johnson*, 68 Cal. App. 3d 821, 823 (Ct. App. 1977)................................... 21

*Petersen v. Costco Wholesale Co., Inc.*, 312 F.R.D. 565, 575 (C.D. Cal. 2016) .... 12, 14, 16

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015)....................... 22

*Rigo Amavizca v. Nutra Mfg.*, LLC, 20-cv-01324, 2021 WL 682113, at *6
    (C.D. Cal. Jan. 27, 2021) ....................................................................... 13

*Risinger v. SOC LLC*, 708 Fed. Appx 304, 306 (9th Cir. 2017) .................................... 18

*Salinas v. Cornwell Quality Tools Co.*, 19-cv-02275, 2022 WL 16735823, at *3
    (C.D. Cal. Oct. 17, 2022)........................................................................ 16

*Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) .......................................... 14

*Steroid Hormone Produce Cases*, 181 Cal. App. 4th 145, 156-58 (2010)......................... 19

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) .................... 20

*Taragan v. Nissan North America, Inc.*,
    09-cv-3660, 2013 WL 3157918, at *9 (N.D. Cal. June 20, 2013) ......................... 19

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016)............................. 16

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 93, 944 (9th Cir. 2009)..................... 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)......................................... 13

*Williams v. Apple, Inc.*, 338 F.R.D. 629, 637-639 (N.D. Cal. 2021)...................... 17, 21, 22

*Wolin v. Jaguar Land Rover N.A., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ................. 24

*Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 476 (C.D. Cal. 2012) ............................. 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Rules</u>

Fed. R. Civ. P. 23.............................................................................................. 12

Fed. R. Civ. P. 23(a)(1)...................................................................................... 12

Fed. R. Civ. P. 23(a)(2)...................................................................................... 13

Fed. R. Civ. P. 23(a)(4)...................................................................................... 15

Fed. R. Civ. P. 23(b)(3) ........................................................................... 16, 22, 24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## I.      INTRODUCTION

Defendant Walt Disney Parks and Resorts U.S., Inc. ("Disney") operates Disneyland and the California Adventure theme parks. In 2021, Disney began selling four types of annual passes, collectively called "Magic Keys." Unlike Disney's prior annual passes, which required no advance reservations to use, Magic Keys require passholders to make a reservation in advance for each park visit. The most expensive Magic Key in 2021 was the "Dream Key," which cost $1,399.00.[1] Disney promised that Dream Keys had "no blockout dates" and would provide "reservation-based admission to one or both theme parks *every day of the year*."[2]

Plaintiff Jenale Nielsen ("Plaintiff") purchased a Dream Key pass in September 2021.[3] Based on Disney's representations, Plaintiff believed that the Dream Key entitled her to access the parks every day of the year, so long as the parks were not at capacity and park reservations were available.[4] However, Plaintiff was often unable to use her pass to make reservations because the desired dates were unavailable.[5] In fact, Plaintiff was unable to make a reservation on more than half the days in November 2021, as those days showed as unavailable for Dream Key passholders.[6]

Surprised, but assuming the parks were already at capacity for the days she attempted to make reservations, Plaintiff visited Disney's general admission reservation website to confirm.[7] She discovered that plenty of daily ticket reservations were available for every day in October or November 2021.[8] While Plaintiff was

---

[1] *See* Ex., 1 to the Declaration of Nickolas J. Hagman ("Hagman Decl."), WDPR-NIELSEN-00006460. All documents referenced herein are cited in the Hagman Declaration. *See also* Ex. 2, JN00677 (the advertisement Plaintiff saw).

[2] *Id.*

[3] *See* Ex. 3, Second Amended Class Action Complaint ("SAC"), ECF 41, ¶¶ 8-15; Ex. 4, Deposition of Jenale Nielsen ("Nielsen Depo."), 33:11-13.

[4] Ex. 3, SAC, ¶¶ 9, 12; Ex. 4, Nielsen Depo., 74:2-75:16.

[5] Ex. 4, Nielsen Depo., 116:11-117:11, 123:9-124:21, 126:24-131:2.

[6] *Id.*

[7] Ex. 3, SAC, ¶ 17; Ex. 4, Nielsen Depo., 129:23-130:2.

[8] *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

unable to use her Dream Key to make a reservation, Disney would happily *sell* her, or anyone else, a general admission ticket and had plenty of reservations to offer purchasers of daily tickets (called regular tickets).[9]



_____

[9] *Id.*

[10] Ex. 5, WDPR-NIELSEN-00000394-405, p.10

[11] Ex. 6, Declaration of Robert Mills in Support of Plaintiff's Motion for Class Certification ("Mills Decl."), ¶ 32.

[12] *See id.*, ¶¶ 20, 37

*see also* Ex. 7, WDPR-NIELSEN-00013130, Cells H156-163 Hagman Decl. ¶ 7.

[13] *See* Ex. 8, WDPR-NIELSEN-00014200, p.28

Ex. 9, WDPR-NIELSEN-00011884, p.8

Ex. 10, Deposition of Stephen Williams ("Williams Depo."), 90:11-91:7

*see also* Mills Decl. ¶¶ 20, 34.

