Daniel J. Muller, SBN 193396
dmuller@venturahersey.com
Anthony F. Ventura, SBN 191107
aventura@venturahersey.com
VENTURA HERSEY & MULLER, LLP
1506 Hamilton Avenue
San Jose, California 95125
Telephone: (408) 512-3022
Facsimile: (408) 512-3023

Nickolas J. Hagman (admitted *pro hac vice*)
nhagman@caffertyclobes.com
CAFFERTY CLOBES
MERIWETHER & SPRENGEL LLP
135 S. LaSalle St., Suite 3210
Chicago, Illinois 60603
Telephone:(312) 782-4880
Facsimile: (312) 782-4485

*Attorneys for Plaintiff and the*
*Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENALE NIELSEN, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WALT DISNEY PARKS AND RESORTS U.S., Inc., a Florida Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 8:21-cv-02055-DOC-ADS<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date:  October 16, 2023<br>Time: 8:30 A.M.<br>Judge: Hon. David O. Carter<br>Courtroom: 9D |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
CASE NO.: 8:21-CV-02055-DOC-ADS

# Table of Contents

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................... 1

III. THE SETTLEMENT TERMS ......................................................................... 3

    A. Proposed Settlement Class ....................................................................... 3

    B. Settlement Benefits – Monetary Relief .................................................. 4

    C. Class Notice and Settlement Administration ......................................... 5

    D. Attorneys' Fees and Expenses ................................................................. 6

    E. Service Awards to Named Plaintiff ........................................................ 6

IV. LEGAL ARGUMENT ...................................................................................... 7

    A. The Settlement Satisfies Rule 23(a). ...................................................... 8

        1. The Settlement Class is Sufficiently Numerous. ............................... 8

        2. The Settlement Class Satisfies the Commonality Requirement. ...................................................................................... 8

        3. Plaintiff's Claims and Defenses are Typical. ................................. 10

        4. Plaintiff is an Adequate Settlement Class Representative. ............ 10

    B. The Requirements of Rule 23(b)(3) are Met for Purposes of Settlement. ............................................................................................... 11

    C. The Court Should Preliminarily Approve the Settlement. ..................... 13

        1. The Strength of Plaintiff's Case .................................................... 14

        2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation .......................................................................... 16

        3. The Risk of Maintaining Class Action Status Through Trial ...... 17

        4. The Amount Offered in Settlement ................................................ 18

        5. The Extent of Discovery Completed and the Stage of Proceedings .................................................................................. 20

        6. The Experience and Views of Counsel .......................................... 21

        7. Governmental Participants. ........................................................... 21

        8. The Reaction of the Settlement Class to the Settlement ............... 21

9.      Lack of Collusion Among the Parties ................................................ 21

10.     The Settlement Treats Settlement Class Members
        Equitably ......................................................................................... 22

D.      The Court Should Approve the Proposed Notice Program ..................... 23

E.      Appointment of the Settlement Administrator ....................................... 25

F.      Appointment of Settlement Class Counsel .............................................. 25

V.      CONCLUSION ......................................................................................... 25

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

**CASE NO.: 8:21-CV-02055-DOC-ADS**

# Table of Authorities

## Cases

*Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*, No. 12-cv-05307,
2013 WL 11324312 (C.D. Cal. Apr. 16, 2013) ....................................... 15

*Aikens v. Malcom Cisneros*, 2019 WL 3491928 (C.D. Cal. July 31, 2019) ................... 9, 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................... 7, 8, 13

*Bravo v. Gale Triangle, Inc.*, 2017 WL 708766 (C.D. Cal. Feb. 16, 2017) ................. 18, 19

*Campos v. Converse, Inc.*, 2022 WL 4099756 (C.D. Cal. Aug. 15, 2022) ...................... 23

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ....................... 7

*Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB),
2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ....................................... 16

*Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS,
2011 WL 7061923 (S.D. Cal. Nov. 9, 2011) ....................................... 22

*Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc)
2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ...................................... 16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................... 24

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................. 8, 10, 18

*Feller v. Transamerica Life Ins. Co.*,
2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ..................................... 9, 12

*Flinn v. FMC Corp.*, 528 F.2d 1169, (4th Cir. 1975) .............................. 18

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) ......................... 14

*G.F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ,
2015 WL 4606078 (N.D. Cal. July 30, 2015) ...................................... 22

*Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK (MAN),
2014 WL 1274376 (C.D. Cal. Sept. 24, 2014) ..................................... 17

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ............... 9, 10, 11, 13, 14

*Hudson v. Libre Technology Inc.,* No. 3:18-cv-1371-GPC-KSC,
2020 WL 2467060, (S.D. Cal. May 13, 2020) ..................................... 23

*Hughes v. Microsoft Corp.*, 2001 WL 34089697, (W.D. Wash. Mar. 26, 2001) ............... 21

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .................................................. 14, 21

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.*,
    55 F.3d 768 (3d Cir. 1995) ...................................................................... 17

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ......................... 11, 24

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ......................................... 6

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ................................................ 21

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................ 23

*In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) ......... 22

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ............................................... 10, 13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) ........................ 16, 19

*MacRae v. HCR Manor Care Services, LLC*, 14-cv-00715,
    2018 WL 8064088, at *4 (C.D. Cal. Dec. 10, 2018) .......................................... 8, 9, 10

*Menagerie Prods.v. Citysearch*, 2009 WL 3770668, (C. D. Cal. Nov. 9, 2009) ............... 12

*Meyer v Portfolio Recovery Associates*, 707 F.3d 943 (9th Cir. 2012) ............................ 10