[14] *See infra* II.D, III.C.1.c; fns. 89-90; Mills Decl. ¶¶ 47-48.

Plaintiff initiated this class-action lawsuit to recover damages for herself and all other Dream Key passholders because Disney failed to provide them with the pass that it promised. In April 2022, the Court denied, in large part, Disney's motion to dismiss.[15] Pursuant to Federal Rule of Civil Procedure 23, Plaintiff now moves to certify the proposed Class of Dream Key purchasers.

## II.      FACTUAL BACKGROUND

### A.      The Development Of Magic Keys

Disney operates two theme parks in California: Disneyland and California Adventure.[16] For many years, consumers could purchase an annual pass that provided access every day of the year simply by showing up. When Disney's parks were closed due to COVID, Disney terminated the annual pass program.[17] In its place, Disney developed the Magic Keys program.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

---

[15] See Order, ECF 35.

[16] Ex. 11, Deposition of Wendy Jackson ("Jackson Depo."), 19:16-18.

[17] Ex. 11, Jackson Depo., 23:3-6, 27:16-25.

[18] Ex. 12, WDPR-NIELSEN-00013037, pp.6-14 ████████████████████████ ██████████ Ex. 11, Jackson Depo., 21:18-24, 28:1-8, 44:4-13, 64:15-65:8, 78:17-23, 86:18-24.

[19] Ex. 9, WDPR-NIELSEN-00011884, pp.6-7; Ex. 11, Jackson Depo., 62:24-63:15, 65:15-66:6.

[20] Ex. 9, WDPR-NIELSEN-0011884; Ex. 11, Jackson Depo., 62:24-63:15.



**B.    Advertising And Sales Of Dream Key Passes**

Disney created four Magic Keys: Imagine Keys, Enchant Keys, Believe Keys, and Dream Keys. Each Key provided the purchaser with varying levels of access to the parks.[26] The highest tier, the Dream Key, promised access to the parks "every day of the year" with "no blockout dates", subject only to the availability of park reservations.[27] The Believe Key provided similar access, but it was explicitly subject to limited blockout dates.[28] The Enchant and Imagine keys provided less access and were subject to more blockout dates.[29]

Disney began selling Magic Keys on August 25, 2021.[30] ███████████████

---

[21] Ex. 12, WDPR-NIELSEN-0012023; Ex. 7, WDPR-NIELSEN-0013130.
[22] Ex. 7, WDPR-NIELSEN-00013130, Line 155-163.
[23] ████████  Ex. 7, WDPR-NIELSEN-00013130.
[24] Ex. 7, WDPR-NIELSEN-0013130, Cells H162-H163. ████████████. *Id.*
[25] Ex. 6, Mills Decl. ¶¶ 20 ██████████████████████. *Id.*
[26] Ex. 1, WDPR-NIELSEN-0006460; Ex. 10, Williams Depo., 18:11-19:6.
[27] Ex. 1, WDPR-NIELSEN-0006460; Ex. 2, JN00677.
[28] *Id.*
[29] *Id.*
[30] Ex. 13, WDPR-NIELSEN-0008564; Ex. 10, Williams Depo. 17:7-14, 52:19-21.
[31] Ex. 10, Williams Depo. 51:10-52:18.

█████████████   ████████████████████████

Disney advertised the Dream Keys as follows:[34]



**Dream Key Pass**
No Blockout dates

Total
**$1,399**[00]

• Reservation-based admission to one or both theme parks every day of the year
• Theme park reservations can be made up to 90 days in advance. This pass can hold up to 6 park reservations at a time on a rolling basis during any 90-day window, subject to restrictions.
• Park reservations are subject to availability and are not guaranteed for any specific dates or park
• Up to 15% off select dining
• Up to 20% off select merchandise in store
• Standard theme park parking included*

🗓 No Blockout Dates
   Admission is not guaranteed and is subject to capacity and other closures.

███████████████████████████████████████████████

████████   Each promised that Dream Keys would have "No Blockout Dates" and that the pass would provide "reservation-based admission to one or both theme parks every day of the year."[36] Disney did not define the phrases "blockout date" or "park

---

[32] Ex. 10, Williams Depo. 52:22-53:2.
[33] Ex. 14, Disney's Responses and Objections to Plaintiff's First Set of Interrogatories, Response to Interrogatory No. 1.
[34] Ex. 2, JN00677; Ex. 10, Williams Depo. 24:25-25:15 ████████████████
████████████████████████████
[35] *E.g.*, Ex. 1, WDPR-NIELSEN-00006460. *See also* Ex. 10, Williams Depo., 24:16-25:10 ████████████████████████████████████████
[36] Ex. 10, Williams Depo. 24:25-25:15; 64:3-21.