*Mier v. CVS Pharm., Inc.*, 2021 WL 3468951 (C.D. Cal. Apr. 29, 2021) ........................ 10

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 17, 20, 21

*Norton v. Maximus, Inc.*, 2017 WL 1424636 (D. Idaho Apr. 17, 2017) ........................... 21

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
    688 F.2d 615, 628 (9th Cir. 1982) .................................................................... 18, 19

*Pauley v. CF Ent.*, 2020 WL 5809953 (C.D. Cal. July 23, 2020) ...................................... 6

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .................................................... 24

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ............................................................. 6

*Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX,
    2020 WL 466638 (C.D. Cal. Jan. 27, 2020) ........................................................ 13

*Rigo Amavizca v. Nutra Mfg., LLC*, 2021 WL 682113,
    (C.D. Cal. Jan. 27, 2021) .................................................................................. 9

*Smith v. Am. Greetings Corp.*, 2016 WL 362395,
    (N.D. Cal. Jan. 29, 2016) ................................................................................ 23

*Staton v. Boeing Co.*, 327 F.3d 938
    (9th Cir. 2003) ............................................................................................... 14

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) .................................................. 12

*Vandervort v. Balboa Capital Corp.*, 2013 WL 12123234
   (C.D. Cal. Nov. 20, 2013) ........................................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................ 8

*Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008) ............................................... 15

*Yahoo Mail Litig.*, 2016 WL 4474612(N.D. Cal. Aug. 25, 2016) ......................................... 6

## Statutes

Federal Rule of Civil Procedure 23 ....................................................................... passim

Californa Civ. Code § 1770 ................................................................................... 15

## Other Authorities

Newberg on Class Actions (4th ed. 2002) ........................................ 7, 17, 20, 21,

Manual for Complex Litigation (Fourth) ................................................... 7, 8, 22

Moore's Federal Practice (Third) .......................................................................... 20

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**
**CASE NO.: 8:21-CV-02055-DOC-ADS**

## I.    INTRODUCTION

Plaintiff Jenale Nielsen ("Plaintiff") moves this Court to preliminarily approve a class action settlement with Defendant Walt Disney Parks and Resorts U.S., Inc. ("WDPR" or "Disney") that confers substantial relief to all Settlement Class Members. The Settlement is fair, reasonable, and adequate, and secures substantial benefits to the Class, without the delay and risks associated with trial and potential appeals.

Under the Settlement, all Settlement Class Members who do not submit valid and timely Requests for Exclusion will automatically receive an equal payment from the $9,500,000.00 Settlement Fund, approximately $67.41, without having to fill out a claim form. Further, after the initial distribution of payments, if the amount remaining in the Settlement Fund (after any unredeemed checks expire, and after the amounts for notice, administration, Class Counsel's fees, and a service award for the Class Representative) is greater than $10.00 per Settlement Class Member, each Settlement Class Member will receive a second *pro rata* payment. This excellent result was reached with the assistance of a highly qualified mediator and guarantees relief for all 103,435 Settlement Class Members. (Declaration of Nickolas J. Hagman ("Hagman Decl.") ¶ 14). Plaintiff requests that the Court preliminarily approve the Parties' proposed settlement so notice may be provided to the proposed Settlement Class.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated this class-action lawsuit to recover damages on behalf of herself and all other purchasers of Disney's "Dream Key" pass. *See* Hagman Decl., ¶¶ 3-4. In 2021, Disney introduced a new annual pass program and began selling four tiers of annual passes, collectively called "Magic Keys," that could be used for entry into Disney's California theme parks. *Id.* at ¶¶ 4-5. Unlike Disney's prior annual pass program, which did not require advance reservations to use, each Magic Key pass

required pass holders to make an advance reservation to visit the parks. *Id.* Customers who purchased Magic Key passes were entitled to make reservations to enter the Disneyland and California Adventures theme parks without having to purchase tickets for a period of one year from when their Magic Key passes were first used. *Id.* The highest tier Magic Key pass sold in 2021 and was called the "Dream Key." Each Dream Key cost $1,399.00. Hagman Decl. ¶ 5. In her operative complaint, Plaintiff alleges that Disney promised that Dream Keys would provide "reservation-based admission to one or both theme parks every day of the year," with "no blockout dates." Hagman Decl. ¶¶ 5-6.

Plaintiff purchased a Dream Key pass, believing that her Dream Key pass entitled her to access the parks every day of the year so long as the parks were not at capacity and park reservations were available. Hagman Decl. ¶ 6; SAC ¶¶ 15-20. After purchasing her pass, Plaintiff learned that she was unable to use the Dream Key pass to make a reservation on some days, even when the parks were not at capacity and general admission park reservations were listed as available on Disney's website. *Id.* As alleged in her operative complaint, on numerous occasions, Plaintiff was unable to use her pass to make reservations because her desired dates were "unavailable," despite Disney's website listing plenty of availability for daily ticket reservations. *Id.*

The operative complaint likewise alleges that other Dream Key purchasers claimed to have experienced similar issues with their Dream Keys, complaining that they were also unable to use their passes to secure reservations, even though reservations were available for regular tickets on those same days. SAC ¶¶ 31-37.

In November 2021, Plaintiff initiated this action against WDPR in the Orange County Superior Court. Hagman Decl. ¶ 3. The case was then removed to this Court and, in April 2022, the Court denied in part WDPR's motion to dismiss. ECF No. 35; Hagman Decl. ¶ 7. Thereafter, Plaintiff filed her Second Amended Complaint, alleging violations of California's Consumer Legal Remedies Act ("CLRA"), Cal.