1 reservations" in any advertisements."[37]

2     Use of the Dream Key required purchasers to make a "park reservation,"[38]

3 which could be made only through Disney's website.[39] ████████████████████

4 ███████████████████████████████████████████████████████████████

5 ███████████████████████████████████████████████████████████████

6 ███████████████████████████████████████████████████████████████

7 ███████████████████████████████████████████████████████████████

8 ███████████████████████ █████████████████████████████████

9 ███████████████████████████████████████████████████████████████

10 ███████████████████████████████████████████████████████████████

11 ██████ ██████████████████████████████████████████████████████

12 ███████████████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████████

14 ████████████

15     By failing to define "blockout dates" or "park reservations," Disney created the

16 expectation for Dream Key purchasers that their passes would provide access to

17 Disney's parks every day of the year, so long as the parks were not at capacity and

18 park reservations were available.[43] The effect of Disney's reservation practices was

19 that Disney blocked out Dream Key passholders because they could not use their

20

21 [37] Ex. 2, JN00677; Ex. 1, WDPR-NIELSEN-00006460; Ex. 10, Williams Depo. 27:10-28:18.

22 [38] Ex. 2, JN00677; Ex. 1, WDPR-NIELSEN-0006460; Ex. 10, Williams Depo., 16:20-24, 28:25-29:8.

23 [39] Ex. 10, Williams Depo., 33:11-18, 34:11-14.

24 [40] Ex. 10, Williams Depo. 35:1-36:13; 50:9-22.

25 [41] Ex. 10, Williams Depo., 40:4-41:8, 50:9-22; Ex. 6, Mills Decl., ¶¶ 26-33.

26 [42] Ex. 10, Williams Depo. 35:1-5, 39:19-40:3; *see also id.* 38:7-11 ████████
███████████████████████████████████████████████████████████████

27 ██████████████████████████████████████████

28 [43] *See, e.g.*, Ex. 4, Nielsen Depo., 74:2-75:16; Ex. 15, WDPR-NIELSEN-0007933 (████████████████████████████████████).

passes to make reservations even though reservations were otherwise available to those buying a regular admission ticket.[44]

### C.     Disney's Terms and Conditions

Disney contends that Magic Keys are subject to certain Terms and Conditions on Disney's website, [45] which provide, in pertinent part:

> To enter a Disneyland® Resort theme park, each Passholder is required to have a theme park reservation and valid admission for the same park on the same date. *Park reservations are limited and subject to availability and applicable Pass blockout dates*. . . .[46]

As with Disney's advertisements for the Dream Key, the Terms and Conditions do not define "park reservations" or "subject to availability."[47] Plaintiff and other Dream Key purchasers reasonably understood those phrases to mean that if reservations were available for individuals to enter either theme park, and a park was not at capacity, the Dream Key could be used to secure a reservation.[48] The Terms refer to "park reservations" instead of Magic Key reservations. Magic Key purchasers reasonably understood the statement to mean that Magic Key purchasers used the same park reservations as regular ticket purchasers.[49]

### D.     ███████████████████████████████████
███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[44] *See* Ex. 3, SAC ¶¶ 17-19; Ex. 4, Nielsen Depo., 129:23-130:2; Ex. 6, Mills Decl., ¶¶ 11, 27-29, 32-33.

[45] *See* ECF 27-1, pp.2-3. ████████████████████████████████████
████████████████ Ex. 10, Williams Depo. 50:25-51:8.

[46] Ex. 16, Terms and Conditions, ECF 27-3.

[47] *See generally, id.*; Ex. 10, Williams Depo. 37:10-16; 45:2-9.

[48] Ex. 3, SAC, ¶¶ 9, 12; Ex. 4, Nielsen Depo., 74:2-75:16.

[49] *Id.*





[57] *Id.*
[58] Ex. 18, WDPR-NIELSEN-00001031-32.
[59] Ex. 5, WDPR-NIELSEN-00000394-405, p. 2
[60] Ex., 6, Mills Decl., ¶ 33.
[61] Ex. 5, WDPR-NIELSEN-00000394-405, p. 2
[62] Ex., 6, Mills Decl., ¶¶ 36, 41; Ex. 17, WDPR-NIELSEN-DATA-00002; Hagman Decl. ¶ 10.



---

[63] *See* Ex. 7, WDPR-NIELSEN-00013130; Ex., 6, Mills Decl., ¶¶ 20, 37.

[64] *See* Ex., 6, Mills Decl., ¶ 41; Ex. 19, WDPR-NIELSEN-00015315 ████████

████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 6, Mills Decl., ¶¶ 40-41; Ex. 17, WDPR-NIELSEN-DATA-000002; Hagman Decl. ¶ 10.

[65] Ex. 3, SAC ¶¶ 17-19; Ex. 20, Nielsen's Response to Interrogatory No. 1; Ex., 6, Mills Decl., ¶¶ 32-33 ████████████████████

Ex. 10, Williams Depo. 20:2-5 ████████████████████

[66] ████████████████████████████████████████

[67] Ex. 18, WDPR-NIELSEN-00001031-32.

[68] Ex. 10, Williams Depo. 70:24-71:11-22, 85:5-17 ████████████

████████████████████████████████████████



The end result is that Disney failed to honor its promises to Dream Key purchasers, who are therefore entitled to recover the difference in value between what Disney promised and what they actually received.