Civ. Code § 1750, *et seq.*, and asserting claims for breach of contract and breach of the implied covenant of good faith and fair dealing. ECF No. 41.

The parties then engaged in extensive fact and expert discovery. Hagman Decl. ¶¶ 13-16. Disney made comprehensive document productions, and the parties exchanged expert reports and rebuttal reports as to class certification. Hagman Decl. ¶¶ 14-22. The parties also took five depositions, including depositions of each party's expert witness. Hagman Decl. ¶¶ 16, 18, 21.

On April 24, 2023, Plaintiff moved for class certification. ECF No. 61. On May 31, 2023, WDPR opposed Plaintiff's class certification motion and simultaneously moved to exclude both Plaintiff's damage theory and her expert's testimony. ECF Nos. 67, 70. On July 7, 2023, Plaintiff replied in support of her motion for class certification, submitted a rebuttal expert report, and opposed WDPR's motion to exclude. ECF Nos. 72, 75. On July 14, 2023, WDPR filed its reply in support of its motion to exclude and filed a motion to exclude the rebuttal report of Plaintiff's expert. ECF Nos. 82, 83.

On July 19, 2023, the parties participated in a full-day mediation session with the Honorable Jay C. Gandhi (Ret.), which resulted in a settlement agreement in principle. Hagman Decl. ¶¶ 16-27. Thereafter, the parties worked diligently and cooperatively to convert their agreement into the comprehensive Settlement Agreement now before this Court. Hagman Decl. ¶ 28. The Settlement Agreement is attached to the Hagman Declaration as Exhibit 1.

## III.   THE SETTLEMENT TERMS

### A.   Proposed Settlement Class

The proposed Settlement will provide relief to the following proposed Settlement Class: "all Persons who purchased a Dream Key."[1] Agr. ¶ 1.33. The Dream

---

[1] Excluded from the proposed Class are (1) Disney, or any entity or division in which Disney has a controlling interest, and its legal representatives, offices, directors,

Key pass was sold from August 15, 2021, to October 25, 2021. The proposed Settlement Class consists of 103,435 individual passholders. Hagman Decl. ¶ 14.

**B.**     **Settlement Benefits – Monetary Relief**

The proposed Settlement provides that Disney will pay $9,500,000.00 into a non-reversionary Settlement Fund that will be used to pay awards to Settlement Class members, as well as Court-approved attorneys' fees and costs, an incentive award to Plaintiff, and all costs and fees for Settlement notice and claims administration. Agr. ¶ 1.35. Each Settlement Class member will receive an equal portion of the Settlement Fund, after deductions for Court-approved attorneys' fees and costs, a service award to Plaintiff, and costs of notice and claims administration. Agr. ¶ 1.35, ¶ 1.4, ¶ 2.2. Settlement Class members will not need to submit a claim form in order to receive payment, but will receive an email from the Settlement Administrator with instructions to receive the payment electronically. Agr. ¶ 2.3. For email addresses that are invalid or undeliverable, or if no selection for electronic payment is made, the Settlement Administrator will mail a check to each such Settlement Class member's last know mailing address. Agr. ¶ 2.3. Payments to Settlement Class members shall be made within sixty (60) days following the entry of final judgment and the resolution of all appeals, if any. Agr. ¶ 2.5. Further, if the amount remaining in the Settlement Fund after the initial unredeemed checks expire exceeds $10.00 per Settlement Class Member who redeemed the initial payment, then each Settlement Class Member who redeemed the initial payment will receive a second *pro rata* payment. Agr. ¶ 1.6.[2]

---

assigns, and successors; (2) the judge to whom this case is assigned and the Judge's immediate family and staff; and (3) governmental entities. Agr. ¶ 1.33.
[2] Following the expiration of unredeemed checks for the second round of payments to Settlement Class Members, or if there is an insufficient amount in the Settlement Fund after the initial round of payments to pay at least $10.00 to each Settlement Class Member, then the remaining amount of funds in the Settlement Fund will be distributed to a Cy Pres Designee approved by this Court. Agr. ¶ 2.6.

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**CASE NO.: 8:21-CV-02055-DOC-ADS**

### C.    Class Notice and Settlement Administration

Notice will be provided to the Settlement Class by emailing the Court-Approved Email Notice (attached to the Settlement Agreement as Exhibit C) to the email address associated with Settlement Class Members' purchases of their Dream Keys. Agr. ¶ 4.1(b). Additionally, the Court-Approved Short Notice (attached to the Settlement Agreement as Exhibit B) will be mailed to the postal addresses associated with the Settlement Class Members for whom Disney is unable to provide a valid email address, or for whom the email Notice bounced back to the Settlement Administrator. Agr. ¶ 4.1(c).

In addition to providing direct, individual notice to Settlement Class Members, the Settlement Administrator will also establish a settlement website where copies of relevant filings (including the Settlement Agreement, Court-Approved Notice forms, the operative Second Amended Complaint, motions for preliminary and final approval, the motion for attorneys' fees, and relevant Court orders) will be posted. The website will also permit Settlement Class Members to update their mailing addresses and submit Requests for Exclusion. Agr. ¶ 4.1(d).[3]

The notice documents are clear and concise and directly apprise Settlement Class members of all the information they need to know to make a claim or to opt-out or object to the proposed Settlement. Fed. R. Civ. P. 23(c)(2)(B). Moreover, Plaintiff has retained Epic, a nationally recognized and well-regarded class action settlement administrator, to serve as Settlement and Claims Administrator, subject to the Court's approval. Agr. ¶ 1.32. The Settlement Administrator has estimated that notice and administration costs will total approximately $147,547.00. Declaration of Cameron R. Azari, Esq. ("Azari Decl."), attached as Exhibit 4 to the Hagman Declaration.