## III.      ARGUMENT

### A.      Class Certification Should Be Granted

To certify a class under Rule 23, Plaintiff must show that the proposed Class meets the requirements of Rule 23(a), and at least one of the three criteria under Rule 23(b). *See* Fed. R. Civ. P. 23. Rule 23(a) imposes four prerequisites: numerosity, commonality, typicality, and adequacy. Under Rule 23(b)(3), a class may be certified if the common questions predominate over individual issues, and a class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3).

The Court has broad discretion to grant class certification. *Mier v. CVS Pharm., Inc.*, 20-cv-1979-DOC, 2021 WL 3468951, at *2 (C.D. Cal. Apr. 29, 2021). On a

---

[69] Ex. 10, Williams Depo. 72:3-10 ████████████████████████████
████████████████████████████████████████████████████████████

[70] Ex. 9, WDPR-NIELSEN-000011884, pp.6-7; Ex. 11, Jackson Depo., 62:24-63:15, 65:15-66:6.

[71] Ex. 18, WDPR-NIELSEN-00001031-32.

[72] Ex. 21, WDPR-NIELSEN-00002072-74, p.1.

class certification motion, the Court examines the merits of the underlying claim "only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Capaci v. Sports Research Corp*., 19-cv-3440, 2022 WL 1133818, at *2 (C.D. Cal. Apr. 14, 2022) (citations omitted)).

### B.    Plaintiff Satisfies Rule 23(a)

#### 1.    The Class is Defined and Ascertainable

As a threshold matter, Plaintiff meets Rule 23(a)'s implied requirement that the Class be identifiable and ascertainable. Plaintiff seeks to certify the following Class:[73]

**All persons who purchased a Dream Key pass from Disney.**

The Class definition is sufficiently clear and definite and the Class members are identifiable by an objective criterion: whether a person purchased a Dream Key. ███████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████ Therefore, the Class is sufficiently defined and ascertainable. *See Petersen v. Costco Wholesale Co., Inc.*, 312 F.R.D. 565, 575 (C.D. Cal. 2016) (Carter, J.) (ascertainability satisfied because class members were identifiable through defendant's records).

#### 2.    Numerosity is Clear

Numerosity is satisfied where, as here, "joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts frequently hold that numerosity is met when a class includes at least 40 members. *MacRae v. HCR Manor Care Services, LLC*, 14-cv-00715, 2018 WL 8064088, at *4 (C.D. Cal. Dec. 10, 2018) (Carter J.).

---

[73] Excluded from the proposed Class are (1) Disney, or any entity or division in which Disney has a controlling interest, and its legal representatives, offices, directors, assigns, and successors; (2) the judge to whom this case is assigned and the Judge's immediate family and staff; and (3) governmental entities.
[74] Ex. 10, Williams Depo., 51:10-52:1, 61:10-62:15.

██████████████████████  █  █████████████████████

████████████████████████████████████

### 3.  Common Questions Exist

The commonality requirement demands that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is "construed liberally"; the existence of one or more common factual and legal issues is sufficient. *Alcantar v. Hobart Serv.*, 11-cv-1600, 2012 WL 5946129, at *2 (C.D. Cal. Nov. 28, 2012), *aff'd*, 800 F.3d 1047 (9th Cir. 2015). Commonality is satisfied when the plaintiff's claims and those of the class "depend upon a common contention" that is capable of class-wide resolution, meaning that the "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651 (9th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)) ("The plaintiff must demonstrate 'the capacity for classwide proceedings to generate common answers to common questions of law or fact that are 'apt to drive the resolution of the litigation.'"). "[T]he requirements for finding commonality are minimal." *Rigo Amavizca v. Nutra Mfg.*, LLC, 20-cv-01324, 2021 WL 682113, at *6 (C.D. Cal. Jan. 27, 2021) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

Here, several core, common issues exist, including: (1) the meaning of "subject to availability", "no blockout dates," and/or "park reservations"; (2) whether Disney promised Dream Key purchasers that they would be able to make reservations if park reservations were available; (3) whether Disney prevented Dream Key passholders from making reservations when park reservations were available; (4) whether Disney interfered with Dream Key purchasers' ability to receive the benefit of the contracts; and (5) whether Dream Key passes are "goods or services" under the CLRA.

---

[75] *See* Ex. 14, Disney's Response to Interrogatory No. 1.

1    Resolution of one or all of these common questions will affect all Class members.

2        Courts frequently find that such common issues satisfy the commonality

3    requirement. *See, e.g., Feller v. Transamerica Life Ins. Co*., 16-cv-01378, 2017 WL

4    6496803, at *7 (C.D. Cal. Dec. 11, 2017) (commonality satisfied for plaintiffs' breach

5    of contract and implied covenant claims); *MacRae* 2018 WL 8064088, at *5

6    (commonality satisfied for CLRA claims because "class members were exposed to

7    the same agreement and therefore allegedly experienced the same misrepresentation

8    and concealment . . ."); *Petersen*, 312 F.R.D. at 576-77 (commonality met because

9    "Plaintiffs allege that a single product sold only at Costco was defective there is a

10   common core of salient facts."). The issues concerning Disney's uniform product,

11   representations, and conduct easily satisfy the commonality requirement.