---

[3] Additionally, the Settlement Agreement provides for additional means to provide notice so that at least 75% of the Settlement Class is notified of the Settlement. Agr. ¶ 4.1(e).

-5-

### D.   Attorneys' Fees and Expenses

Plaintiff will also separately seek an order from the Court awarding Class Counsel their reasonable attorneys' fees not to exceed $2,375,000. Agr. ¶ 8.1. This amount represents 25% of the value of this settlement. Agr. ¶ 8.1. In addition, Class Counsel will seek reimbursement of their reasonable costs and litigation expenses incurred. Agr. ¶ 8.1.

Class Counsel's fee request is well within the range of reasonableness for settlements of this nature and size. This Court recently stated that "25% [is] considered the benchmark" in the Ninth Circuit. *Pauley v. CF Ent.*, 2020 WL 5809953, at *3 (C.D. Cal. July 23, 2020), *citing Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). In fact, the Ninth Circuit has found attorneys' fees awards of one-third of the fund to be reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery).

### E.   Service Awards to Named Plaintiff

Plaintiff in this case has been vital in litigating this matter and supports the proposed Settlement. Specifically, Plaintiff has searched for and produced documents, answered interrogatories, prepared for and traveled to and sat for a deposition, and has been in frequent contact with her attorneys to keep apprised of the status of proceedings and helped inform important decision making. Hagman Decl. ¶¶ 15-16. Plaintiff will separately petition the Court for an award of Five Thousand Dollars ($5,000) in recognition of the time, effort, and expense she incurred pursuing claims that benefited the Settlement Class. Agr. ¶ 8.3. This amount is presumptively reasonable and below amounts commonly awarded in settled class action cases. *See, e.g.*, *Pauley*, *supra,* 2020 WL 5809953, at *4 (this Court granted "class representative enhancement fees in the amount of $5,000 each to Plaintiffs," finding that amount to be "presumptively reasonable"); *Yahoo Mail Litig.*, 2016 WL

4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards].").

## IV.   LEGAL ARGUMENT

Plaintiff seeks approval of the proposed Settlement pursuant to Rule 23(e) of the Federal Rule of Civil Procedure, under which court approval is required. Courts follow a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of court-approved notice; and (3) a final fairness hearing where class members may be heard regarding the settlement and at which evidence may be presented regarding the settlement's fairness, adequacy, and reasonableness. *Manual for Complex Litig.* (Fourth) (2004) § 21.63.

Here, Plaintiff requests that the Court take the first step and grant preliminary approval of the Settlement Agreement. Federal courts strongly favor and encourage settlements, particularly in class actions where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit to the class. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases). In cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." *Manual for Complex Litigation* (Fourth) § 21.632; *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

Plaintiff seeks certification of a proposed Settlement Class of 103,435 individuals and consisting of: "All persons who purchased a Dream Key." Agr. ¶ 1.33. Dream Keys were on sale from August 15, 2021 to October 25, 2021. As outlined below, because the class certification standards set forth in Rule 23(a) and (b)(3) are satisfied and the settlement is fair, reasonable, and adequate, the Court

-7-

should certify the proposed Class for settlement purposes and preliminarily approve the proposed Settlement.[4]

### A. The Settlement Satisfies Rule 23(a).

Before assessing the parties' settlement, the Court should first confirm that the underlying Settlement Class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; *Manual for Complex Litig.* (Fourth), § 21.632. The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

### 1. The Settlement Class is Sufficiently Numerous.

Courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). Generally, courts will find numerosity is satisfied where a class includes at least 40 members. *MacRae v. HCR Manor Care Services, LLC*, 14-cv-00715, 2018 WL 8064088, at *4 (C.D. Cal. Dec. 10, 2018) (Carter J.). Numbering approximately 103,435 individuals, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. Joinder of the 103,435 individuals is clearly impracticable—thus the numerosity prong is satisfied.

### 2. The Settlement Class Satisfies the Commonality Requirement.

The Settlement Class also satisfies the commonality requirement, which is met where class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564

---

[4] While WDPR agrees that the class ought to be certified for settlement purposes, it maintains that no class could be certified for litigation purposes, for the reasons set out in its class certification opposition and associated motion to exclude Plaintiff's damages theory and expert testimony (*see* Dkt. 67, 70), and expressly reserves its right to contest class certification in the event the settlement is not finally approved (*see* Agr. ¶¶ 10.4(c), 10.5).

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**CASE NO.: 8:21-CV-02055-DOC-ADS**

U.S. 338, 350 (2011); *see Saenz v. Lowe's Home Centers, LLC*, 2019 WL 1382968, at *3 (C.D. Cal. Mar. 27, 2019) (noting that the Ninth Circuit has held that "commonality only requires a significant question of law or fact"). "[T]he requirements for finding commonality are minimal." *Rigo Amavizca v. Nutra Mfg., LLC*, 2021 WL 682113, at *6 (C.D. Cal. Jan. 27, 2021), *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiff's and Settlement Class members' claims arise out of Disney's uniform product, advertisements and representations, and policies and practices. Several core, common issues exist, including: (1) the meaning of the terms "subject to availability", "blockout dates," and/or "park reservations"; (2) whether Disney promised Dream Key purchasers that they would be able to make reservations if park reservations were available; (3) whether Disney prevented Dream Key passholders from making reservations when park reservations were available; (4) whether Disney interfered with Dream Key purchasers' ability to receive the benefit of the contracts; and (5) whether Dream Key passes are "goods or services" under the CLRA. Resolution of one or all of these common questions will affect all Class members.