12                    **4.      Typicality is Satisfied**

13       Plaintiff's claims must be typical of the claims of the class. "Under the rule's

14   permissive standards, representative claims are 'typical' if they are reasonably

15   coextensive with those of absent class members; they need not be substantially

16   identical." *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon*,

17   150 F.3d at 1020); *Moorer v. StemGene Medical Group, Inc*., 830 Fed. Appx. 218,

18   219 (9th Cir. 2020) (typicality is met when "[t]he named plaintiffs' claims arise from

19   the same injury, based on the same legal theory, as the claims of the rest of the class.").

20       Typicality is easily met here because Plaintiff and the proposed class members

21   were injured in the same way. ████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ██████████ Plaintiff and Class members suffered damages when they purchased Dream

24   Key Passes that were falsely advertised as providing access every day of the year and

25   without "blockout dates," but which provided the passholder with substantially less

26   access. *See Mier*, 2021 WL 3468951, at *5 (typicality satisfied because plaintiff and

27

28   ───────────────
     [76] *See supra* nn. 36, 46.

the class were under the same belief that the statement on the label was true and were damaged because it was not true); *MacRae,* 2018 WL 8064088, at *6 (typicality satisfied because Plaintiff and class members all "received the admission statement on which the CLRA claim is based."). Accordingly, the typicality requirement is met.

**5.      Plaintiff and Counsel Will Adequately Protect the Class**

Rule 23(a)(4) requires representative parties to fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Two questions determine adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiff easily satisfies this standard. There are no conflicts or antagonism between Plaintiff and the Class and Plaintiff asserts claims on behalf of all Class members.[77] Plaintiff has taken an active role in the litigation and has vigorously prosecuted this action on behalf of the Class, including by reviewing and approving pleadings, staying apprised of the status of the case, testifying at her deposition, and responding to written discovery requests.[78]

Plaintiff has retained experienced and well-qualified counsel with an extensive history of leading and litigating consumer class actions.[79] Plaintiff's counsel has and will continue to vigorously represent the interests of the Class. Thus, Plaintiff and her counsel satisfy the adequacy requirement.[80] *See, e.g.*, *In re Frontier Airlines Litig.,*

---

[77] *See supra* III.B.3., III.B.4.

[78] *See generally* Ex. 4, Nielsen Depo.

[79] *See* Exs. 22, 23 (Plaintiff's Counsels' firm resumes).

[80] In appointing class counsel, the Court considers "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class," as well as "any other matter pertinent to counsel's ability to fairly and adequately represent the class." Fed. R. Civ. P. 23(g)(1)(A)–(B).

20-cv-1153, 2020 WL 9258441 (D. Colo. Dec. 16, 2020) (appointing Plaintiff's counsel as co-lead counsel); *Barrett v. Apple, Inc.*, 20-cv-4812 (N.D. Cal. Feb. 17, 2023) (appointing Plaintiff's counsel interim co-lead counsel).

## C.   The Requirements Of Rule 23(b)(3) Are Met

In addition to satisfying Rule 23(a), Plaintiff must also satisfy Rule 23(b). *Peterson*, 312 F.R.D. at 578. Here, Plaintiff seeks certification under Rule 23(b)(3).

### 1.   Common Questions of Fact or Law Predominate

Rule 23(b)(3) provides that a class action may be certified where common questions of law and fact predominate over questions affecting individual class members. *Peterson*, 312 F.R.D. at 578-79; *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (predominance "is an assessment of whether proposed classes are sufficiently cohesive to warrant adjudication by representation").

Rule 23(b)(3) "'does not require a plaintiff seeking class certification to prove that each element of their claim is susceptible to class-wide proof,' so long as one or more common questions predominate." *James v. Uber Tech. Inc.*, 338 F.R.D. 123, 135 (N.D. Cal. 2021) (citing *Castillo v. Bank of America*, 980 F.3d 723, 730 (9th Cir. 2020)). "Common issues predominate over individual issues when the common issues 'represent a significant aspect of the case that can be resolved for all members of the class in a single adjudication.'" *Salinas v. Cornwell Quality Tools Co*., 19-cv-02275, 2022 WL 16735823, at *3 (C.D. Cal. Oct. 17, 2022) (internal quotation omitted). The "central concern of the Rule 23(b)(3) predominance requirement is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 93, 944 (9th Cir. 2009) (quotation omitted).

#### a.   Common Questions Predominate Regarding the Breach of Contract Claim

Plaintiff's breach of contract claims are replete with common issues that predominate. Plaintiff alleges that Disney breached the express terms of the contract for the purchase of her Dream Key.  Under California law, a breach of contract claim

requires proof of: 1) a contract; 2) defendant's breach; and 3) damages resulting from the breach. *Congdon v. Uber Technologies, Inc.*, 291 F. Supp. 3d 1012, 1020 (N.D Cal. 2018) (citation omitted). To determine whether a breach occurred, the court must interpret contractual provisions in the form contract that was provided to all Dream Key passholders. Claims involving form contracts are particularly suitable for class resolution. *See Feller*, 2017 WL 6496803, *11. (collecting cases); *In re Medical Capital Securities Litig.*, No. 10-cv-2145-DOC, 2011 WL 5067208, *3 (C.D. Cal. July 26, 2011) (Carter, J.) ("Courts routinely certify class actions involving breaches of form contracts.") (collecting cases); *Menagerie Prods. v. Citysearch*, 08-cv-4263, 2009 WL 3770668, at *9 (C.D. Cal. Nov. 9, 2009) ("when viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.").