Because resolution of one or all of these common questions will affect all Settlement Class members, Plaintiff has met the commonality requirement of Rule 23(a). *See, e.g.*, *Aikens v. Malcom Cisneros*, 2019 WL 3491928, at *4 (C.D. Cal. July 31, 2019); *Feller v. Transamerica Life Ins. Co.*, 2017 WL 6496803, at *7 (C.D. Cal. Dec. 11, 2017) (commonality satisfied for plaintiffs' breach of contract and implied covenant claims); *MacRae v. HCR Manor Care Servs., LLC*, 2018 WL 8064088, at *5 (C.D. Cal. Dec. 10, 2018) (commonality satisfied for CLRA claims where "class members were exposed to the same agreement and therefore allegedly experienced the same misrepresentation and concealment . . .").

### 3.      Plaintiff's Claims and Defenses are Typical.

Plaintiff satisfies the typicality requirement because her claims are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Assocs.*, 707 F.3d 1036, 1042 (9th Cir. 2012) (upholding typicality finding). Plaintiff alleges she purchased her Dream Key pass after having read and reviewed the same allegedly deceptive and misleading statements contained in Disney's Dream Key advertisements that were made available to all Settlement Class members who purchased Dream Key passes, which advertised that the passes provided access every day of the year without "blockout dates." *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class."). Plaintiff's claims are typical because she and all Settlement Class members were subject to the same Magic Key reservation system and all Dream Keys were afforded the same level of access to reservations. Accordingly, the typicality requirement is satisfied. *See Mier v. CVS Pharm., Inc.*, 2021 WL 3468951, at *5 (C.D. Cal. Apr. 29, 2021) (typicality satisfied because plaintiff and the class were under the same belief that the statement on the label was true and were damaged because it was not true); *MacRae*, 2018 WL 8064088, at *6 (typicality satisfied because Plaintiff and class members all "received the admission statement on which the CLRA claim is based").

### 4.      Plaintiff is an Adequate Settlement Class Representative.

Fourth, the adequacy requirement is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs, their counsel, and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis,* 657 F.3d at 985 (citing *Hanlon,* 150 F.3d at 1020).

Here, Plaintiff has no conflicts of interest with other Settlement Class

-10-

members, is subject to no unique defenses, and she and her counsel have vigorously prosecuted this case on behalf of the Class. Plaintiff is a member of the proposed Settlement Class who experienced the same injuries and seeks, like other Settlement Class members, compensation for Disney's allegedly deceptive and misleading statements, policies, and practices. As such, her interests and those of her counsel, are consistent with those of the proposed Settlement Class. *See Aikens*, 2019 WL 3491928, at *4 ("Again, Plaintiff's claims arise out of the same set of facts as the claims for the proposed Class. The Court finds no sign of potential conflict of interest between Plaintiff and the Class Members she seeks to represent. Accordingly, the Court concludes that Plaintiff is an adequate class representative.").

Further, counsel for Plaintiff have decades of combined experience vigorously litigating consumer class actions and are well-suited to advocate on behalf of the Class. *See* Hagman Decl. ¶¶ 30-32; *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (adequacy satisfied if plaintiffs and their counsel lack conflicts of interest and will prosecute the action vigorously on behalf of the class). Plaintiff and Class Counsel satisfy the adequacy requirement.

## B.   The Requirements of Rule 23(b)(3) are Met for Purposes of Settlement.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiff alleges that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id*. In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

-11-

(2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Common questions predominate Plaintiff's breach of contract claim. The Court previously determined that key common provisions in the form contract, such as the phrases "subject to availability" and "blockout dates," are ambiguous. The determination of meaning of ambiguous terms in a form contract requires the examination of objective criteria, which is a common issue that will greatly inform the resolution of the breach of contract claim. *See Menagerie Prods. v. Citysearh,* 2009 WL 3770668, *10 (C.D. Cal. Nov. 9, 2009) (if the language in form contract was ambiguous, common issues predominate because the meaning would be established on a classwide basis).

Common issues also predominate Plaintiff's implied covenant of good faith and fair dealing claim. Whether Disney was vested with discretion, whether Disney abused that discretion, and whether Disney interfered with Dream Key purchasers' ability to obtain the benefits of the Dream Keys are common issues that will predominate regarding the breach of implied covenant claim. *See Feller*, 2017 WL 6496803, *11-12 ("the duty of good faith and fair dealing is assessed under an objective standard under California law, making this claim suitable for class treatment"); *Menagerie Prods.*, 2009 WL 3770668, *11 (same).

Plaintiff's CLRA claim depends on whether Disney employed misleading and deceptive statements to advertise its Dream Key passes. That question can be resolved using the same evidence for all Settlement Class members, and thus is precisely the type of predominant question that makes a class-wide settlement appropriate. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045

-12-

(2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'") (citation omitted).

There is little doubt that resolving all Settlement Class members' claims through a single class action is superior to a series of individual lawsuits brought by each of the more than one hundred thousand Dream Key pass purchasers. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Adjudicating individual actions here is impracticable: the amount in dispute for individual Settlement Class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123.