The Court previously determined that key provisions in the form contract, such as the phrases "subject to availability" and "no blockout dates," are ambiguous.[81] The interpretation of ambiguous terms in form contracts is premised on objective criteria, which are all common issues that will drive the resolution of the breach of contract claim. *See Menagerie Prods.,* 2009 WL 3770668, at *10 (if the language in form contract was ambiguous, common issues predominate because the meaning would be established on a classwide basis); *Williams v. Apple, Inc.*, 338 F.R.D. 629, 637-639 (N.D. Cal. 2021) (Koh, J.) (the interpretation of an ambiguous provision in a standard form contract satisfies predominance); *Risinger v. SOC LLC*, 708 Fed. Appx 304, 306 (9th Cir. 2017) ("Because the evidence needed to resolve the ambiguity is common to the class, individual issues will not predominate.").

Whether Disney breached its agreements with class members is likewise subject to class-wide resolution. Plaintiff alleges Disney promised Dream Key

---

[81] Order, ECF 35, pp.6, 8.

purchasers that their passes could be used to make a reservation 365 days a year, so long as park reservations were available.[82] Disney failed to deliver what it promised. Instead of providing access to Dream Key purchasers every day of the year, ███

████████████████████████████████████████████████

████████████████████████████████ Whether Disney's conduct breached that promise is a common issue that will help decide this litigation. *See Feller*, 2017 WL 6496803, at *13 (common questions predominate for breach of contract and implied covenant claims because each was premised on the defendant's "uniform [contract] language and uniform conduct.").

### b. Common Questions Predominate Regarding the Breach of the Implied Covenant Claim

Similarly, common issues concerning whether Disney breached the implied covenant of good faith and fair dealing also predominate. Under California law, "whether Defendant breached the implied covenant of good faith and fair dealing is [] determined by an objective standard." *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 476 (C.D. Cal. 2012) (common issues predominated because "[t]he essence of the good faith covenant is objectively reasonable conduct") (quotation omitted).

Here, Plaintiff alleges that Disney breached the implied covenant of good faith by limiting the number of reservations available to Dream Key purchasers.[84] Instead of permitting passholders to receive the benefit of the contract (making a reservation every day of the year so long as park reservations were available), Disney significantly limited the reservations for Dream Key passholders, depriving Class members of the benefits of the pass. *See Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*, No. 12-cv-05307, 2013 WL 11324312, *7-9 (C.D. Cal. Apr. 16, 2013) (implied covenant claim sufficiently pled alleging defendant exercised discretion in manner

---

[82] Ex. 3, SAC, ¶¶ 9, 12.
[83] *See supra* II.D.
[84] Ex. 3, SAC, ¶¶ 58-62.

1   that deprived plaintiff of the benefit of the contract); *Marsu, B.V. v. Walt Disney Co.*,

2   185 F.3d 932, 937-38 (9th Cir. 1999) ("[T]he covenant is implied . . . to prevent a

3   contracting party from engaging in conduct which (while not technically transgressing

4   the express covenant) frustrates the other party's rights of the benefits of the

5   contract.") (quotation omitted). Whether Disney was vested with discretion, whether

6   Disney abused that discretion, and whether Disney interfered with Dream Key

7   purchasers' ability to obtain the benefit of the Dream Keys are common issues that

8   will predominate regarding the breach of implied covenant claim. *See Feller*, 2017

9   WL 6496803, *11-12 ("the duty of good faith and fair dealing is assessed under an

10  objective standard under California law, making this claim suitable for class

11  treatment"); *Menagerie Prods.*, 2009 WL 3770668, *11 (same).

### c.  Common Questions Predominate Regarding the CLRA Claim

14      The CLRA requires proof that (1) defendant engaged in a practice that is unfair

15  and/or unlawful; (2) plaintiff was exposed to the practice; and (3) plaintiff suffered

16  monetary loss or damages as a result. *Taragan v. Nissan North America, Inc.*, 09-cv-

17  3660, 2013 WL 3157918, at *9 (N.D. Cal. June 20, 2013) (citation omitted).

18      CLRA claims "do not require individualized showing of reliance" as "reliance

19  on the alleged misrepresentations may be inferred as to the entire class if the named

20  plaintiff can show that material misrepresentations were made to the class members."

21  *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010)

22  (citing *Steroid Hormone Produce Cases*, 181 Cal. App. 4th 145, 156-58 (2010))

23  ("materiality of an alleged misrepresentation in a CLRA claim is determined by a

24  reasonableness standard" and not upon each class member's subjective belief).