Because Plaintiff seeks to certify a class in the context of a proposed settlement, this Court "need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods*., *supra,* 521 U.S. at 620 (citation omitted). The proposed Settlement therefore meets the requirements of Rule 23(b)(3).

## C.    The Court Should Preliminarily Approve the Settlement.

Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." "[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes

of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e).

The Court must determine "'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) *quoting Hanlon*, *supra,* 150 F.3d at 1026. The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon,* 150 F.3d at 1026.

In applying these factors, this Court should be guided foremost by the "overriding public interest in settling and quieting litigation[,]" which "is particularly true in class action suits . . . ." *Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229 (9th Cir. 1989). Here, the relevant factors make clear that the negotiated settlement is fundamentally fair, reasonable, and adequate and should be preliminarily approved.

### 1.    The Strength of Plaintiff's Case[5]

Plaintiff has built a strong case for liability under her breach of contract, breach of implied covenant, and CLRA claims. With respect to her breach of contract

---

[5] Disney does not agree with Plaintiff's characterization of the strength of her claims and reserves all rights to contest Plaintiff's claims on the merits if the settlement is not finally approved. *See* Agr. ¶¶ 10.4(c), 10.5.

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**CASE NO.: 8:21-CV-02055-DOC-ADS**

claim, Plaintiff believes she will ultimately be able to offer evidence showing Disney breached its promise to provide Plaintiff and Dream Key purchasers with reservation-based access to the park every day of the year with no blockout dates, provided park reservations were available. Plaintiff believes that the evidence would establish that Disney limited the number of reservations available to Dream Key pass holders and restricted their ability to use their passes as advertised and promised. Such conduct prevented Plaintiff and other Dream Key purchasers from realizing the benefits of their bargains with Disney and constitutes a breach of contract.

Plaintiff also believes that she will be able to prove her claim that Disney breached the implied covenant of good faith and fair dealing. Plaintiff would show that instead of permitting passholders to receive the benefit of the contract (making a reservation every day of the year so long as park reservations were available) Disney significantly limited the reservations for Dream Key passholders, depriving Class members of the primary benefits of the pass. *See Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*, No. 12-cv-05307, 2013 WL 11324312, *7-9 (C.D. Cal. Apr. 16, 2013) (implied covenant claim sufficiently pled alleging defendant exercised discretion in manner that deprived plaintiff of the benefit of the contract).

Plaintiff also states a claim under the CLRA, which prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. The CLRA is governed by the "reasonable consumer" test, which requires a plaintiff to "show that members of the public are likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal citations omitted). Plaintiff would produce evidence demonstrating that the Dream Key pass provides access to services within the meaning of the CLRA, and that reasonable consumers were likely to be deceived by Disney's misleading and deceptive statements and representations contained in its Dream Key advertisements and terms and conditions. Disney's actions constitute a violation of the CLRA.

-15-

Plaintiff, however, also recognizes that success is not guaranteed. Plaintiff acknowledges that Disney has made substantive arguments regarding the appropriateness of classwide relief and the viability of Plaintiff's theory of damages. *See e.g.*, ECF No. 70 (WDPR's Reponses in Opposition to Plaintiff's Motion for Class Certification); ECF No. 67 (WDPR's Motion to Strike Plaintiff's Damages Theory and Expert Report); ECF No. 83 (WDPR's Motion to Strike the Plaintiff's Rebuttal Expert Report).

Plaintiff takes these arguments seriously and believes that the Settlement Agreement strikes the right compromise between risking a loss on class certification and at trial, with obtaining valuable relief for the Settlement Class. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the substantial obstacles and risks inherent in consumer class actions, including class certification, summary judgment, and trial, the significant benefits the Settlement provides favor preliminary approval. Hagman Decl. ¶ 29.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Class actions typically entail a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). If the parties were unable to resolve this case through settlement, continued litigation would be protracted and costly. Consumer class actions often take many years to resolve. Before ever approaching trial in this case, the Court would need to

-16-

rule on Plaintiff's class certification motion, and the pending motions to strike. The parties would further likely be required to litigate a Rule 23(f) appeal and brief summary judgment and *Daubert* motions. Significant work remains to be performed on this case, with likely post-trial activity to follow.

This case involves a proposed class of approximately 103,435 individuals (each of whom, Disney has argued, would individually need to establish proof of their expectations and unsuccessful attempts to access reservations). The case involves a complicated and technical factual overlay against a prominent and sympathetic Defendant. The proposed Settlement balances the costs of continued litigation, and the risk of adverse rulings for the Class at any of several stages of the litigation and potential for delay, against the obvious benefits of obtaining immediate relief that is fair and valuable to the Class. *See Newberg on Class Actions* § 11.50 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."); *accord Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Thus, this factor favors approval.

> **3.      The Risk of Maintaining Class Action Status Through Trial**

While the parties have briefed Plaintiff's Motion for Class Certification, the Court has not yet certified any class in this case. If this case were to proceed through trial, Plaintiff would encounter risks in obtaining and maintaining class certification. Defendant has opposed certification if the case proceeds. Thus, Plaintiff "necessarily risk[s] losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, 2014 WL 12746376, *10 (C.D. Cal. Sept. 24, 2014); *Acosta v. TransUnion, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) ("The value of a class action 'depends largely on the certification of the class,' and [] class certification undeniably represents a serious risk for plaintiffs in any class action lawsuit"), *quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.*, 55 F.3d 768, 817 (3d Cir. 1995). While

-17-

Plaintiff is confident this case is appropriate for class certification and has marshaled evidence in support of such a motion, class certification proceedings are discretionary and it is by no means certain that this case will be certified as a class action. *See*, *e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011). If this case is not certified as a class action, class members would receive no relief.