25      Here, Plaintiff and Class members reasonably relied on the same material

26  misrepresentations in Disney's advertisements concerning the Dream Keys and

suffered resulting damages.[85] Whether Disney's representations were likely to mislead a reasonable person, and whether the misrepresentations were material to Dream Key purchasers, are the types of issues that are readily susceptible to class-wide determination and treatment. *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011) (materiality and likelihood of deception are issues that require common proof and thereby satisfy the predominance requirement). As such, "CLRA [] claims are 'ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.'" *Bradach v. Pharmative, LLC*, 735 Fed. Appx. 251, 254-55 (9th Cir. 2018) (citing *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (Carter, J.)).

### d.  Common Evidence Will Establish Classwide Damages

To satisfy *Comcast v. Behrend*, 569 U.S. 27 (2013), Plaintiff's damage model must translate her "legal theory of the harmful event into an analysis of the economic impact of the event." *Id.* at 29. Plaintiff must show that class wide damages resulted from the Defendant's actions that created the legal liability. Plaintiff must "present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty." *Chavez,* 268 F.R.D. at 379 (citations omitted). Here, Plaintiff satisfies that standard by providing a model that establishes a common method of proving the recoverable damages caused by Disney's wrongful conduct.

The economic impact to Class members of Disney's decision to sell passes that promised something different than what was delivered is straightforward. Class members are entitled to the benefit of their bargain with Disney. *See Nguyen v. Nissan N.A., Inc.*, 932 F.3d 811, 818 (9th Cir. 2019) (confirming that "benefit-of-the-bargain" damages model appropriate for class wide damages model where consumers were promised one thing but received something different). Dream Key purchasers

---

[85] *See* Ex. 4, Nielsen Depo., 72:6-75:25; Ex. 6, Mills Decl., ¶¶ 47-48 █████████
██████████

bargained and paid for a pass that would provide access to the theme parks whenever park reservations were available. They did not receive such a pass. Instead, they received a pass that limited them to a subset of available park reservations.

Plaintiff's damages model establishes the amount that each class member overpaid for their Dream Keys. *See Nguyen,* 932 F.3d at 818 (reversing denial of certification because the CLRA permits benefit-of-the-bargain damages, and "[c]lass wide damages calculations under the . . . CLRA are particularly forgiving") (alterations in original); *Williams*, 338 F.R.D. at 651-52 ("California case law holds that a proper measure of contract damages is 'the *difference between the actual value* of what plaintiff has received and that which he expected to receive.'") (quoting *Overgaard v. Johnson*, 68 Cal. App. 3d 821, 823, (Ct. App. 1977)) (emphasis in original).

In *Maldonado v. Apple, Inc.*, the court certified a class that relied on a similar damages model. *Maldonado v. Apple, Inc*., 333 F.R.D. 175, 192 (N.D. Cal. 2019). There, the plaintiffs alleged that Apple promised replacement iPhones that were new or like new but actually furnished them with phones that were less than promised. *Id.* at 180-82. Predominance was met because the benefit-of-the bargain model "appropriately measures the difference between the value of what plaintiffs were promised—equivalent-to-new devices, as measured by the retail price of new devices—and what they received—remanufactured devices, as measured by their retail value. Apple struck this bargain and was obligated to deliver on its promise." *Id.*

Likewise, in this case, Class members are entitled to the difference between the value that they were promised (access if park reservations were available for

$1,399.00)[86] and what they received (far more limited access to the parks),[87] as measured by the difference in retail value of the two products. As was the case in *Maldonado*, the difference between value of the Dream Keys that Plaintiff and Class members received compared to what they paid and were led to believe they were buying (*i.e.*, the amount that each Class member overpaid for the Dream Key) is capable of being resolved for the entire Class using common proof and a common damage analysis. *See Nguyen*, 932 F.3d at 818, 820-22 (a damage theory seeking to recover "the amount [purchasers] purportedly overpaid" for the product satisfies Rule 23(b)(3)); *In re: Lenovo Adware Litig.*, 15-cv-02624, 2016 WL 6277245, *21 (N.D. Cal. Oct. 27, 2016) (holding that an overpayment damage model satisfies predominance) (citing *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015)).

Disney's own records provide a basis for damage calculations in this case because Disney priced the difference between a nearly unlimited pass (Dream Key) and a more limited pass (Believe Key). ████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████ *See Williams*, 338 F.R.D. at 652 (a "conjoint analysis is a well-accepted economic methodology"); *Guido v. L'Oreal, USA, Inc.*, 11-cv-01067, 2014 WL 6603730, at *14 (C.D. Cal. July 24, 2014) (certifying CLRA claim and holding that plaintiffs' conjoint analysis satisfied predominance and "established a Class wide method of calculating relief.").

---

[86] ██████████████████████████████████████████████████████ ████████████ *See* Ex. 6, Mills Decl. ¶¶ 20, 37; Ex. 7, WDPR-NIELSEN-00013130, Cells H156-163 ████████████ Hagman Decl. ¶ 7.

[87] ██████████████████████████████████████████████████ Ex., 6, Mills Decl. ¶¶ 36, 41; WDPR-NIELSEN-DATA-000002; Hagman Decl. ¶ 10.

[88] Ex. 11, Jackson Depo., 36:6-25; 64:13-65:8; 92:10-20, 102:2-8, 103:10-23.