### 4.    The Amount Offered in Settlement

The value of the settlement favors approval. The proposed Settlement *immediately* provides significant relief to Settlement Class members. Each Settlement Class member is entitled to an equal share of the $9,500,00.00 Settlement Fund, after payment of attorneys' fees, and notice and administration costs.

This Settlement provides substantial benefits for the Settlement Class and is an excellent result. As Plaintiff argued in support of her Motion to Certify, the total possible damages at trial for the putative Class claims is approximately $39 million. ECF 62-6 at 26. That amount would represent a complete victory for the Class. At a gross level, the proposed Settlement represents almost 25% of the possible trial recovery. Plaintiff's expert determined that full damages for each potential class member was $379.19. *See* ECF 62-2, at 26. Through the Settlement Agreement, each Settlement Class Member will receive approximately $67.41. Although a successful trial for Plaintiff would likely produce a better result, the proposed Settlement should be approved because of the risk that Plaintiff might not succeed at trial, or even at the class certification stage, and even if she does, likely appeals would follow. The Settlement need not represent the best possible outcome in order to meet the fair, reasonable and adequate standard. *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) *citing Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975).

Here, the Settlement Agreement achieves an outstanding result of approximately 17% of full damages, without the risk of continued litigation, and

-18-

without the need litigate this action through trial and appeals. *See, e.g.*, *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, *10 (C.D. Cal. Feb. 16, 2017) (granting preliminary approval of a settlement that provides class members with fourteen percent of the maximum recovery).

As Disney has argued, a complete victory is far from certain. Dream Key passholders actually visited the theme parks using their Dream Keys. Dream Key passes, therefore, had *some* value and Class members received that value. Plaintiff believes—and is prepared to prove at trial—that each Class member suffered damages in the approximate amount of $379.19 each, which is the difference between the price of a Dream Key pass and the actual value of the pass. Disney has asked the Court to reject Plaintiff's damages model and to preclude her damage claims from being presented to the jury. Even if Plaintiff is allowed to present her damage theory to the jury, Disney will argue that each Dream Key pass was worth the price paid by each Class member. It is possible that the Court could reject Plaintiff's damage model, thereby preventing her case from proceeding on a classwide basis. It is also possible that at trial, the jury may be unpersuaded by Plaintiff's theory. It might award no damages or only partial damages. The range of recovery for Class members is, therefore, anywhere from $379.19 per Class member to no recovery at all. The Settlement appropriately balances the risks of further litigation against the certainty of a material recovery for all Class members and should be approved by the Court. *See Bravo*, 2017 WL 708766, *10.

Finally, given the difficulties and expenses Settlement Class members would face to pursue individual claims, and the possibility that they might be unaware of their claims, this settlement amount is appropriate. *Id.*; *Officers for Justice*, 688 F.2d at 628.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

This factor requires an evaluation of whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms.*, 221 F.R.D. 523, 527-28 (C.D. Cal. 2004). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." 5 *Moore's Federal Practice*, § 23.85[2][e] (Matthew Bender 3d ed.); *see also Newberg on Class Actions*, § 11.45 at 129.

Here, the parties have completed extensive formal written and oral discovery. Hagman Decl. ¶¶ 14-16. Disney produced approximately 24,472 pages of documents in response to Plaintiff's multiple requests for production including non-public information involving the Magic Key program and Dream Key Advertisements and the size and makeup of the Settlement Class. *Id.* Plaintiff conducted depositions of two of Disney's representatives, and Disney deposed the Plaintiff. Hagman Decl. ¶ 16. Plaintiff also produced approximately 677 pages of documents in response to Disney's requests. Hagman Decl. ¶ 15. Additionally, the parties exchanged expert reports and rebuttal reports in support of and in opposition to Plaintiff's motion for class certification and deposed the opposing party's respective expert. Hagman Decl. ¶¶ 17-22.

Accordingly, the parties are in the best position to evaluate the strengths and weaknesses of their claims and defenses and were well-equipped to negotiate the settlement agreement. *Id.* Because Plaintiff is well-informed about the strengths and weaknesses of this case, this factor favors preliminarily approving the Settlement. *See Vandervort v. Balboa Capital Corp.*, 2013 WL 12123234, at *6 (C.D. Cal. Nov.

-20-

20, 2013) (finding factor weighs in favor of preliminary approval where class counsel propounded written discovery, took multiple depositions, and responded to the defendant's written discovery requests).

### 6.      The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Class Counsel have substantial experience litigating complex class cases of various types, including consumer class actions such as this one. *See* Hagman Decl. ¶¶ 30-32. Class Counsel endorse the Settlement without reservation. Hagman Decl., ¶ 29. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc.*, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004. Thus, this factor supports approval.

### 7.      Governmental Participants.

There is no governmental participant in this matter.

### 8.      The Reaction of the Settlement Class to the Settlement

Because notice has not yet been provided, this factor is not yet implicated.

### 9.      Lack of Collusion Among the Parties

The proposed Settlement was not the result of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Courts look to whether the proposed settlement is a product of arm's length negotiations, performed by counsel well versed in the type of litigation involved. *See Newberg on Class Actions* § 11.41 (a proposed settlement is entitled to "an initial presumption of fairness" when the settlement has been "negotiated at arm's length by counsel for the class"); *See Hughes v. Microsoft Corp.*, 2001 WL

-21-

34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery.") *quoting Manual for Complex Litigation* (Third) § 30.42.