1

2

3

4

5

6  At trial, Plaintiff will establish

7  that Dream Key purchasers received something akin to a Believe Key, rather than the

8  product they were promised.

9

10

11

12

13

14

15

16

17

18

19

20  [89] Ex., 6, Mills Decl. ¶ 46; Ex. 12, WDPR-NIELSEN-00012023; Hagman Dec. ¶ 8.

21  [90] Ex., 6, Mills Decl. ¶¶ 47-48.

22

23

24

25

26  *Id.* at ¶ 47.
    [91] Ex. 17, WDPR-NIELSEN-DATA-000002; Hagman Decl. ¶ 10.

27  [92] Ex., 6, Mills Decl. ¶ 41

28  Ex. 17, WDPR-NIELSEN-

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ██████████████████████████████████ █████████████

4 ████████████████████████████████████████

5       Because Plaintiff's damage model is based on the diminution in value at the

6 time of sale caused by Disney's failure to deliver the product that it promised to

7 Plaintiff and Class members, Plaintiff's damage model translates Plaintiff's "legal

8 theory of the harmful events into an analysis of the economic impact of the event,"

9 which is all that is required for class certification. *See Nguyen*, 932 F.3d at 818

10 (quoting *Comcast*, 569 U.S. at 29); *Guido* 2014 WL 6603730, at *14.

11       **2.       A Class Action is Superior to Other Methods of Adjudication**

12       Rule 23(b)(3) also requires a showing that a "class action is superior to other

13 available methods for the fair and efficient adjudication of the controversy." Fed. R.

14 Civ. P. 23(b)(3). Courts consider four factors: (1) the interest of class members in

15 individually controlling prosecution of separate actions; (2) the extent and nature of

16 any litigation concerning the controversy already commenced by class members; (3)

17 the desirability of concentrating the litigation of the claims in the particular forum;

18 and (4) any of the difficulties likely in the management of a class action. Fed. R. Civ.

19 P. 23(b)(3)(A)-(D). "Where recovery on an individual basis would be dwarfed by the

20 cost of litigating on an individual basis, this factor weighs in favor of class

21 certification." *Wolin v. Jaguar Land Rover N.A., LLC*, 617 F.3d 1168, 1175 (9th Cir.

22 2010).

23       This case easily satisfies the superiority requirement. The modest damages

24 suffered by each Class member are minuscule compared to the extreme burdens and

25 expense that would result from individual prosecutions of the legal claims being

26 litigated. Consequently, prosecution of an individual suit, which would necessarily

27 _____

DATA-0000002; Hagman Dec. ¶ 10.

28 [93] *See supra* II.D; Ex., 6, Mills Decl. ¶ 41, 47.

entail extensive discovery, expert work, and expenses, would constitute a negative value suit. Class action treatment is uniquely suited for exactly this type of litigation where the costs of litigation of an individual claim far outweigh any possible individual Class member recovery. *See Amchem Prods. v. Windsor,* 521 U.S. 591, 615 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Further, it is desirable to concentrate the litigation in California because a substantial portion of the Class resides in California, Defendant does business in this District, and Plaintiff's claims arise under California law. *Baghdasarian v. Amazon.com, Inc*., 258 F.R.D. 383, 390 (C.D. Cal. 2009). Further, a significant part of this litigation involves the interpretation of an ambiguous contract provision. Resolving that issue in a single action on behalf of all Class members will avoid the potential for inconsistent outcomes.

Lastly, with respect to manageability, Plaintiff has shown that the class claims satisfy Rule 23's commonality and predominance requirements, and demonstrated that all Class members have uniformly suffered injury as a result of Disney's misconduct.[94] *See Fraser v. Wal-Mart Stores*, *Inc*., 13-cv-00520, 2014 WL 7336673, at *8 (E.D. Cal. Dec. 24, 2014) ("there is a presumption against dismissing a class action on manageability grounds"). Accordingly, superiority is satisfied.

## IV.        CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the proposed Class under Rule 23(b)(3) appoint Plaintiff as Class representative, and appoint Plaintiff's Counsel as Class Counsel pursuant to Rule 23(g).

/ /

/ /

---

[94] *See supra* III.C.1.c.

1    Dated:  April 24, 2023                    Respectfully submitted,

2                                              **VENTURA  HERSEY  &  MULLER,**
                                               **LLP**
3

4                                              /s/ *Daniel J. Muller*
                                               Daniel J. Muller, SBN 193396
5                                              Anthony F. Ventura, SBN 191107
                                               1506 Hamilton Avenue
6                                              San Jose, California 95125
                                               Telephone: (408) 512-3022
7                                              Facsimile: (408) 512-3023
8

9                                              Nickolas J. Hagman (*admitted pro
                                               hac vice*)
10                                             nhagman@caffertyclobes.com
                                               CAFFERTY CLOBES
11                                             MERIWETHER & SPRENGEL LLP
                                               135 S. LaSalle St., Suite 3210
12                                             Chicago, Illinois 60603
                                               Telephone: (312) 782-4880
13                                             Facsimile: (312) 782-4485
14
                                               *Attorneys for Plaintiff Jenale Nielsen &*
15                                             *the proposed Class*
16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**