Here, there are no indicia of collusion in either the procedural elements of the settlement process or in the substance of the Settlement. The parties negotiated a substantial settlement, as outlined above, after significant arm's-length negotiations with the assistance of a skilled class action mediator, Hon. Jay C. Gandhi (Ret.). Hagman Decl. ¶ 26; *see, e.g.*, *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014); *G.F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotations omitted); *see also Cohorst v. BRE Props.*, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . . We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution.").

Finally, the parties did not discuss or negotiate an award of attorneys' fees and have not reached any agreement regarding fees. Instead, Class Counsel will apply for an award of fees and costs concurrently with Plaintiff's request for final approval of the Settlement. Agr. ¶ 8.1. Because Class Counsel will only be paid from the same non-reversionary fund as members of the Settlement Class, Class Counsel had every reason to negotiate the largest fund possible. The settlement was carefully and thoughtfully negotiated and results in a fair outcome for Settlement Class members. This factor weighs in favor of preliminary approval of the proposed Settlement.

### 10.     The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that the proposed Settlement treat all class

-22-

members equitably. In determining whether this factor weighs in favor of approval, courts consider whether the proposed Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.,* 2020 WL 2467060, \*9 (S.D. Cal. May 13, 2020) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the proposed Settlement does not improperly discriminate between any segments of the Settlement Class. Plaintiff is seeking certification of a single class of Dream Key pass purchasers, and all members of the proposed Settlement Class are entitled to the same relief and are compensated in kind for the harm they suffered. All Settlement Class members will receive an equal *pro rata* share of the $9,500,000 Settlement Fund, after the deduction of the costs of notice, settlement administration, Plaintiff's Service Award, and Class Counsel's attorneys' fees and costs. Plaintiff will not receive preferential treatment or compensation disproportionate to the harm she suffered under this proposed Settlement. She is entitled to relief under the Settlement terms like any other Settlement Class member, and while the parties have not agreed on a service award for Plaintiff, she seeks only $5,000. *See Campos v. Converse, Inc.*, 2022 WL 4099756, at \*7 (C.D. Cal. Aug. 15, 2022) (permitting service award to class representative in amount of $6,000 where he "vigorously participated" in the litigation); *see also Smith v. Am. Greetings Corp.*, 2016 WL 362395, at \*10 (N.D. Cal. Jan. 29, 2016) (finding $5,000 service awards are "presumptively reasonable").

### D.    The Court Should Approve the Proposed Notice Program

Rule 23 requires that prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable

-23-

effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. The "best notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably and must describe the terms of the proposed class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *In re Hyundai & Kia Fuel Econ. Litig.*, *supra,* 926 F.3d at 567.

The proposed Notice satisfies these criteria, informing Settlement Class members of the substantive terms of the proposed Settlement, advising them of their options for opting out of or objecting to the proposed Settlement, and instructing them how to obtain additional information about the Settlement. The Notice forms are clear and concise and presented in plain English to ensure Settlement Class members are able to read and understand it.[6] Further, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator, Epic, which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class member by direct-email notice and direct mail notice. Agr. ¶ 4.1.

All Class Members will have an opportunity to present their objections or to opt out. All Class Members will receive direct notice of the proposed settlement at their email and / or regular mail addresses.  The proposed notice plan ensures that Settlement Class members' due process rights are amply protected.  It should be approved by the Court.

---

[6] Additionally, information concerning the Settlement Agreement will be made available in Spanish. Agr. ¶ 4.1(d).

-24-

### E.   Appointment of the Settlement Administrator

The parties request the Court appoint Epic to serve as the Claims Administrator. Epic has successfully administered thousands of class action settlements, serviced hundreds of millions of class members, and distributed billions in settlement funds. Hagman Decl., Ex. 3 (Azari Decl.), ¶¶ 4-6. Notice and administration is expected to cost approximately $147,547.00 and will be paid out of the Settlement Fund. *Id.*, ¶ 34; Agr., ¶ 1.35.

### F.   Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel have extensive experience prosecuting national consumer and other class actions and other complex cases. *See* Hagman Decl., ¶ 31-32, Exs. 2, 3 (Class Counsel's firm resumes). Accordingly, the Court should appoint Cafferty Clobes Meriwether & Sprengel LLP and Ventura Hersey & Muller LLP as Settlement Class Counsel.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant Plaintiff's Motion for Preliminary Approval of Class Action Settlement and enter the accompanying Order preliminarily approving the proposed Settlement.

/ /

/ /

/ /

-25-

1   Dated:        September 7, 2023              Respectfully submitted,

2                                               /s/ *Nickolas J. Hagman*

3
                                                Daniel J. Muller, SBN 193396
4                                               Anthony F. Ventura, SBN 191107
                                                1506 Hamilton Avenue
5                                               San Jose, California 95125
                                                Telephone: (408) 512-3022
6                                               Facsimile: (408) 512-3023

7                                               Nickolas J. Hagman (*admitted pro
                                                hac vice*)
8                                               nhagman@caffertyclobes.com
                                                CAFFERTY CLOBES
9                                               MERIWETHER & SPRENGEL LLP
                                                135 S. LaSalle St., Suite 3210
10                                              Chicago, Illinois 60603
                                                Telephone: (312) 782-4880
11                                              Facsimile: (312) 782-4485

12
                                                *Attorneys for Plaintiff Jenale Nielsen &*
13                                              *the proposed Settlement Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                         -26-
**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**
**CASE NO.: 8:21-CV-02055-DOC-ADS**